# In the United States Court of Federal Claims

INSIGHT PUBLIC SECTOR, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

DELL MARKETING L.P.,

Intervenor-Defendant.

No. 21-cv-1755

Filed Under Seal: December 9, 2021

Publication: December 16, 2021[1]

*Kyle R. Jefcoat*, Latham & Watkins LLP, Washington, District of Columbia for Plaintiff.  With him on the briefs are *David R. Hazelton* and *Julia A.C. Lippman*, Latham & Watkins LLP, Washington, District of Columbia.

*William P. Rayel*, United States Department of Justice, Civil Division, Washington, District of Columbia for Defendant.  With him on the briefs are *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division; *Martin F. Hockey, Jr.*, Acting Director, Commercial Litigation; *Douglas K. Mickle*, Assistant Director, Commercial Litigation; *Tracey Ferguson*, Naval Information Warfare Center Pacific; *Stephen T. O'Neal*, General Services Administration.

*Craig A. Holman*, Arnold & Porter Kaye Scholer LLP, Washington, District of Columbia for Intervenor-Defendant.  With him on the briefs are *Amanda J. Sherwood* and *Aime JH Joo*, Arnold & Porter Kaye Scholer LLP, Washington, District of Columbia.

---

[1] This Memorandum and Order was filed under seal in accordance with the Protective Order entered in this case (ECF No. 10) and was publicly reissued after incorporating all redactions proposed by the parties.  (ECF No. 60.)  The sealed and public versions of this Memorandum and Order are otherwise identical, except for the publication date and this footnote.

## MEMORANDUM AND ORDER

On September 13, 2021, Plaintiff Insight Public Sector, Inc. (Plaintiff or Insight) filed a Motion to Complete the Administrative Record (ECF No. 26) (Pl. Mot.).  Plaintiff sought to include Intervenor-Defendant Dell Marketing L.P.'s (Dell Marketing) General Services Administration Federal Supply Schedule Contract No. GS-35F-059DA (GSA Schedule or FSS Contract) in the Administrative Record (Administrative Record or AR).[2]  Pl. Mot. at 1.  For efficiency purposes, on September 23, 2021, this Court provided the parties with a ruling on the record, noting that a written Memorandum and Order would follow.  Order Denying Plaintiff's Motion to Complete the Administrative Record (ECF No. 32); Transcript Ruling on Motion to Supplement the Administrative Record, dated Sept. 23, 2021 (ECF No. 55).

Plaintiff argued in its Motion that Dell Marketing's GSA Schedule is a core document that must be produced to have a complete Administrative Record.  Plaintiff's Memorandum of Points and Authorities in Support of its Motion to Complete the Administrative Record (ECF No. 26) (Pl. Mem.) at 6-11.  Alternatively, it argued that supplementation of the Administrative Record with Dell Marketing's GSA Schedule is necessary for effective judicial review of this procurement, and for review of its request for injunctive relief.  *Id.* at 12-20.  Defendants responded that the Court should deny Plaintiff's Motion because the Administrative Record is complete, effective judicial review does not require consideration of Dell Marketing's GSA Schedule, and Plaintiff may adequately demonstrate prejudice and irreparable harm based on the current Administrative Record.  *See generally* Defendant's Response to Plaintiff's Motion to Complete or Alternatively Supplement the Administrative Record and Obtain Discovery (ECF No. 27) (Def. Resp.);

---

[2] The Administrative Record is contained in ECF Nos. 25-2 – 25-5 and 48.  Documents within the Administrative Record are divided into "Tabs."  An index of the Tabs comprising the Administrative Record can be found at ECF No. 25-1.

Intervenor-Defendant's Opposition to Plaintiff's Motion to Complete or Supplement the Administrative Record (ECF No. 28) (Int.-Def. Resp.).

As reflected on the record and in this Court's September 23, 2021 Order, and as more fully explained below, Plaintiff's Motion to Complete the Administrative Record is **DENIED**.

BACKGROUND

This post-award bid protest concerns the United States Navy's Solicitation No. N66001-21-Q-0082 for the award of a Blanket Purchase Agreement (BPA) for the provision of Microsoft software licenses, software maintenance, and user-based subscriptions.  Complaint (ECF No. 1) (Compl.) ¶ 1.  The Navy initially awarded the BPA to Plaintiff.  *See* Tab 10.1 (Notice of BPA Award to Insight, dated May 21, 2021) at AR 3518.  After a series of communications between Dell Marketing and the Navy, the Navy reopened bidding and permitted Insight and Dell Marketing to submit revised quotes.  *See* Tabs 10.2 (E-mail Chain between the Navy and Dell regarding BPA Award to Insight, dated May 26-27, 2021) at AR 3519-23; 11.1 (E-mails regarding Suspension of Insight Award and Submission of Revised Price Lists, dated May 27-28, 2021) at AR 3523-30.  Subsequently, the Navy reversed course and awarded the BPA to Dell Marketing.  *See* Tab 1 (Notification to Insight Public Sector, Inc. of BPA award to Dell Marketing L.P., dated June 1, 2021) at AR 1-2.  Insight responded with a protest at the Government Accountability Office (GAO).  *See* Tab 19 (Insight GAO Protest, dated June 7, 2021) at AR 4531-95.  Before the GAO resolved any of the issues in Insight's case, Insight filed the present action.  *See* Tabs 51 (Insight Notice of Filing Court of Federal Claims Protest, dated August 25, 2021) at AR 5045; 52 (GAO Dismissal of Insight's Protest, dated August 26, 2021) at AR 5046.

I.      Initial Award to Insight

The Navy's initial Request for Quotations (RFQ) required resellers (*i.e.,* Insight and Dell Marketing) to have "a current General Services Administration (GSA) Federal Supply Schedule

(FSS) contract that covers the duration of the resultant Agreement." Tab 3.1 (Excerpts from Original RFQ, dated March 17, 2021) at AR 32. Notably, the original RFQ required the reseller, and not a teaming partner, to have an active GSA Schedule for the duration of the BPA. *Id.* Resellers were further required to "meet all of the Reseller criteria" to be eligible for the BPA. *Id.* at AR 31. The day following the deadline for submitting questions to the Navy regarding the RFQ, Dell Technologies Inc. — Dell Marketing's parent company — submitted a letter to the Navy explaining that it would prefer to submit a bid through Dell Federal Systems L.P. (Dell Federal), but that Dell Federal was ineligible for the competition because it did not have a GSA Schedule that would last the duration of the BPA. Tab 3.6 (E-mail Chain regarding Dell Teaming Request, dated March 26-31, 2021) at AR 132. Dell Marketing's parent company then suggested revising the RFQ in a manner that would allow Dell Federal to compete directly for the BPA or compete along with Dell Marketing through a Contractor Teaming Arrangement (CTA). *Id.* In response, the Navy indicated that it would amend the RFQ to allow CTAs and extend the RFQ deadline. *Id.* at AR 137.

The amended RFQ included the following requirements:

a. Reseller must have a current General Services Administration (GSA) Federal Supply Schedule (FSS) contract that covers the duration of the resultant Agreement.

. . .

c. Reseller/*Teaming Partner* must be a DoD ESI BPA Holder for Microsoft Products and Azure Services.

. . .

e. Reseller/*Teaming Partner* must have a Facility Clearance at the Secret level. If the Reseller/ *Teaming Partner* does not have a Facility Clearance at the Secret level, they must obtain it within 120 days of contract award.

f. All Microsoft products listed under Attachment #2 – BPA Product and Price List must be on the Reseller's FSS contract. Resellers will not be precluded from award in the event a product is not available on the respective GSA Schedule contract

4

provided an appropriate explanation is given in the "Vendors Comments" column of Attachment #2.

. . .

h. Reseller/*Teaming Partner* must submit 2 contract references of similar size and scope that were performed within the past 5 years (see Section 5 below for definition of similar size and scope).   Please provide the POC/references (Contracting Officer or Contracting Officer's Representative) for each contract reference.   Our office will contact each reference and submit a questionnaire regarding the Reseller/*Teaming Partner's* performance.   The questionnaire responses will be evaluated in addition to the Vendor's CPARS ratings.

Tab 3.3 (Amendment 2 to RFQ, dated March 31, 2021) at AR 102 (emphases added).   While the amended RFQ permitted using a teaming partner to satisfy many of the quote requirements, the Microsoft product list was required to "be on the *Reseller's* FSS contract." *Id.* (emphasis added). The submission requirements stated that a quote shall include "[e]vidence of product inclusion and pricing on GSA schedule (only provide Microsoft product listing and pricing)." *Id.* at AR 104. Another section of the instructions stated that "Resellers shall submit evidence of product inclusion on GSA schedule, i.e., a copy of your GSA approved Price List." *Id.* at AR 101.

Both Dell Marketing and Insight submitted their Best and Final Offers to the Navy with an evaluated price of $2,582,354,460 and $2,555,033,130, respectively.   Tab 9 (Initial Business Clearance Memorandum, signed May 15-16, 2021) at AR 3511.   As proof of product inclusion on its GSA Schedule, Dell Marketing submitted an Excel file identified as a "copy of the Microsoft Products on vendor's GSA [multiple award schedule] Contract and prices." Tab 4 (Dell Initial Quote, dated April 6, 2021) at AR 173, 182-800.   Dell Marketing also represented that "[a]ll software [contract line items (CLINs)] will be sold off of [Dell Marketing] Team Lead's GSA schedule GS-35F-059DA" and that Dell Federal will be "responsible for fulfilling any secure order requirements," as Dell Federal held appropriate security clearances that Dell Marketing did not hold.   Tab 6.1 (E-mails between the Navy and Dell regarding Dell's Quote, dated April 1-8, 2021)

at AR 3293; *see also* Tabs 3.1 at AR 14 (RFQ provision requiring contractor to possess a facility clearance letter at the Secret level); 3.6 at AR 133 (indicating that Dell Federal would cover "any and all DD254 requirements" — *i.e.*, security clearance requirements — under a teaming arrangement with Dell Marketing).

To assess whether each required product was listed on Dell Marketing's GSA Schedule, the Navy's contract specialist compared Dell Marketing's BPA Product and Price list, a form Dell Marketing populated, with Dell Marketing's submitted Evidence of Product Inclusion and Pricing on GSA Schedule (*i.e.*, the Excel file created by Dell).  Tab 40 (Navy Response to GAO Request for Information, dated July 13, 2021) at AR 4739; *see also* Tab 4 at AR 175-80, 182-800.  It is undisputed that the Navy did not independently check Dell Marketing's GSA Schedule to verify that the Schedule covered all requisite products.  Tab 40 at AR 4741; *see also* Compl. ¶¶ 93, 110.  Similarly, it is undisputed that although GSA holds a copy of Dell Marketing's GSA Schedule, the Navy did not independently possess the Schedule.  Tab 40 at AR 4741.

The Navy performed a similar evaluation of Insight's proposal and determined that both quotes met the award criteria.  Tabs 9 at AR 3498; 8.3 (Insight Price Verification Evaluation) at AR 3395-406.  The Navy ultimately made the initial award to Insight because its "overall price was $27,321,330 less than Dell Federal System's [sic] submission." [3]  Tab 9 at AR 3498.

II.     Suspension and Reevaluation of the Award to Insight

On the same day that the Navy notified Dell Marketing of the award to Plaintiff, Dell Marketing requested a debriefing.  Tab 10.2 at AR 3520.  The Navy denied the debriefing request but offered to answer "any specific questions" from Dell Marketing.  *Id.* at AR 3519-20.  Dell Marketing subsequently complained that the evaluations were unfair because late price changes

---

[3] The lead entity on this proposal is Dell Marketing, rather than Dell Federal.  *See* Tab 3.6 at AR 137 (describing the Dell teaming arrangement as one "which places Dell Marketing as the Prime").

by Microsoft could have resulted in unpriced CLINs in some bids. *Id.* at AR 3519. It explained that "[t]hroughout the bidding process, Microsoft made multiple revisions to the pricing for the Project & Visio bundle promotional CLINs – x728, x729, x764, x765. Microsoft originally offered only 3 years of pricing for these bundles but, at last minute, extended an offer for years 4 & 5 at a lesser discount." *Id.* Dell Marketing concluded by noting that it was "concerned that competitors' proposals may have included no pricing for these bundled CLIN[s] in years 4 and 5 due to the late timing of Microsoft's change to the offering," which would have resulted in Dell Marketing quoting a significantly higher price than its competitor. *Id.*

In response to Dell Marketing's complaint, the Navy reviewed the bidders' BPA Product and Price lists. *See* Tab 12.1 (Final Business Clearance Memorandum, signed June 3-7, 2021) at AR 4374. It confirmed that Dell Marketing had priced years 4 and 5 of the promotional CLINs while Insight had not. *Id.* The Navy further noted that "[t]he value of that difference was ~ ████, which impacted the award." *Id.* Concerned that a protest by Dell Marketing would be successful, on May 27, 2021, the Navy suspended the award to Insight. *See id.* The suspension notice included the Navy's conclusion that "[o]ne vendor [i.e., Dell Marketing] submitted pricing for years 4 and 5 of those CLINs/SKUs, while the other [i.e., Insight] zeroed the pricing for those CLINs/SKUs for years 4 and 5." Tab 11.1 at AR 3523. The Navy provided the parties less than 24 hours to submit their revised bids. *See id.*

Plaintiff timely responded, indicating that it did not provide pricing for the promotional CLINs for BPA years 4 and 5 (*i.e.*, option years 3 and 4) because "Microsoft did not provide a bundled cost for these CLINs for option year 3 and option year 4." Tab 11.5 (E-mail from Navy to Insight regarding Removal of Promotional SKUs, dated May 28, 2021) at AR 3555. After consulting with Microsoft, Plaintiff also requested that the Navy alter the quantities of certain

licenses in the promotional CLINs "so the correct pricing can be provided for evaluation purposes." *Id.* at AR 3556.  The Navy responded by moving the items originally listed under the promotional CLINs to non-promotional CLINs.  Tabs 11.11 (E-mail from Navy to Dell regarding Best and Final Offers, dated May 29, 2021) at AR 3598-99; 11.13 (E-mail from Navy to Insight regarding Best and Final Offers, dated May 29, 2021) at AR 3629.

After receiving revised pricing from both bidders, the Navy instructed them to submit additional information, including best and final pricing, by noon Pacific Time on Sunday, May 30, 2021.  Tabs 11.11 at AR 3598-99; 11.13 at AR 3629.  Insight and Dell Marketing each timely submitted this information.[4]

### III.   Subsequent Award to Dell Marketing

The Navy concluded that both "vendors' past performance provided the Government with a reasonable expectation that they will successfully perform the required effort."  Tab 12.1 at AR 4360.  Dell Marketing's final total evaluated price was $2,493,272,919.21, and Insight's final total evaluated price was $2,580,216,750.72.  *See* Tab 11.27 (Dell Final Price Revisions, submitted May 30, 2021) at AR 3823, 3750, 4379.  Although Plaintiff's past performance was better than Dell Marketing's past performance, the Navy stated that the difference "was not enough to overcome almost an $87M price difference."  Tab 12.1 at AR 4360.  Accordingly, on May 31, 2021, the Navy awarded the BPA to Dell Marketing.  *Id.*

### IV.   Insight's GAO Protest

Subsequently, Insight filed a GAO bid protest, alleging that "Dell failed to satisfy the RFQ's requirements and, accordingly, was ineligible for award."  Tab 19 at AR 4532.  Insight

---

[4] *See* Tabs 11.16 (Email from Dell to Navy transmitting its Revised Price Proposal Version 3, dated May 29, 2021) at AR 3699-703; 11.19 (Email transmitting Insight's Final Pricing, dated May 30, 2021) at AR 3738-43; 11.21 (Letter from Insight to Navy regarding Final Pricing, dated May 30, 2021) at AR 3753.

further alleged that "because Dell Federal is the typical entity for providing Microsoft licenses to the federal government, it is not at all clear that Dell Marketing has all of the required [products] on its own GSA FSS contract, and it appears to be relying on the Dell Federal GSA FSS contract." *Id.* at AR 4544.

To substantiate this claim, Insight requested that the Navy produce "[t]he GSA FSS schedule(s) for Dell Marketing, including all proposed teaming partners such as Dell Federal." *Id.* at AR 4553. The Navy objected on the basis that the GSA schedules "were not requested as part of the RFQ process." Tab 27 (Navy Response to Insight Request for Documents, dated June 29, 2021) at AR 4633. The GAO denied Insight's request but asked the Navy to "clarify how the evaluators determined that Dell Marketing's schedule contract contained all of the requisite Microsoft products." Tab 39 (GAO Request for Information, dated July 12, 2021) at AR 4737. The Navy explained that its contract specialist "did not obtain Dell's Microsoft GSA Price List directly from GSA." Tab 40 at AR 4741. Instead, the Navy's price verification entailed reviewing spreadsheets submitted by Dell Marketing. *Id.* at AR 4739-41. The GAO found this explanation sufficient and denied Insight's request for production of Dell Marketing's full GSA Schedule and other documents. Tab 18 (GAO Docket) at AR 4529.

After the parties completed briefing before the GAO, but before the GAO ruled on the merits of Insight's protest, Insight again requested production of Dell Marketing's full GSA Schedule. Tab 48 (Insight Request for Production, dated July 30, 2021) at AR 5041. The GAO declined Insight's request. Tab 18 at AR 4529. Insight filed its Complaint in this Court shortly thereafter. *See* Compl.

<u>DISCUSSION</u>

This Court reviews post-award bid protests pursuant to the Administrative Procedure Act (APA).  *See Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000).  The APA requires a court to analyze whether an agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] . . . unsupported by substantial evidence."  5 U.S.C. § 706; *see also Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974).  While the focus on agency action permits a sweeping inquiry, this Court may not substitute its judgment for the agency's.  *See Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416-20 (1971)).  Courts review agency action within these limits by analyzing an administrative record, which includes the material "before the decision maker at the time of the final award." *Advanced Data Concepts*, 216 F.3d at 1057.

Plaintiff urges this Court, however, to look beyond the current Administrative Record and review Dell Marketing's full GSA Schedule.  *See generally* Pl. Mem.  While there are some conditions under which this Court may complete or supplement an administrative record or consider extra-record evidence as part of the court's record, none of them exist here.  First, the Administrative Record already contains "all the material that was developed and considered by the agency in making its decision."  *Cubic Applications*, 37 Fed. Cl. at 342.  Second, the Court can effectively review the Navy's procurement process — including the Navy's decision to forgo additionally verifying the contents of Dell Marketing's GSA Schedule through GSA — without reviewing the full GSA Schedule.  Finally, Dell Marketing's GSA Schedule is unnecessary for the Court to evaluate Plaintiff's request for injunctive relief, as the Schedule's terms do not illuminate whether Plaintiff has suffered competitive prejudice and irreparable harm.  Rather, Plaintiff's

request improperly asks this Court to "convert the arbitrary and capricious standard into effectively de novo review." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (internal quotations and citation omitted).  The Court declines Insight's invitation to do so.

I.   <u>The Administrative Record is Complete</u>

A motion to complete the administrative record is appropriate when a plaintiff seeks to add "information that was generated and considered by the agency" during the procurement but was omitted from the record filed with this Court.  *Smith v. United States*, 114 Fed. Cl. 691, 695 (2014), *aff'd,* 611 F. App'x 1000 (Fed. Cir. 2015); *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019) ("A motion to 'complete' the record seeks to add documents relevant to the challenged agency decision that were considered by the relevant agency decisionmakers but were not included in the record").  Insight cannot dispute that Dell Marketing's full GSA Schedule was neither "generated [nor] considered by the agency" during this procurement.  *Smith*, 114 Fed. Cl. at 695.  It therefore "cannot be offered under a theory of 'completing' the record."  *Linc Gov. Servs., LLC v. United States,* 95 Fed. Cl. 155, 159 (2010).  *Notwithstanding* this fact, Plaintiff argues that Dell Marketing's GSA Schedule should be part of the Administrative Record because it is a "core document" as defined in Appendix C ¶ 22 of the Rules of the United States Court of Federal Claims (Rules or RCFC).  Pl. Mem. at 6.

This Court disagrees.  The "core documents" listed in Appendix C do not define mandatory contents of an administrative record.  Even if they were mandatory, Plaintiff has not shown that Dell Marketing's GSA Schedule meets the definition of any of the "core documents."   The Administrative Record is complete, and Defendant's conduct in this litigation does not suggest otherwise.

A.     <u>Appendix C Does Not Define the Contents of the Administrative Record</u>.

According to Plaintiff, Appendix C ¶ 22 of the Rules defines a set of "core documents" that presumptively qualify for inclusion in the Administrative Record even if those documents were not before the agency.  *Id.* at 6-7.  Plaintiff misreads both Appendix C and the alleged interpretations of that Appendix.  Appendix C explains that the relevant core documents "*may* include, as appropriate,*" documents from a list of 21 different categories.  RCFC Appendix C ¶ 22 (emphasis added).  It further explains that "the court expects the United States to produce the core documents and the remainder of the administrative record as promptly as circumstances will permit." *Id.* ¶ 23.  Plaintiff ignores that Paragraph 22 is permissive, not mandatory.  *Cf. Allied Tech. Grp., Inc. v. United States*, 92 Fed. Cl. 226, 230-31 (2010) (finding that documents before the GAO are not automatically included in the administrative record, even though Appendix C ¶ 22(u) states that those documents may be included in the administrative record).

Furthermore, Paragraph 22 is qualified by the "as appropriate" clause.  RCFC Appendix C ¶ 22.  Appropriate documents for inclusion in the administrative record are those materials "developed and considered by the agency in making its decision." *Cubic Applications*, 37 Fed. Cl. at 342.  "The court's rules cannot be applied to engraft onto the contracting officer's decision" documents that were not before the agency. *Acrow Corp. of Am. v. United States*, 96 Fed. Cl. 270, 281 (2010).  Properly interpreted then, Appendix C merely offers a suggestive list of the types of documents, if considered by the agency, that should be included in the administrative record.

Plaintiff argues that *Dyncorp Int'l LLC v. United States*, 113 Fed. Cl. 298, 303 (2013) supports interpreting Appendix C to require the Government to "identify and provide" such listed "core documents" in the Administrative Record.  Pl. Mem. at 7. *Dyncorp*, however, is inapposite

to the present case.[5]  Although *Dyncorp* noted that "the rules of our court establish the type of

'core documents' that the government was 'required to identify and provide,'" it did not address a

situation where the alleged "core documents" were not submitted to the agency for consideration

during the procurement or were not generated as part of the procurement.  113 Fed. Cl. at 303.

The documents that were categorized as "core documents" in *Dyncorp* — "[t]he original D & F

authored by DOS, the written debriefing provided to Dyncorp on August 30, 2013, and the

correspondence and filings from the current protest before GAO" — were all created or used by

the agency during the procurement.  *Id.*  That is not the case here, where the Navy neither generated

Dell Marketing's GSA Schedule nor considered it during the procurement.

      B.     Even Under Plaintiff's Interpretation of Appendix C, the Administrative Record is
              Complete Without Dell Marketing's GSA Schedule.

Plaintiff cannot demonstrate that Dell Marketing's GSA Schedule was incorporated into

any of the "core documents" allegedly enumerated in Appendix C.  According to Plaintiff, Dell

Marketing's GSA Schedule is a "core document" because it is incorporated into the "executed

contract" and because it was "an incorporated part of Dell Marketing's quote."  Pl. Mem. at 7, 9.

As noted below, this Court disagrees.  More fundamentally, however, Plaintiff's incorporation-by-

reference argument fails because it is premised on a misapplication of principles from the motion-

to-dismiss context.

        1.     The Incorporation-By-Reference Rules Applied When Weighing a Motion
              to Dismiss Do Not Apply Here.

 Plaintiff's argument appears to rest on shoehorning motion-to-dismiss standards into the

Court's complete-the-record analysis.  *See* Pl. Mem. at 11 ("The necessity of reviewing

---

[5] Further, even if *Dyncorp* were on point, it is well-established that other U.S. Court of Federal
Claims decisions, while helpful, are not binding on this Court.  *See, e.g.*, *San Antonio Hous. Auth.
v. United States*, 143 Fed. Cl. 425, 466 (2019).

incorporated documents is similar to when the Court is considering a motion to dismiss for failure to state a claim on which relief can be granted.").  In the motion to dismiss context, a court may consider matters incorporated into the complaint by reference even if not attached as an exhibit. *DigiFlight, Inc. v. United States*, 150 Fed. Cl. 650, 652 n.1 (2020) (quoting *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015)).  The rationale for doing so stems from Federal Rules of Civil Procedure Rule 10(c), which establishes that statements in a pleading may be adopted by reference and a written instrument attached to the pleading as an exhibit is a part of the pleading.  Fed. R. Civ. P. 10(c).  Courts relying on Rule 10(c) "have held that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

Plaintiff does not, and cannot, cite any analogous language in the APA, the Tucker Act, or the FAR that would authorize this Court to look beyond the Administrative Record when adjudicating a bid protest action.  Inserting the Rule 12(b)(6) incorporation-by-reference standard into to the bid protest analysis context violates this Court's duty to limit its review to "the record before the decision maker at the time of the final award." *Advanced Data Concepts*, 216 F.3d at 1057.  Accordingly, the Court will not stretch the boundaries of applicable complete-the-record jurisprudence here.

2. <u>The Executed Contract and Dell Marketing's Quote Do Not Incorporate by Reference — Explicitly or Implicitly — Dell Marketing's GSA Schedule.</u>

Even if this Court was convinced that Rule 12(b)(6) jurisprudence applies in the present context, Plaintiff has still failed to demonstrate that Dell Marketing's GSA Schedule was incorporated by reference into documents that are properly part of the Administrative Record. Under Appendix C, "core documents" may include "the executed contract" and "the protester's,

14

awardee's, or other interested parties' offers, proposals, or other responses to the solicitation." RCFC Appendix C ¶¶ 22(l), (q).  According to Plaintiff, the BPA awarded to Dell Marketing explicitly incorporates Dell Marketing's GSA Schedule into the "executed contract" because it includes a provision that "[o]rders placed against this BPA are subject to the terms and conditions of the FSS Contract."  Pl. Mem. at 7-8 (citing Tab 67 (Dell BPA, signed May 31, 2021) at AR 5875).  Plaintiff further argues that Dell Marketing's reference in its quote to its role as the team lead "under GSA Schedule GS-35F-059DA," and similar references in Dell Marketing's CTA, incorporate the GSA Schedule into Dell Marketing's quote.  Pl. Mem. at 10 (citing Tabs 3.6 at AR 133; 4 at AR 140, 173; 6.1 at AR 3295).  This Court finds both arguments misguided.

The statement in the BPA that "[o]rders placed against this BPA are subject to the terms and conditions of the FSS Contract" does not incorporate Dell Marketing's GSA Schedule into the executed contract.  Tab 67 at AR 5875.  The BPA includes sections that expressly incorporate documents and other contract clauses by reference.  *Id.* at AR 5876, 5899.  Dell Marketing's GSA Schedule is conspicuously absent from those sections.  *See id.*  At most, the language Plaintiff cites only incorporates portions of the GSA Schedule, the "terms and conditions," into the executed orders.  Consideration of Dell Marketing's full GSA Schedule is unnecessary, however, because the incorporated "terms and conditions" are publicly available.[6]

Similarly, the statement in Dell Marketing's bid that it included the "current Microsoft Price List on Dell GSA GS35F059DA" does not incorporate into the bid Dell Marketing's full GSA Schedule, which includes non-Microsoft products.  Tab 11.26 (E-mail from Dell to Navy transmitting Final Price Revisions, Updated Microsoft Price List on Dell Marketing's Federal

---

[6] *See* GSA Federal Acquisition Service (GSA), e-Library (2021) https://www.gsaelibrary.gsa.gov/ElibMain/contractorInfo.do?contractNumber=GS-35F-059DA&contractorName=DELL+MARKETING+L.P.&executeQuery=YES (last visited December 9, 2021).

Supply Schedule Contract, and Representations, date May 20, 2021) at AR 3811.  The passing references to Dell Marketing's GSA Schedule in its bid do not suggest an intention by Dell Marketing to incorporate the entire substance of its GSA Schedule into the quote.  *See Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1344 (Fed. Cir. 2008) (noting that "the incorporating contract must use language that is express and clear, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into the contract").  Because Dell Marketing's GSA Schedule is not incorporated by reference into the executed contract or into Dell Marketing's quote, the Schedule is unnecessary to complete the record even under Plaintiff's suggested "core document" standard.

       C.    <u>Defendant's Conduct Is Consistent with the Conclusion that the Administrative Record is Complete</u>.

In a final broadside, Plaintiff suggests that the Defendant's conduct in this action supports the application of its "core document" theory.  Pl. Mem.at 11.  Plaintiff claims that it is "wholly inconsistent for the Government, on the one hand, to represent to this Court that it will 'need to consult with GSA personnel' because this procurement is being conducted under GSA FSS contracts and, on the other hand, take the position that the very contract at the heart of this dispute is not required for inclusion in the AR."  *Id.*  But rather than support Plaintiff's argument, this merely underscores that the Navy did not have access to, or in any way consider, Dell Marketing's GSA Schedule.  For this Court to admit such "evidence not considered by the agency below" would inappropriately convert the APA's "arbitrary and capricious" standard "into effectively *de novo* review."  *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000).  The Court must respect the limits imposed by the APA and decline Plaintiff's request to complete the Administrative Record with Dell Marketing's GSA Schedule.

II.    It is Unnecessary to Supplement the Administrative Record.

Insight argues alternatively that the Court should supplement the Administrative Record with Dell Marketing's GSA Schedule because "it is necessary for determining Dell Marketing's compliance with the RFQ and eligibility for [the] award." Pl. Mem. at 12. According to Plaintiff, effective judicial review requires consideration of Dell Marketing's GSA Schedule because the Schedule was "too close at hand" for the agency to ignore and would fill important gaps in the record. Pl. Mem. at 13-17; Plaintiff's Reply (ECF No. 31) (Pl. Reply) at 12-17. Defendant urges the Court to reject these arguments on the basis that Plaintiff "impermissibly seek[s] *de novo* review of the Navy's determination that Dell Marketing met one of the eligibility criteria of the solicitation," and the Navy rationally relied on the information in Dell Marketing's quote. Def. Resp. at 18-19. Intervenor-Defendant generally reiterates Defendant's arguments, emphasizing that a document possessed by a different agency is not "too close at hand" for the Navy to ignore, and that the Navy considered only what the RFQ allegedly required: publicly available documents. *See* Int.-Def. Resp. at 18-25. The Court agrees with Defendants.

Supplementing an administrative record with new evidence requires a separate inquiry from completing an administrative record with missing documents. *See Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 169 (2011). The parties' ability to supplement the record is limited. *Axiom*, 564 F.3d at 1379. Because of the danger of converting the arbitrary and capricious standard into *de novo* review, supplementation is appropriate only where effective judicial review would be hindered by the omission of the extra-record evidence. *Id*. at 1380; *see also Dyncorp Int'l, LLC v. United States*, 125 Fed. Cl. 1, 2 (2016) ("In general, the Court will supplement the administrative record when it is necessary for a full and complete understanding of the issues." (citation omitted)). As judicial review is "effective" when consistent with the APA,

17

this Court must examine whether the omission of Dell Marketing's GSA Schedule from the Administrative Record frustrates the Court's ability to determine whether the Navy's award was arbitrary and capricious. *See AgustaWestland N. Am. v. United States*, 880 F.3d 1326, 1331-32 (Fed. Cir. 2018). The parties' arguments, the Administrative Record, and applicable law demonstrate that this Court may effectively review this procurement without seeing Dell Marketing's full GSA Schedule.

    A.   The "too close at hand" doctrine is inapplicable.

Plaintiff first argues that this Court should supplement the Administrative Record with Dell Marketing's full GSA Schedule because the Schedule was "too close at hand" for the Navy to ignore. Pl. Mem.at 13. It is well-established that "some information is simply too close at hand to require offerors to shoulder the inequities that spring from an agency's failure to obtain, and consider, the information." *Vanguard Recovery Assistance v. United States*, 101 Fed. Cl. 765, 781 (2011) (internal citations and quotations omitted). However, as explained below, the "too close at hand" doctrine is inapplicable here for two independent reasons: (1) the Navy did not possess Dell Marketing's GSA Schedule, and (2) Dell Marketing's GSA Schedule is sought to evaluate conformance with a technical requirement.

Courts typically limit the universe of information that it considers "too close at hand" to documents in the possession of the contracting agency or information that is personally known to the contract evaluator. *See id.* (holding that "FEMA would be obliged to draw upon *internal information* that concerned any of the firms' prior work" under a provision of a solicitation that did not restrict the agency to the references submitted by the offerors (emphasis added)); *MG Altus Apache Co. v. United States*, 102 Fed. Cl. 744, 751 (2012) (finding that a letter from the contractor was too close at hand to ignore because it was in the agency's possession); *Chenega Healthcare*

*Servs., LLC v. United States*, 138 Fed. Cl. 644, 651 (2018) (explaining that the "too close at hand" doctrine occasionally "obliges an agency to consider information that was not included in a proposal but which is known to the agency's evaluators"); *ProSecure, LLC v. United States*, 151 Fed. Cl. 697, 707 (2020) (explaining that the "too close at hand" doctrine may require an agency to consider information that was not cited in an offeror's proposal if the agency "possesses personal knowledge or internal information pertaining to an offeror's contract or prior work").

Plaintiff does not dispute that the Navy did not possess Dell Marketing's GSA Schedule. *See* Pl. Mem. at 14; Pl. Reply. at 14-15.  Nor does Plaintiff point to any evidence indicating that the contracting officer had personal knowledge of the Schedule.  *See* Pl. Mem. at 14; Pl. Reply at 14-15.  Instead, Plaintiff's argument rests solely on the premise that "the Navy can readily obtain a copy [of the Schedule] from either GSA or Dell Marketing."  Pl. Mem. at 14; *see also* Pl. Reply at 14.  However, Insight's proposed "readily obtain" threshold is not the applicable standard. Instead, as noted, documents are only considered "too close at hand" to ignore if they were in the agency's possession or if the contracting officer had personal knowledge of the documents. *ProSecure*, 151 Fed. Cl. at 707.  Neither scenario applies here.

The "too close at hand" doctrine is further inapplicable because Dell Marketing's GSA Schedule is evidence relevant to a technical requirement — that Dell Marketing's Schedule contains all the required products.  This court has previously "refused to extend the 'too close at hand' doctrine to the evaluation of technical proposals."  *Chenega*, 138 Fed. Cl. at 651 (quoting *Career Training Concepts, Inc. v. United States*, 83 Fed. Cl. 215, 232 (2008)).  Indeed, each case cited by Plaintiff applies the "too close at hand" doctrine to past performance evaluations rather than technical evaluations.  *See, e.g.*, *Int'l Res. Recovery, Inc. v. United States*, 64 Fed. Cl. 150, 163 (2005) (explaining that "some past performance information" is "too close at hand" to exclude

from consideration); *Vanguard*, 101 Fed. Cl. at 781 (applying the "too close at hand" doctrine to supplement the record with information concerning the contractor's previous work performance); *MG Altus Apache*, 102 Fed. Cl. at 751-52 (using the "too close at hand" doctrine to supplement the record with a letter from the contractor to the contracting officer because the letter was relevant to making a responsibility determination).

The only exception this Court is aware of is the narrow case when a solicitation's technical criteria encompass traditional responsibility considerations.  *See Career Training Concepts*, 83 Fed. Cl. at 232.  Application of the "too close at hand" doctrine in such cases makes sense as contracting officers reviewing responsibility considerations, like contracting officers evaluating past performance, have broad discretion to choose the information they evaluate.  *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334-35 (Fed. Cir. 2001) (noting that contracting officers have wide discretion in determining the amount of information necessary to make a responsibility determination and ultimately in making the responsibility determination); *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed. Cl. 541, 568 (2012) (noting that "there is a great deal of discretion afforded to the Agency with regard to evaluations of past performance").

The concern in both situations is that the contracting officer's wide discretion could result in inequitable selections of the information used to evaluate the bids.  Take, for example, a procuring agency evaluating the past performance of a first offeror and second offeror that both have a mixed history of performance.  Further presume that the agency possesses documentation of these performance histories.  It would obviously be improper for the agency to develop an administrative record of favorable reviews for the first offeror to the exclusion of negative reviews of the first offeror, while doing the opposite for the second offeror.  While seemingly permissible

due to the wide discretion given contract evaluators, such an evaluation would be inconsistent with the competitive procurement system. *See Cont'l Mar. of San Diego, Inc.*, B-249858.2 et al., 93-1 CPD ¶ 230, 4 (Comp. Gen. Feb. 11, 1993). In this hypothetical, the "close at hand" doctrine would require the agency to consider the favorable evaluations of the second offeror to avoid inappropriately forcing the second offeror "to shoulder the inequities that spring from an agency's failure to obtain and consider the information." *Int'l Res., Inc.*, 64 Fed. Cl. at 163 (citation omitted).

That danger is absent in technical assessments like the one present in this action. "Technical merit or acceptability concerns an assessment of whether the offeror's approach and resources as described in its proposal are worthy of a particular rating or adequate to meet the needs of the agency as expressed in the RFP." *Cont'l Mar. of San Diego, Inc.*, B-249858.2 et al., 93-1 CPD ¶ 230, 4 (Comp. Gen. Feb. 11, 1993). The technical assessment thus focuses on information submitted with the proposal and must be conducted using the evaluation criteria outlined in the solicitation. *GEC Avionics, Inc.,* B-250957, 93-2 CPD ¶ 24, 3 (Comp. Gen. Feb. 25, 1993). Here, the solicitation instructed bidders to "only provide Microsoft product listing and pricing," rather than their entire GSA schedules. Tab 3.3 at AR 104. Both parties submitted lists of their Microsoft products in lieu of their full GSA schedules. *See, e.g.*, Tabs 8.10 (Insight Product and Price List, dated May 4, 2021) at AR 3481-9; 11.29 (Dell Updated Microsoft Price List on Dell Marketing's Federal Supply Schedule Contract, submitted May 20, 2021) at AR 3830-4357. Neither party can be said to bear an inequitable burden because the Navy considered the same type of information for both parties. There simply is no reason to apply the "too close at hand" doctrine here.

That supplementation of administrative records with information relevant to technical analyses has been deemed proper in cases like *Alaska Structures, Inc. v. United States*, 144 Fed. Cl. 80 (2019), and *Midwest Tube Fabricators, Inc. v. United States*, 104 Fed. Cl. 568 (2012), does not counsel otherwise.  Neither opinion references the "too close at hand" doctrine.  Instead, supplementation of the administrative record occurred on other grounds inapplicable here.  *See Alaska Structures*, 144 Fed. Cl. at 86-87 (supplementing the record with information relevant to the technical analysis to resolve a plausible misrepresentation claim); *Midwest Tube*, 104 Fed. Cl. at 575 (supplementing the record with information relevant to contractor eligibility because the court identified gaps in the record).

Plaintiff's reliance on *Eracent, Inc. v. United States*, 79 Fed. Cl. 427 (2007) is similarly unavailing.  According to Plaintiff, *Eracent* stands for the proposition that an agency is required to verify the contents of an offeror's GSA schedule.  Pl. Reply at 14.  However, the *Eracent* court merely granted what appears to be an unopposed motion to supplement the record with a GSA price list.  *Compare* 79 Fed. Cl. at 428 n.2 (granting Eracent's motion in Case No. 1:07-cv-00724-EGB to supplement the record with, *inter alia*, a GSA Price List), *with* Civil Docket for Case No. 1:07-cv-00724-EGB (absence of any motion opposing Eracent's motion to supplement the record).  The court granted that motion "because the challenged procurement [was] traceable to a sole source delivery order[,]" not because the GSA price list was necessary to confirm compliance with an RFQ.  *Eracent*, 79 Fed. Cl. at 428 n.2.  While the court indicated that "the contracting agency must verify that all items on the order are within the scope of the vendor's FSS contract[,]" it did not foreclose the agency doing so by reviewing documentation provided by the contractors, rather than by reviewing the FSS contracts themselves.  *Eracent*, 79 Fed. Cl. at 430.  Thus, the Navy's decision to rely on the bidders' representations that their FSS contracts included the required

products does not conflict with the court's holding in *Eracent*.

In sum, while the "too close at hand" doctrine may permit supplementation of the administrative record in some cases, it does not apply here.  Dell Marketing's GSA Schedule relates to a technical requirement of the Navy's solicitation, having certain Microsoft products on the offeror's GSA Schedule, and the "too close at hand" doctrine is inapplicable to technical evaluations.  Notwithstanding Plaintiff's failure to appreciate the charted depths of the doctrine, supplementation under the "too close at hand" doctrine is inappropriate here because, among other reasons, it is undisputed that the Navy did not actually possess Dell Marketing's GSA Schedule. Tab 40 at AR 4741.  Accordingly, the Court declines to supplement the Administrative Record with Dell Marketing's full GSA Schedule.

B. The Administrative Record Does Not Contain Gaps.

Having determined that Dell Marketing's full GSA Schedule was not so close at hand that it should be considered part of the Administrative Record, the Court turns to whether the Schedule is necessary to fill any gaps in the Record.  Plaintiff argues that the Administrative Record contains gaps "regarding Dell Marketing's eligibility for award" that require supplementation.  Pl. Mem. at 16.  This Court disagrees.

Occasionally, courts supplement the administrative record to fill gaps.  *Lockheed Martin Corp. v. United States*, 124 Fed. Cl. 709, 722 (2016).  "Gaps in the administrative record may arise in a variety of circumstances and require supplementation for a number of reasons."  *Midwest Tube*, 104 Fed. Cl. at 573.  For example, supplementation may be warranted when physical documents from the administrative record are destroyed.  *See Pitney Bowes Gov't Solutions, Inc. v. United States*, 93 Fed. Cl. 327, 334-36 (2010) (allowing supplementation to reconstruct information contained in bid-proposal evaluations destroyed by the procuring agency's contracting

officer).  Supplementation of the administrative record may also be appropriate when a previous legal claim or privilege that prevented a document's inclusion in the record is no longer operative.  *See Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 82 Fed. Cl. 757, 771-72 (2008) (permitting extra-record evidence and discovery on information related to past-a performance evaluation omitted from the record on attorney-client privilege grounds after potential waiver of the privilege).  Supplementation may also be warranted when there are logical gaps in the administrative record.  *See J.C.N. Const. Co. v. United States*, 60 Fed. Cl. 400, 404 n.8 (2004) (explaining that the court could rely on extra-record, past-performance evaluations of plaintiff because the administrative record did not adequately explain why the Navy used such data for other offerors but not plaintiff), *aff'd,* 122 F. App'x 514 (Fed. Cir. 2005) (per curiam).

Plaintiff's Administrative Record lacks any physical, legal, or logistical gaps.  As noted above regarding Plaintiff's request to complete the Administrative Record, Dell Marketing's GSA Schedule is not a document that was before the agency during the procurement and is now missing. The Navy provided a detailed record of how it used the documents included in the Administrative Record to evaluate the solicitations, including how it determined that Dell Marketing's Schedule contained the necessary Microsoft products.  *See, e.g.*, Tabs 8.9 (Navy E-mail Chain regarding Technical Evaluations, dated May 6, 2021); 8.11 (Dell Technical Evaluation Report, dated May 6, 2021), 8.12 (Insight Technical Evaluation Report, dated May 6, 2021); 12.1 at AR 4374-75; 39 at AR 4737; 40 at AR 4738-41.  At the GAO, the Navy explained that its contract specialist compared the forms and spreadsheets Dell submitted (*i.e.*, the "Product and Price List" and the "Evidence of Product Inclusion and Pricing on GSA Schedule") "SKU by SKU."  Tab 40 at AR 4739.  The Navy determined that "[a]lmost all of the SKUs and associated GSA prices listed on Dell's BPA Attachment 2 – BPA Product and Price List were matched using this method to the GSA SKUs

and prices on Dell's Consolidated Microsoft Products excel." *Id*.  Where discrepancies existed,
Dell Marketing (as contemplated by the RFQ) appropriately marked the reason for the difference
in the Vendor Comments column and provided further explanations during its second round of
clarifications.  *Id*.  The Navy provided a similarly detailed explanation of how it reviewed Dell
Marketing's solicitation during reevaluation after suspension of the award to Insight.  *See id*. at
4740–41; Tab 37 (Navy Response to Insight Objection to Navy Document Production, dated July
9, 2021) at AR 4725.  Whether that process was arbitrary and capricious is a merits question.  The
Court is satisfied at this stage, however, that it does not face any gaps in the Administrative Record.

Plaintiff mistakenly relies on *Midwest Tube,* 104 Fed. Cl., to support its position.  *Midwest
Tube* involved a FAR Part 13 procurement for emergency-preparedness kits that included, among
other things, fire extinguishers and panel marker signals.  *Id.* at 570-2.  FAR 13 is titled "Simplified
Acquisition Procedures," and generally requires a purchasing agency to minimize documentation.
*Id.* at 573 (citing FAR § 13.106-3(b)).  The informal nature of the FAR 13 procurement created
gaps.  *See id.* ("a gap may exist largely because of the informal nature of the agency's action"
(internal quotations and citation omitted)).  The administrative record in *Midwest Tube* originally
comprised only 68 pages.  *Id.*

In contrast, the present action did not proceed under the strictures of FAR 13.  The
Administrative Record is comprehensive; it originally spanned almost 6,500 pages.  Original
Administrative Record (ECF Nos. 25-2 – 25-5).  When the parties discovered two documents that
were, unlike Dell Marketing's GSA Schedule, considered during the procurement but omitted from
the Administrative Record, they moved to supplement the record.  *See* Defendant's Unopposed
Motion to Amend Administrative Record (ECF No. 42).  The rationale for supplementing the scant
record in *Midwest Tube* does not apply to the more formal Administrative Record developed here.

Even the specific gaps observed in *Midwest Tube* are distinguishable.  First, the court found it necessary to supplement the administrative record because the parties disputed when the contract was awarded, and the administrative record did not include information relevant to that dispute. *Midwest Tube*, 104 Fed. Cl. at 574.  Second, the court found it necessary to supplement the administrative record because the parties disputed whether one of the offeror's panel marker signals complied with the terms of the request for proposals and the administrative record again did not include information relevant to that dispute.  *Id.*  Finally, the court found it necessary to supplement the administrative record because the record did not indicate why the agency considered one bid compliant and the other noncompliant when the parties promised different delivery dates for fire extinguishers manufactured by the same company.  *Id.*

In contrast, the Administrative Record here includes detailed evidence relevant to the dispute, including, *inter alia*, the Navy's method of evaluating each bid.  *See, e.g.*, Tab 40.  The Administrative Record does not leave questions as to who won the bid, why they won the bid, or when they won the bid.  The  Court may not supplement the Administrative Record in the absence of such gaps.

Insight's citation to *Oak Grove Techs., LLC v. United States*, No. 21-775C, 2021 WL 3627111 (2021), is also inapposite.  Pl. Mem. at 7, 16-18.  In *Oak Grove*, the court supplemented the record with a report prepared specifically for the procurement at issue.  *Oak Grove*, 2021 WL at *10 ("the government filed a corrected administrative record . . . including a [Defense Contract Management Agency] financial capability report regarding Lukos' cost/price volume").  Rather than supporting the contention that any document potentially bearing upon an offeror's eligibility should be part of the administrative record, *Oak Grove* stands for the unremarkable proposition that a document generated for the procurement may properly be added to the record.  *Id.* at *12-13.

26

This Court can adequately apply the APA standard of review to the Navy's procurement decision in the present action without supplementing the Administrative Record.  As noted, the "too close at hand" doctrine does not compel supplementation of the record with Dell Marketing's full GSA Schedule, and the Administrative Record does not contain gaps that need to be filled by Dell Marketing's GSA Schedule.  Supplementation is, therefore, improper.

III.   <u>The Court Can Adequately Address Insight's Request for Injunctive Relief Without Supplementing the Administrative Record.</u>

Finally, Plaintiff argues that if, as here, the Court declines to complete or supplement the Administrative Record with Dell Marketing's full GSA Schedule, this Court should nevertheless require production of the Schedule for inclusion in this Court's record.  *Id.* at 19.  Specifically, Plaintiff argues that this Court will need to review Dell Marketing's GSA Schedule because the Schedule "is relevant to meeting the irreparable harm or competitive prejudice factors of the injunctive relief test."  *Id.*  While this Court may consider otherwise inadmissible materials "as part of this court's record" where the evidence relates to prospective relief sought, *PlanetSpace, Inc. v. United States*, 90 Fed. Cl. 1, 5 (2009), the Court need not do so here because the contents of Dell Marketing's GSA Schedule are irrelevant to the injunctive relief analysis in this action.

The Court considers four factors when deciding whether to grant injunctive relief: (1) whether the plaintiff has succeeded on the merits, (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) whether the balance of hardships to the respective parties favors granting an injunction, and (4) whether the public interest is served by granting an injunction.  *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).  When analyzing the merits of "a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial."  *Glenn Def. Marine (ASIA), PTE Ltd. V. United States*, 720 F.3d 901, 907

(Fed. Cir. 2013).  Given Plaintiff's focus on competitive prejudice and irreparable harm, this Court need only address the first two factors in the injunctive relief analysis for purposes of the present motion.

Plaintiff has not demonstrated that Dell Marketing's full GSA Schedule is necessary for, or even relevant to, establishing whether the award to Dell Marketing was prejudicial.  "Prejudice is the link between any illegal or arbitrary procurement actions proven by a plaintiff, and harm to that party's direct economic interest." *East West, Inc. v. United States*, 100 Fed. Cl. 53, 57 (2011).  To show prejudice, Plaintiff must demonstrate that there is a "substantial chance" it would have received the contract award if not for agency errors in the bidding process. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353 (Fed. Cir. 2005).

Defendant concedes that Plaintiff can meet this threshold based on the current Administrative Record.  Def. Resp. at 33.  Here, the alleged agency error directly concerns Dell Marketing's eligibility to compete for the BPA.  Compl. ¶ 110; Pl. Mem. at 19.  As Defendant concedes, Plaintiff was the only other bidder, making it highly probable that Plaintiff would have won the award if Dell Marketing had been disqualified.  Def. Resp. at 33.  Indeed, the Navy determined that Plaintiff's quote met the RFQ eligibility criteria during the agency's initial review, and the agency initially awarded Plaintiff the BPA.  Tab 9 at AR 3498.  While Plaintiff notes that Dell Marketing's GSA Schedule could conclusively demonstrate whether Dell Marketing was eligible for award, *see* Pl. Mem. at 19, such an inquiry relates to the merits of Plaintiff's claims.  In contrast, the applicable prejudice analysis focuses on whether Plaintiff can demonstrate a sufficient likelihood that it would have won the BPA if Dell Marketing had been ineligible to participate in the procurement.  The Navy's initial award to Insight — the only competing bidder for this BPA — shows a high probability, if not certainty, that Insight would have won the award

if Dell Marketing had been found ineligible.  Thus, this Court need not review the contents of Dell

Marketing's full GSA Schedule to evaluate whether the agency's conduct prejudiced Plaintiff.

Nor is Dell Marketing's full GSA Schedule relevant to Plaintiff's burden of showing

irreparable harm.  Under this factor, courts weigh whether the plaintiff has an adequate remedy in

the absence of an injunction.  *Serco Inc. v. United States*, 81 Fed. Cl. 463, 501 (2008).  A plaintiff

meets this standard when it shows it was "deprived of the opportunity to compete fairly for a

contract."  *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 494 (2013) (collecting cases).

This factor concerns the magnitude of harm, not whether the agency's actions caused harm

in the first instance.  *See East West*, 100 Fed. Cl. at 57 ("recognizing that a bid protester's

entitlement to relief may often turn on considerations of injury that spring from the challenged

actions").  Accordingly, when a court admits extra-record evidence relevant to injunctive relief, it

generally admits materials created after the protested action occurred.  *See id.* at 57-58 (admitting

to the court's record a declaration, drafted after the protested award was made, from the plaintiff's

vice president because the declaration explained how allegedly misleading communications from

the agency induced plaintiff to fatally alter its proposal); *Gentex Corp. v. United States*, 58 Fed.

Cl. 634, 649 (2003) (finding it appropriate to supplement the court's record with post-award

declarations from protestor's vice president and general manager explaining "how [protestor]

would have changed its proposal were it not for the [agency's] illegal actions"); *CW Gov't Travel,

Inc.*, 110 Fed. Cl. at 483 (denying motions to strike two post-award declarations because one spoke

to the harm the government would suffer if forced to award a second contract to protestor or

reevaluate protestor's technical acceptability, and the other declaration countered the first

declaration); *Ala. Aircraft Indus., Inc.*, 82 Fed. Cl. at 764 (granting motion to add protestor's Form

10-K to the court's record in so far as it showed that the contract in question accounted for two-

thirds of protestor's revenue the previous year, which was relevant to establishing irreparable harm).

In other words, "evidence of the prejudicial effect *vel non* of a procurement decision or the ramifications of injunctive relief would necessarily post date and flow from such agency decision." *AshBritt, Inc. v. United States,* 87 Fed. Cl. 344, 367 (2009); *see also East West*, 100 Fed. Cl. at 57 (explaining that "considerations of injury that spring from the challenged actions . . . could not be reflected in the agency record underlying those actions").  Dell Marketing's GSA Schedule existed prior to the events leading to Plaintiff's protest.  If anything, the Schedule precipitated this protest, but it does not inform this Court of the ramifications of the Navy's award to Dell Marketing.  Thus, the Schedule is irrelevant to whether Plaintiff suffered irreparable harm warranting injunctive relief.

While this Court may consider extra-judicial materials in its injunctive relief analysis, that analysis is not an open avenue to introduce any material the plaintiff desires.  The requested extra-judicial materials must relate to one of the four factors this Court considers when evaluating requests for injunctive relief.  Dell Marketing's GSA Schedule is irrelevant to all of them. Accordingly, just as with the Administrative Record, the Court denies Plaintiff's request to supplement the Court's record with Dell Marketing's GSA Schedule.

<u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's Motion to Complete the Administrative Record (ECF No. 26) is **DENIED**.  The parties are directed to **CONFER** and **FILE** a Notice within 7 days, attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted.


IT IS SO ORDERED.

  s/Eleni M. Roumel
ELENI M. ROUMEL
Judge

December 9, 2021
Washington, D.C.