# In the United States Court of Federal Claims

INSIGHT PUBLIC SECTOR, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

DELL MARKETING L.P.,

Intervenor-Defendant.

No. 21-cv-1755

Filed Under Seal: December 9, 2021

Publication: December 16, 2021[1]

*Kyle R. Jefcoat*, Latham & Watkins LLP, Washington, District of Columbia for Plaintiff.  With him on the briefs are *David R. Hazelton* and *Julia A.C. Lippman*, Latham & Watkins LLP, Washington, District of Columbia.

*William P. Rayel*, United States Department of Justice, Civil Division, Washington, District of Columbia for Defendant.  With him on the briefs are *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division; *Martin F. Hockey, Jr.*, Acting Director, Commercial Litigation; *Douglas K. Mickle*, Assistant Director, Commercial Litigation; *Tracey Ferguson*, Naval Information Warfare Center Pacific; *Stephen T. O'Neal*, General Services Administration.

*Craig A. Holman*, Arnold & Porter Kaye Scholer LLP, Washington, District of Columbia for Intervenor-Defendant.  With him on the briefs are *Amanda J. Sherwood* and *Aime JH Joo*, Arnold & Porter Kaye Scholer LLP, Washington, District of Columbia.

---

[1] This Memorandum and Order was filed under seal in accordance with the Protective Order entered in this case (ECF No. 10) and was publicly reissued after incorporating all redactions proposed by the parties.  (ECF No. 60.)  The sealed and public versions of this Memorandum and Order are otherwise identical, except for the publication date and this footnote.

## MEMORANDUM AND ORDER

In this post-award bid protest, Plaintiff, Insight Public Sector, Inc. (Plaintiff or Insight), challenges a decision by Defendant, the United States, acting through the U.S. Department of the Navy (Navy), to award a Blanket Purchase Agreement (BPA) to Intervenor-Defendant, Dell Marketing L.P. (Intervenor-Defendant or Dell Marketing).  Under the BPA, the awardee will be the Navy's exclusive provider of Microsoft software licenses, software maintenance, and user-based subscriptions for a one-year base ordering period with four one-year options.  The Navy initially awarded the BPA to Insight.  Subsequently, however, the Navy suspended the award and reopened bidding after Dell Marketing alleged that Insight may not have fully and accurately priced certain required products following price changes from their shared supplier, Microsoft. Insight alleges that the Navy's final award of the BPA to Dell Marketing violates several statutes and regulations.  Specifically, it argues that (1) the Navy failed to evaluate whether Dell Marketing's proposal complied with the requirements in the Request for Quotations; (2) Dell Marketing was ineligible for award because it did not have a valid Contractor Teaming Arrangement, necessary for it to meet some eligibility requirements; (3) the Navy conducted a flawed past performance evaluation; (4) the Navy displayed bias in favor of Dell Marketing throughout the procurement; and (5) the Navy failed to investigate a potential violation of the Procurement Integrity Act (PIA).  *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 34) (Pl. Mem.) at 3.

Pending before the Court are Plaintiff's Motion for Judgment on the Administrative Record, (ECF No. 33) (MJAR), Defendant's Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's MJAR, (ECF No. 38) (Def. Cross-MJAR), and Intervenor-Defendant's Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's

MJAR.  (ECF No. 39) (Int.-Def. Cross-MJAR).  The Court conducted oral argument on November 17, 2021 and has considered the parties arguments in their briefs.  Transcript of Oral Argument dated November 17, 2021 (ECF No. 51) (Tr. Oral Arg.).  For the reasons explained below and subject to the deadlines addressed in the Conclusion section of this Memorandum and Order, this Court **GRANTS IN PART** Plaintiff's MJAR and **DENIES IN PART** Defendant's Cross-MJAR and Intervenor-Defendant's Cross-MJAR.  This Court **REMANDS** this action to the Navy to investigate Plaintiff's first allegation of a PIA violation; namely, that the information in Dell Marketing's May 27, 2021 email to the Navy concerning certain allegedly mispriced Contract Line Item Numbers (CLINs) in Insight's bid potentially indicates a PIA violation occurred.  Defendant United States, which includes the Navy, is **ENJOINED** from implementing or otherwise proceeding with the BPA award during its PIA investigation and pending further Order of this Court.

BACKGROUND

This post-award bid protest concerns the Navy's Solicitation No. N66001-21-Q-0082 for the award of a BPA for the provision of Microsoft software licenses, software maintenance, and user-based subscriptions.  Complaint (ECF No. 1) (Compl.) ¶ 1.  Two vendors, Insight and Dell Marketing, submitted initial bids on April 6, 2021.  Tab 9 (Initial Clearance Memorandum, signed May 15-16, 2021) at Administrative Record (AR) [2] 3511.  After reviewing the initial bids, the Navy requested that Insight and Dell Marketing address certain CLINs that did not match products listed on their respective General Services Administration Federal Supply Schedule contracts,[3]

---

[2] The Administrative Record is contained in ECF Nos. 25-2 – 25-5 and 48.  Documents within the Administrative Record are divided into "Tabs."  An index of the Tabs comprising the Administrative Record can be found at ECF No. 25-1.

[3] The Navy's Request for Quotations (RFQ) required resellers (*i.e.*, Insight and Dell Marketing) to have a current General Services Administration Federal Supply Schedule contract covering the

reduce pricing for certain CLINs, and submit their best and final offers (BFOs) by May 6, 2021. Tabs 7.1 (Additional Emails between the Navy and Dell regarding Dell's Quote, dated May 4-6, 2021) at AR 3340-47; 7.2 (Additional Emails between the Navy and Insight regarding Insight's Quote, dated May 4-6, 2021) at AR 3357-66.  On May 6, 2021, Insight and Dell Marketing timely submitted their BFOs, including the changes requested by the Navy.  Tabs 7.1 at AR 3348-56; 7.2 at AR 3367-78.  Insight's and Dell Marketing's BFOs had evaluated prices of $2,555,033,130 and $2,582,354,460, respectively.  Tab 9 at AR 3511.  On May 21, 2021, the Navy notified Insight that it was the recipient of a BPA under Solicitation No. N66001-21-Q-0082.  Tab 10.1 (Notice of BPA Award to Insight, dated May 21, 2021) at AR 3518.

As noted, under the BPA, currently valued at approximately $2.5 billion, the awardee would be the Navy's exclusive provider of Microsoft software licenses, software maintenance, and user-based subscriptions for a one-year base ordering period with four one-year options.  *See* Tabs 3.3 (Amendment 2 to RFQ, dated March 31, 2021) at AR 79-80; 9 at AR 3511.  The Navy will be the first Department of Defense (DoD) agency to use the BPA.  Tab 3.3 at AR 101.  It is expected that other DoD agencies will join the BPA — with the awardee remaining as the sole provider of Microsoft products and services — as each agency's current enterprise agreement for Microsoft products expires.  *Id.* at AR 79-80 ("The Government estimates, but does not guarantee, that the volume of purchases through this BPA will be $3.4 billion.").

The Microsoft products and services listed under the BPA are distributed across several hundred CLINs.  *See id.* at AR 106-11.  While the value of each CLIN varies, approximately 19 high-value CLINs each contribute $20 million or more to the BPA's total value.  Tab 7.1 at AR

---

duration of BPA.  Tab 3.1 (Excerpts from Original RFQ, dated March 17, 2021) at AR 32; *see also* Tab 3.3 (Amendment 2 to RFQ, dated March 31, 2021) at AR 102.

3352-54 (CLINs x100, x101, x102, x104, x105, x106, x120, x407, x 453, x497, x511, x729, x744, x746, x761, x765, x768, x781, and x784.).   At some point near the deadline for bid submissions, Microsoft changed its pricing for certain promotional CLINs and informed both Insight and Dell Marketing of this change.   *See* Tab 44 (Navy Response to Insight Supplemental Protest and Comments, dated July 20, 2021) at 4921-25.   While the price-change occurred before the deadline for submission of final offers, the exact date remains unclear.   Tr. Oral Arg. at 45, 91.

The Navy initially awarded the BPA to Insight, explaining that while both bidders met the award criteria, Insight's "overall price was $27,321,330 less than Dell Federal System's [sic] submission."   Tab 9 at AR 3498.   Insight's procurement victory proved fleeting.   On May 26, 2021, the Navy notified Dell Marketing of the award to Insight.   Tab 10.2 (Email Chain between the Navy and Dell regarding BPA Award to Insight, dated May 26-27, 2021) at AR 3520-22.   The May 26 notification listed the total evaluated price of each vendor's quote and each vendor's past performance ratings.   *Id.* at AR 3522.   It did not, however, disclose CLIN-level pricing.   *Id.*   On the same day that the Navy notified Dell Marketing of the award to Insight, Dell Marketing requested a debriefing.   *Id.* at AR 3520.   Although the Navy denied that request, it permitted Dell Marketing to submit any "specific questions" it had about the award.   *Id.* at AR 3519-20.   Dell Marketing responded by email on May 27, 2021, raising a concern that "the pricing evaluation may not be comparing apples to apples, leading to a disadvantage for Dell and a possible misrepresentation of total price to the Government over the term of the agreement."   *Id.* at AR 3519.   Dell Marketing further explained that its competitor's bid may have incorrectly priced four promotional CLINs:[4]

---

[4] Two of these four promotional CLINs identified by Dell Marketing, x729 and x765, were among the approximately 19 high-value CLINs discussed above.

> Throughout the bidding process, Microsoft made multiple revisions to the pricing for the Project & Visio bundle promotional CLINs – x728, x729, x764, x765. Microsoft originally offered only 3 years of pricing for these bundles but, at last minute, extended an offer for years 4 & 5 at a lesser discount. The lesser discount on the bundle is still less expensive than procuring the underlying products on a stand-alone basis. . . .
>
> We are concerned that competitors' proposals may have included no pricing for these bundled CLINS in years 4 and 5 due to the late timing of Microsoft's change to the offering. If that were the case, then the Dell Total Evaluated Price would be unfairly evaluated at more than $██ higher than a competitor's offer that shows no pricing for these CLINS in Years and 4 and 5.

*Id.*

Dell Marketing asked the Navy to "validate that all bidders provided complete pricing for all CLIN[s] in all years."  *Id.*  In response to Dell Marketing's query, the Navy reviewed the bidders' BPA Product and Price lists.  *See* Tab 12.1 (Final Business Clearance Memorandum, signed June 3-7, 2021) at AR 4374.  It confirmed that Dell Marketing had priced years 4 and 5 of the promotional CLINs while Insight had not.  *Id.*  The Navy further noted that "[t]he value of that difference was ~ $██, which impacted the award."  *Id.*

Concerned that a protest by Dell Marketing would be successful, on May 27, 2021 — the same day that Dell Marketing raised its concerns to the Navy — the Navy issued a notice suspending the award to Insight "in order to re-evaluate the pricing submitted in response to the subject RFQ."  Tab 11.1 (Emails regarding Suspension of Insight Award and Submission of Revised Price Lists, dated May 27-28, 2021) at AR 3523, 3525.  The Navy offered the following explanation:

> A discrepancy was found in how the promotional CLINs/ SKUs x728, x729, x764 and x765 provided by Microsoft should be applied. One vendor submitted pricing for years 4 and 5 of those CLINs/SKUs, while the other zeroed the pricing for those CLINs/SKUs for years 4 and 5. The discrepancy is significant enough to impact the award decision.

*Id.*  The Navy did not mention, however, that Dell Marketing had brought this possible discrepancy, including the four referenced promotional CLINs, to the Navy's attention.  *See id.*

The Navy allowed the parties to submit revised bids on a rapid timeline, and both Insight and Dell Marketing submitted new best and final offers by the May 30, 2021 deadline.  *See* Tabs 11.16 (Email from Dell to Navy transmitting its Revised Price Proposal Version 3, dated May 29, 2021) at AR 3699-703; 11.19 (Email transmitting Insight's Final Pricing, dated May 30, 2021) at AR 3738-43; 11.21 (Letter from Insight to Navy regarding Final Pricing, dated May 30, 2021) at AR 3753.  Two days later, on June 1, 2021, the Navy notified Insight that it had awarded the BPA to Dell Marketing.  *See* Tab 1 (Notification to Insight Public Sector, Inc. of BPA award to Dell Marketing, dated June 1, 2021) at AR 1.  The Navy informed Insight that Dell Marketing's new bid was nearly $87 million less than Insight's new bid.  *Id.*  The Navy explained in a business clearance memorandum that although Insight's past performance was "slightly better than Dell's," (even though the Navy rated Insight's and Dell Marketing's past performance as identical) Insight's superior past performance "was not enough to overcome almost an $87M price difference."  Tab 12.1 at AR 4360 (valuing Insight's "slightly better" past performance at "no more than $5 million over the course of 5 years").

Subsequently, on June 7, 2021, Insight filed a bid protest before the Government Accountability Office (GAO).  *See* Tab 19 (Insight GAO Protest, dated June 7, 2021) at AR 4531-95.  The Navy produced its Agency Report on July 6, 2021, revealing to Insight for the first time that Dell Marketing had identified specific promotional CLINs in its May 27, 2021 email to the Navy.  Tab 34 (Navy Contracting Officer Statement of Facts and Memorandum of Law, dated July 6, 2021) at AR 4687-718.  Insight responded to this new information by filing a supplemental protest at the GAO on July 9, 2021.  Tab 38 (Insight Supplemental Protest, dated July 9, 2021) at

AR 4727-35.  In its supplemental protest, Insight detailed its belief that Dell Marketing's May 27, 2021 email evidenced a violation  of the Procurement Integrity Act (PIA).  *Id.*

The Administrative Record does not contain independent documentation of a Navy investigation into the alleged PIA violations.  In the Navy's response to Insight's supplemental protest at the GAO, however, it argued insufficient evidence existed to require a PIA investigation. *See* Tab 44 at AR 4928-30.  The Navy explained to the GAO that although Dell Marketing's May 27, 2021 question to the Navy was "highly specific, it was also not an unreasonable assumption." *Id.* at AR 4927.  In support of its decision to forgo a PIA investigation, the Navy further elaborated that "Dell indicated Microsoft initially did not offer promotional pricing for years 4 & 5 of the Promo CLINs, but at the last minute (but apparently before its initial quote on 6 April 2021) offered a lesser discount."  *Id.*  The Navy also argued that only a handful of CLINs could have affected the price evaluation, despite that the BPA included over 500 CLINs:

> A review of the vendors' 6 May 2021 BPA Attachment 2 – BPA Product and Price Lists shows that there are a limited number of "heavy hitters" that will affect the price evaluation. There are 19 CLINS (which includes two of the [CLINs cited in Dell Marketing's May 7, 2021 email]), which are each priced out over $20M for the 5 year period of performance. (*See* AR 7, Dell, Item 4 p. 308, and AR 7, Insight, Item 4, p. 314.) Taken together, the evidence supports Dell may have just made a reasonable assumption about the Promo CLINs, which turned out to be true.

*Id.* at AR 4928.

Before the GAO resolved the parties' dispute, Insight informed the GAO that it would file a bid protest action in this Court.  Tab 49 (Insight Notice of Intent to File Protest in Court of Federal Claims and Request to Provide Protected Information United States Government Investigative Agencies, dated August 17, 2021) at AR 5042.  The GAO dismissed Insight's protest when Insight filed the present action.  Tab 52 (GAO Dismissal of Insight's Protest, dated August 26, 2021) at AR 5046.

APPLICABLE LEGAL STANDARD

This Court reviews post-award bid protests pursuant to the Administrative Procedure Act (APA). 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A); *see Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000). The APA requires a reviewing court to determine whether an agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] . . . unsupported by substantial evidence." 5 U.S.C. § 706; *see also Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974); *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997) ("Although the inquiry [under the APA] is to be searching, it does not permit the court to substitute its judgment for that of the agency." (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416-20 (1971))).

To prevail in a post-award bid protest, a plaintiff must demonstrate that: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). When a challenge is brought under the first ground, the court reviews whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.'" *Id.* at 1333 (internal quotations omitted). The court applies a "highly deferential" standard when reviewing challenges to an agency action for lack of a rational basis assuming a "presumption of regularity" by the agency. *Id.* at 1332-33; *Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1382 (Fed. Cir. 2018); *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008). When a challenge is brought under the second ground, the court reviews whether there was "a clear and prejudicial violation of applicable statutes or regulations." *Impresa*, 238 F.3d at 1333 (internal quotations omitted).

Where, as here, parties have filed cross motions for judgment on the administrative record, Rule 52.1 of the Rules of the United States Court of Federal Claims (Rules or RCFC) allows the parties to seek an equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States,* 404 F.3d 1346, 1356 (Fed. Cir. 2005). Courts resolve questions of fact by relying on the administrative record. *Id.* If necessary, a court may remand the case back to a governmental agency under RCFC 52.2 for further factual findings.

A court's analysis of a bid protest proceeds in three steps. First, "the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract." *Id.* at 1351. Second, "if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct." *Id.* Third, the court determines whether injunctive relief is appropriate based on the plaintiff's likelihood of success on the merits, irreparable harm, the balance of hardships to the parties, and the public interest in an injunction. *See Centech Grp., Inc. v. United States,* 554 F.3d 1029, 1037 (Fed. Cir. 2009).

<u>DISCUSSION</u>

The Procurement Integrity Act (PIA) mandates that a federal government official "shall not knowingly disclose contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates," and contractors "shall not knowingly obtain contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates." 41 U.S.C. § 2102(a)(1), (b). To establish a PIA violation, a Plaintiff must demonstrate that: (1) a government actor (2) knowingly disclosed a contractor's "bid or proposal information or source selection information" (3) before the award of the contract "to which the information

relates." *Id.*; *see also Jacobs Tech. Inc. v. United States*, 100 Fed. Cl. 198, 214 (2011) (holding "a PIA violation essentially requires an affirmative act by the offeror to obtain source selection information; simply having knowledge is not enough to support a possible PIA violation"). Agencies have an obligation to investigate potential PIA violations: "A contracting officer who receives or obtains information of a violation or possible violation of [the PIA] must determine if the reported violation or possible violation has any impact on the pending award or selection of the contractor."  FAR 3.104-7(a).

Plaintiff alleges that "the disclosure that violates the PIA is the [Navy's] disclosure of Insight's CLIN pricing for the promotional CLINs in years 4 and 5—option years under the BPA." Pl. Mem. at 28.  Plaintiff contends Dell Marketing's May 27, 2021 email to the Navy, demonstrates "detailed knowledge of Insight's pricing proposal[,]" as the primary basis for its PIA investigation claim.  *Id.* at 12; Plaintiff's Reply in Support of Its MJAR and Response in Opposition to Defendant and Defendant-Intervenor MJARS (ECF No. 44) (Pl. Reply) (citing Tab 10.2 at AR 3519) at 22.  In part, Dell Marketing's May 27, 2021 email to the Navy states:

> "We are concerned that competitors' proposals may have included no pricing for these bundled CLINS in years 4 and 5 due to the late timing of Microsoft's change to the offering. If that were the case, then the Dell Total Evaluated Price would be unfairly evaluated at more than $██ higher than a competitor's offer that shows no pricing for these CLINS in Years and [sic] 4 and 5."

Tab 10.2 at AR 3519.

Plaintiff contends that Dell Marketing had "no legitimate way of knowing" — without inside information — that these specific CLINs for years 4 and 5 gave Insight a $27 million price advantage over Dell Marketing.  Pl. Mem. at 30; Tr. Oral Arg. at 12.[5]  Plaintiff further contends that the Navy must open a PIA investigation related to this contention.

---

[5] At oral argument, Plaintiff's counsel framed the alleged PIA violation as highly possible given

In its reply brief, Plaintiff points to the Navy's subsequent May 27, 2021 email to Insight and Dell Marketing as a second basis for its PIA claim. Pl. Reply at 23. That email indicated the Navy had suspended the original award to Insight and was re-opening bidding for the BPA award because "[o]ne vendor submitted pricing for years 4 and 5 of those CLINs/SKUs, while the other zeroed the pricing for those CLINs/SKUs for years 4 and 5." *Id.* (citing Tab 11.1 at AR 3523-30). Plaintiff argues that "if there had ever been any doubts initially about how Dell Marketing could have learned Insight's pricing, the Navy removed any doubt that it violated the PIA when it [allegedly] disclosed Insight's unit pricing to Dell Marketing on May 27, 2021 in the communication asking offerors to submit new quotes." *Id.*

It is undisputed that the Navy did not conduct a PIA investigation into either of Plaintiff's claims. Pl. Mem. at 27; Def. Cross-MJAR at 41; Intervenor Defendant's Memorandum of Law in Support of Intervenor Defendant's Cross MJAR (ECF No. 39-1) (Int.-Def. Mem.) at 41. For the reasons set forth in this Memorandum and Order, this Court holds that Plaintiff's first PIA allegation, regarding Dell Marketing's May 27, 2021 email to the Navy, required a PIA investigation, while the Plaintiff's second allegation, regarding the Navy's subsequent May 27, 2021 email to Insight and Dell Marketing, does not require such a PIA investigation. Each is addressed in turn.

---

the improbability of Dell Marketing knowing Insight's confidential bid information from a source other than the Navy: "It's four CLINs. And, again, we're talking 500 CLINs, five years of pricing -- more than 500 CLINs, five years of pricing, and they are expressing knowledge of four CLINs for, you know -- not even all of the years, but a few of the years, exactly what happened. That's – it's very specific. It's a . . . $2 1/2 billion procurement. The fact that they are expressing that level of specificity and knowledge about our client's pricing arrangement indicates a possible violation." Tr. Oral Arg. at 12.

I.      First Alleged PIA Violation: Inappropriate Disclosure Prior to Dell Marketing's May 27, 2021 Email to the Navy

Defendants argue that Plaintiff's first PIA allegation concerning Dell Marketing's May 27, 2021 email to the Navy does not require an investigation because (1) the allegation is untimely,[6] (2) the allegation does not amount to a valid PIA claim, and (3) the court's reasoning in *Jacobs Tech. Inc. v. United States*, 100 Fed. Cl. 198 (2011) warrants a ruling in their favor.  Def. Cross-MJAR at 42-47; Int.-Def. Mem. at 41-48.  The Court finds Defendants' arguments unpersuasive.

A.      Insight Timely Raised a Potential PIA Violation.

Plaintiff timely asserted its first PIA-related allegation.  To timely assert a PIA violation, a plaintiff must alert the agency of its allegation within 14 days of discovering a possible violation. 41 U.S.C. § 2106.[7]  While Plaintiff contends that the 14-day time bar is inapplicable in bid protests brought before the Court of Federal Claims given the statute specifically references protests filed before the "Comptroller General" at the GAO, Pl. Reply at 24 n.11, the Federal Circuit has held that "[i]t would be incongruous to bar later GAO protests but to permit a later court challenge." *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1383 (Fed. Cir. 2012).  Furthermore, the Court of Federal Claims has applied the PIA's 14-day bar to protests in this Court.  *See Melwood Horticultural Training Ctr., Inc. v. United States*, 153 Fed. Cl. 723, 742 (2021) (applying 14-day bar to an alleged PIA violation brought in the Court of Federal Claims); *Omega World Travel, Inc.*

---

[6] This argument is adopted by Intervenor-Defendant, but not by Defendant.  Tr. Oral Arg. at 55 (Defendant's counsel: "[I]t's not our position that that was untimely to raise it[.]").

[7] A bidder "may not file a protest against the award or proposed award of a Federal agency procurement contract [and] the Comptroller General may not consider that allegation in deciding a protest" alleging a PIA violation "unless the person, no later than 14 days after the person first discovered the possible violation, reported to the Federal agency responsible for the procurement the information that the person believed constitutes evidence of the offense."  41 U.S.C. § 2106.

*v. United States*, 82 Fed. Cl. 452, 467 (2008) (discussing 14-day time bar in connection with an alleged PIA violation brought in the Court of Federal Claims).

Plaintiff meets this 14-day requirement with regard to its first PIA claim. Plaintiff first became aware of Dell Marketing's May 27, 2021 email to the Navy about Insight's unpriced CLINs for years 4 and 5 when the GAO filed its Agency Report on July 6, 2021. *See* Tab 0 (Agency Report Table of Contents, filed July 6, 2021); Pl. Reply at 22-23. Plaintiff timely filed its supplemental protest at the GAO alleging a potential PIA violation three days later, on July 9, 2021. Tab 38 at AR 4727-35.

Defendant does not contest that Plaintiff's first PIA claim is timely Tr. Oral Arg. at 54-55 ("[I]t's not our position that that was untimely to raise it[.]"), 98-99 ("So to the extent that Insight is alleging that the Navy -- that the Navy should have investigated a PIA violation because of Dell Marketing's May 27th email to the Navy, no, we're not arguing that that is untimely."). In contrast, Intervenor-Defendant argues that Plaintiff's first PIA allegation is time-barred because, it contends, Insight should have discovered a possible violation, if any, on May 27, 2021, when it received the Navy's corrective action email indicating that "[o]ne vendor submitted pricing for years 4 and 5 of those CLINs/SKUs, while the other zeroed the pricing for those CLINs/SKUs for years 4 and 5." Int.-Def. Mem. at 42 (citing Tab 11.1 at AR 3523). Given Insight's unpriced CLINs are the basis for Plaintiff's first PIA claim, Intervenor-Defendant argues that Insight's first PIA claim is time-barred as it should have been filed within 14 days of May 27, 2021. *Id.* at 42-43; Tr. Oral Arg. at 84 ("So if [Insight] actually thought this was a violation, . . . they just got an email telling – Insight should have been like, whoa, why are you guys sending this information about how Dell priced this procurement?").

Plaintiff responds that "[t]he fundamental problem" with Intervenor-Defendant's timeliness argument is that Insight did not learn of a potential PIA violation until the production of the GAO Agency Report on July 6, 2021. Pl. Reply at 23. Given "Insight was not copied on the May 27, 2021 email from the Navy to Dell Marketing" raising concerns about Insight's mispriced CLINs, Plaintiff claims it assumed that the Navy was "operating within the bound of applicable law" when it received the Navy's May 27, 2021 corrective action correspondence. *Id.* at 23-24 (citing Tab 11.1 at AR 3525-30); Tr. Oral Arg. at 100 ("Insight never saw the email that went to Dell."). Thus, Plaintiff contends it was not until the production of the GAO Agency Report on July 6, 2021 that Plaintiff was led to believe a PIA violation had occurred. Pl. Reply at 23.

The Court agrees that the Navy's May 27, 2021 corrective action email to Insight and Dell Marketing did not put Plaintiff on notice of a possible PIA violation. Simply put, that email did not mention that the Navy's corrective action stemmed from Dell Marketing's May 27, 2021 email to the Navy concerning Insight's potentially unpriced CLINs; Plaintiff did not know on May 27 that Dell Marketing's email even existed. *See* Tab 11.1 at AR 3525-30. Further, there was nothing in the Navy's email indicating that the Navy became aware of Insight's mispriced CLINs from Dell Marketing or some other outside source. *Id.* Therefore, as of May 27, 2021, Plaintiff had no reason to believe that a possible PIA violation had occurred.

Tellingly, Intervenor-Defendant does not contend that Insight knew the Navy's corrective action stemmed from information provided by Dell Marketing to the Navy via its separate, May 27 email. *See* Int.-Def. Mem. at 42-43. Nor could it. Rather, Intervenor-Defendant contends that the Navy's corrective action email should have placed Plaintiff on notice that the Navy was aware of problems with Insight's CLIN pricing, and that at base this is the substance of Plaintiff's first PIA claim. *Id.*

This Court disagrees.  Intervenor-Defendant mischaracterizes Plaintiff's first PIA claim.  Plaintiff's claim does not concern the *Navy* noticing Insight's mispriced CLINs.  Rather, Plaintiff's first PIA claim concerns *Dell Marketing* noticing – allegedly by improper means – Insight's mispriced CLINs.  Plaintiff could only have surmised that *Dell Marketing* improperly received Insight's CLIN pricing by viewing the May 27, 2021 email from Dell Marketing to the Navy.  Since it is undisputed that Plaintiff received that email for the first time on July 6, 2021, with the production of the GAO Agency Report, Tab 34 at AR 4687, the 14-day clock began then.  *See* 41 U.S.C. § 2106.  Accordingly, Plaintiff properly raised a potential PIA violation within 14 days of "first discover[ing] the possible [PIA] violation" by filing its supplemental protest on July 9, 2021, three days after becoming aware of a possible violation.[8]  Tab 38 at AR 4727-35.

---

[8] At oral argument, Intervenor-Defendant raised an additional procedural argument, not contained in its briefing, that Plaintiff failed to properly raise its PIA claim directly with the Navy, and that raising it in Plaintiff's July 9, 2021 supplemental protest at the GAO was insufficient.  Tr. Oral Arg. at 81-82 ("So I want to start with the proposition, Judge, that even now they can't tell you that they made a procurement -- a timely Procurement Integrity Act allegation.  What they did -- read the statute -- is they filed a protest. They were at GAO in the middle of the protest, and they filed a protest, okay? They didn't send a letter to the contracting officer saying here's our Procurement Integrity Act allegation, here's our evidence, here's anything else.").  This argument fails.  As an initial matter, Intervenor-Defendant waived this issue by omitting it from its briefing and raising it for the first time at oral argument.  *See, e.g.*, *Office Depot, Inc. v. United States*, 95 Fed. Cl. 517, 530-31 (2010) ("Because plaintiff's argument was not presented to the court until oral argument, the court considers this argument waived.").  However, even if the Court were to entertain Intervenor-Defendant's argument, it would fail as a matter of law.  Defendant does not dispute that the Navy became aware of Plaintiff's PIA allegation when Plaintiff filed its supplemental protest at the GAO.  Tr. Oral Arg. at 54-55.  This is not unusual.  For example, in *Jacobs Technology, Inc. v. United States*, the Court of Federal Claims evaluated the merits of a PIA claim after the protester put the agency on notice by raising its PIA claim at the GAO.  100 Fed. Cl. 198, 215 (2011).  Thus, Plaintiff's supplemental GAO protest informed the Navy "of a violation or possible [PIA] violation[,]" in compliance with FAR 3.104-7(a).  Indeed, the Navy responded to Insight's PIA investigation request in proceedings before the GAO.  Tab 44 at AR 4921-51.  Plaintiff's first PIA-related allegation is properly before this Court.

B.  Insight's First PIA Allegation Required Investigation.

The Navy was required to conduct a PIA investigation into Plaintiff's first PIA allegation. While jurisprudence is sparse concerning when an agency is required to initiate a PIA investigation, all parties heavily rely on *Jacobs Technology, Inc. v. United States*, 100 Fed. Cl. 198 (2011) to support their positions.[9]  Pl. Mem. at 31; Def. Cross-MJAR at 43; Int.-Def. Mem. at 47. While not binding on this court, *Jacobs* is instructive.  In *Jacobs*, the court held an agency is not required to open a PIA investigation "if the agency, […] determines that a PIA violation is ***not possible***" based on the plaintiff's allegations.  *Jacobs*, 100 Fed. Cl. at 209 (emphasis added) (holding an "agency need not necessarily document its determination" if it finds that a PIA violation is not possible).  Thus, pursuant to *Jacobs,* to require a PIA investigation, a plaintiff must establish a ***possibility*** that (1) a government actor (2) knowingly disclosed a contractor's "bid or proposal information or source selection information" (3) before the award of the contract "to which the information relates."  *Id.*; 41 U.S.C. § 2102(a)(1), (b).  FAR 3.104-7(a), which requires an investigation if a contracting officer receives information of a "possible PIA violation," is consistent with *Jacobs*' interpretation.  FAR 3.104-7(a) ("A contracting officer who receives or obtains information of a violation or ***possible*** violation of [the PIA] ***must*** determine if the reported violation or possible violation has any impact on the pending award or selection of the contractor.") (emphases added).  Plaintiff has clearly made such a showing here.

---

[9] Plaintiff and Defendant agree on the standard this Court should apply.  *See* Tr. Oral Arg. at 104 (Plaintiff's counsel suggests that "the standard in the FAR for a PIA investigation […] is that you raise a possible investigation...."), 54 (Defendant's counsel suggests the standard under the FAR is whether the agency "receive[d] information of a violation or a possible violation of the PIA.").

17

    1.  <u>Plaintiff Sufficiently Alleged the Reasonable Possibility of Unlawful Government Conduct</u>.

Although the possibility of unlawful government action is presumed in any PIA violation allegation given such an allegation by its nature implies improper conduct by a government official, the Court nevertheless briefly addresses this issue given Intervenor-Defendant's cursory contention that "Insight has pled no facts indicating that a government official provided Dell with Insight's CLIN level pricing before this contract award to Insight."   Int.-Def. Mem. at 45; Tr. Oral Arg. at 88 ("There has never been alleged any fact that would come anywhere close to a government release of information to Dell.").  Insight, however, is not required to point to "silver bullet" facts to sufficiently plead that the Navy is required to conduct a PIA investigation; instead, as noted, Insight must raise the reasonable *possibility* of a PIA violation, pleading facts to support such a reasonable *possibility*.  *See, e.g., Jacobs*, 100 Fed. Cl. at 209; FAR 3.104-7(a); 41 U.S.C. § 2102(a)(1), (b).  In its supplemental protest filed before the GAO on July 9, 2021, Plaintiff, citing Dell Marketing's May 27, 2021 email to the Navy, specifically raised a concern that "Navy personnel improperly revealed information regarding Insight's pricing proposal to Dell."  Tab 38 at AR 4727-28.  On the record before the Court, Plaintiff has clearly met the pleading standard for raising a reasonable possibility of unlawful government conduct.

    2.  <u>Plaintiff Sufficiently Alleged the Possibility that the Navy Knowingly Disclosed Insight's Proposal Information</u>.

Defendants appear to provide two rationales for how Dell Marketing could have known about Plaintiff's unpriced promotional CLINs in years 4 and 5 without receiving Plaintiff's price proposal from the Navy: (1) Microsoft originally only offered pricing for the first three years of the contract and at the "last minute" added pricing for years 4 and 5 making it plausible that Plaintiff would neglect to reflect such new pricing in its final quote, and (2) while the Solicitation

involved hundreds of CLINs, only approximately 19 CLINs were priced at more than $20 million

over the life of the BPA, enabling Dell Marketing (aware of the approximately $27 million price

differential between the original winning and losing bid)  to narrow the potential pool of unpriced

CLINs in Plaintiff's proposal.  *See* Def. Cross-MJAR at 42-45; Int.-Def. Mem. at 43-46; Tab 7.1

at AR 3352-54. [10]  While these rationales are plausible, and may turn out to be accurate, at this

point such contentions are speculative and neither explanations foreclose the reasonable possibility

that a PIA violation, in fact, occurred.  Accordingly, this Court must remand this action to the

Navy to complete a fulsome and appropriate PIA investigation into Plaintiff's first allegation of a

PIA violation.

The Court notes that it is still unclear from the record when Microsoft changed its pricing.

Plaintiff claimed at oral argument that it believes the last round of Microsoft price change was

sometime before April 6, 2021, over a month before final quotes were due on May 6, 2021.  Tr.

Oral Arg. at 45 ("Your Honor, I don't know the exact date [Microsoft changed its pricing], but it's

sometime before April 6th.").  When asked the same question about when Microsoft changed its

pricing, Intervenor-Defendant admittedly could not recall.  *Id.* at 91.  This date may be important.

---

[10]  At oral argument, Intervenor-Defendant made two additional arguments not contained in its
briefing: (1) Insight and Dell Marketing are both Microsoft resellers, and therefore would have
been aware of Microsoft's changed pricing, and (2) Insight and Dell Marketing "compete against
each other all the time[,] [s]o Dell has a pretty good idea how generally Insight lands in the pricing
realm next to them and things like that."  Tr. Oral Arg. at 86.  First, as previously noted, *see supra*
n.8, a party waives arguments that are omitted from its briefing and are raised for the first time at
oral argument.  *See, e.g.*, *Office Depot*, 95 Fed. Cl. at 530-31.  Thus, these arguments are waived.

Even if this Court were to consider Intervenor-Defendant's additional arguments, however, neither
are persuasive.  While Intervenor-Defendant correctly notes that Insight and Dell Marketing would
have known about Microsoft's changed pricing given they are both Microsoft resellers, it fails to
show how knowing about such changed pricing would lead Dell Marketing to identify four out of
hundreds of Insight's CLINs.  Similarly, Intervenor-Defendant fails to demonstrate how Dell
Marketing's experience competing against Insight in other contracts would have led Dell
Marketing to identify the four CLINs at issue here.

If the price change occurred before April 6, 2021, as Plaintiff contends, Plaintiff may have had sufficient time to incorporate Microsoft's pricing making the Defendant and Intervenor-Defendant's "last minute" argument less plausible.  However, if Microsoft changed its pricing in the days before May 6, 2021, when final quotes were due, the "last minute" argument has more merit.  Given the lack of clarity on when Microsoft changed its pricing and when the parties learned of this pricing change, Defendants' argument fails to eliminate the reasonable possibility of a PIA violation.

Second, Defendants' contention that hundreds of CLINs *could* be narrowed down to just 19, making it easier to pinpoint Insight's four unpriced promotional CLINs, does not foreclose the reasonable possibility of a different explanation (*i.e.*, disclosure of information from the Navy to Dell Marketing).  Indeed, it is also reasonably plausible that Plaintiff's bid was lower due to CLINs other than the identified 19 highly-priced CLINs.  For example, instead of altering the higher-priced CLINs, Plaintiff could have decreased the pricing for many lower-priced CLINs to reduce its total bid.  Further, that only two of the four unpriced, promotional CLINs identified by Dell Marketing stemmed from the pool of 19 highly-priced CLINs further supports a reasonable possibility that a differing explanation exists.  *See* Def. Cross-MJAR at 44 ("Specifically, there were less than 20 CLINs (including two of the Promo CLINs) where Dell proposed prices of more than $20 million over the life of the BPA.").[11]  While Defendants' contentions may turn out to be accurate, at this point, in evaluating whether the Navy should conduct a PIA investigation,

_____

[11] *Compare* the four promotional CLINs at issue (x728, x729, x764 and x765), Tab 11.1 at AR 3523, 3525, *with* the 19 highly-priced CLINs worth more than $20 million each over the life of the contract (x100, x101, x102, x104, x105, x106, x120, x407, x 453, x497, x511, x729 (promotional CLIN), x744, x746, x761, x765 (promotional CLIN), x768, x781, and x784).  Tab 7.1 at AR 3352-54.

Defendants' arguments do not foreclose a reasonable possibility that Dell Marketing improperly received Plaintiff's proposal information from the Navy.[12]

    3.  <u>Plaintiff Sufficiently Alleged the Possibility that Disclosure Occurred Before the Award of a Contract to Which the Information Relates</u>.

A knowing disclosure of contractor bid or proposal information violates the PIA only if it occurs "before the award of a Federal agency procurement contract to which the information relates."  41 U.S.C. § 2102(a)(1), (b).  Defendants mistakenly contend that an alleged, potential disclosure of competitive information to Dell Marketing before Dell Marketing's May 27, 2021 email "does not suggest that Dell Marketing improperly obtained this information *pre-award*, as would be necessary for a PIA violation."  Def. Cross-MJAR at 45 (emphasis in original); *see* Int.-Def. Mem. at 45 ("Insight has pled no facts indicating that a government official provided Dell with Insight's CLIN level pricing before this contract award to Insight.").  Here, Insight broadly alleged that at some time before Dell Marketing's May 27, 2021 email to the Navy, Dell Marketing received "inside information about Insight's proposal."  Tab 38 at AR 4730.  This includes the reasonable possibility that disclosure occurred before the initial award to Insight.  Even if a disclosure had occurred after the initial award to Insight — an award that the Navy quickly suspended —  the potentially disclosed information still directly related to, and occurred prior to, the second and final award of the BPA to Dell Marketing.

Plaintiff broadly alleges that the only way Dell Marketing could have known that Insight did not price specific CLINs was if it had "inside information" — *i.e.*, information from the Navy.

---

[12] Plaintiff illustrates this point: "Dell Marketing was able to drop its price by $87 million between its May 6 quote and its May 30 quote—significantly more than the $27 million price difference between the offerors at the time of the initial award to Insight—by adjusting prices for only three CLINs[,]" which "squarely contradicts any claim that Dell Marketing inevitably assumed that Insight **must have** not priced years 4 & 5 of the Promo CLINs as the only way that Insight could have beaten Dell Marketing[.]"  Pl. Reply at 26-27 (emphasis in original).

*Id.*  While Insight complained that Dell Marketing's May 27, 2021 email to the Navy regarding the unpriced CLINs occurred only one day after the Navy had informed Dell Marketing of the award to Insight, Insight did not state that disclosure of "insider information" could not have occurred earlier in the procurement.  *See id.* at AR 4729-31.  If anything, the very brief time – indeed, hours – between when the Navy informed Dell Marketing of the award to Insight and Dell Marketing's email addressing the unpriced CLINs suggests a reasonable possibility that Dell Marketing already possessed such information before the Navy made the initial award to Insight.[13]

Even if this Court were to adopt Defendants' characterization that Insight only alleged an inappropriate disclosure between the initial award to Insight and the second award to Dell Marketing, such disclosure nonetheless relates to "the award of a Federal agency procurement contract to which the information relates."  41 U.S.C. § 2102(a)(1), (b).  Information about Insight's failure to price its promotional CLINs necessarily provides information about how Insight priced other CLINs as the overall bid amount would then be distributed over only a subset of the total CLINs.  This level of granularity would be unavailable solely from viewing the Navy's initial award notice, which detailed only Insight and Dell Marketing's final bid amounts.

---

[13] Similarly, it is not a given that if Dell Marketing knew, prior to the initial award to Insight, about Insight's failure to price years four and five of the Promo CLINs, Dell Marketing "would have raised this issue earlier to ensure that it was not at a disadvantage in the price evaluation and to mitigate the risk that a later protest would be dismissed as untimely."  Def. Cross MJAR at 45.  In fact, the opposite may be more likely.  First, Dell Marketing would have drawn more attention to itself by raising Insight's pricing error before the award because there are fewer explanations that would have offered plausible deniability.  For example, how would Dell Marketing argue that it guessed the pricing deficiency based on a large gap in final offers, *see* Def. Cross MJAR at 44-45; Int.-Def. Mem. at 46, if it did not yet have its competitor's best and final offer in hand.  Second, if Dell Marketing had inappropriately received the pricing information from a Navy official prior to the award to Insight, it would be in a no-lose situation.  Dell Marketing could submit a bid that offered it a comfortable profit margin and it would either win the procurement and reap those profits or it would lose the procurement and it could file a bid protest that was highly likely to be sustained.  This merely further underscores why the Navy must conduct a fulsome PIA investigation regarding Plaintiff's alleged violation.

Finally, Defendants cite *Omega World Travel, Inc. v. United States*, 82 Fed. Cl. 452 (2008) in support of their position here.  Def. Cross-MJAR at 41, 45; Int.-Def. Mem. at 42-44.  That case is inapplicable to the facts of the present case.  Indeed, *Omega* addressed disclosure of information after a single contract award, not between a first, suspended award, and second award of a contract stemming from the same RFQ.  *See Omega World Travel,* 82 Fed. Cl. at 467-68 (holding protestor did not allege a valid PIA claim where it alleged that the agency violated the PIA *after* the disputed contract was awarded to the winning bidder).  Under any interpretation of the PIA, Insight has clearly alleged that a pre-award disclosure occurred.

> C. *Jacobs* Supports Requiring the Navy to Perform a PIA Investigation Here.

Defendants argue that this case is analogous to *Jacobs Tech. Inc. v. United States*, 100 Fed. Cl. 198 (2011), and accordingly a PIA investigation is unwarranted.  *See* Def. Cross-MJAR at 41-44; Int.-Def. Mem. at 46-48.  This Court disagrees.  In *Jacobs*, the Department of Defense United States Special Operations Command (agency) solicited proposals (RFP) for an information technology service contract requiring bidders to include "cost[s] associated with information technology service desk support" (tech support) for three different levels of service (gold, silver, and bronze).  *Jacobs*, 100 Fed. Cl. at 201-02.  While the RFP provided the agency's "annual maximum quantities for each service level[,]" it asked bidders to estimate their pricing based on the agency's historical information for "total users," which was provided to bidders.  *Id*.  Bidders were expected to "use that data along with their experience with similar efforts to develop an estimate of the effort required for the service desk effort."  *Id*. at 203.  Five offerors, including IBM Global Business Services (IBM) and Jacobs Technology Inc. (Jacobs), submitted proposals, with Jacobs receiving the initial award.  *Id.*  IBM subsequently filed a bid protest before the GAO,

resulting in the agency revoking its initial award to Jacobs, amending its solicitation, and requesting bidders submit revised proposals.  *Id.* at 203-04.

IBM raised a potential PIA violation at the GAO alleging Jacobs improperly received the agency's evaluation quantities for tech support for gold and silver desk users prior to it receiving the initial award.  *Id.* at 215.  The agency did not open a PIA investigation based on that allegation. *Id.* at 216.  Before the Court of Federal Claims, IBM argued that the agency was obligated to open a PIA investigation because "it is evident from Jacobs' pricing that it knew that the maximum quantities in the RFP would not be used in the agency's evaluation."  *Id.* at 215.  The court disagreed.  It held that the agency's determination that a PIA violation was not possible was rational under the circumstances given (1) all bidders were given historical data from the agency for estimating the number of gold and silver desk users; (2) Jacobs had experience with the agency as an incumbent contractor; and (3) the agency only determined its quantities for these kinds of desk users after bidders submitted their proposals.  *Id.* at 216-17.

The court's finding in *Jacobs* that the agency was not required to open a PIA investigation does not compel the same outcome here.  Here, the agency's determination not to investigate the alleged PIA violation was not reasonable or rational.  First, Defendants' argument that a PIA violation is not possible largely hinges on the timing of a price-change made by a third party, Microsoft, a factor absent in *Jacobs*.  Def. Cross-MJAR at 42-45; Int.-Def. Mem. at 43-46.  Second, unlike in *Jacobs*, where Jacobs made an educated guess about the *agency's* tech support needs for gold and silver desk users based on its experience as an incumbent contractor with the agency and its access to the agency's historical data provided by the agency itself, *Jacobs*, 100 Fed. Cl. at 215, here Dell Marketing purportedly made assumptions about Insight, its *competitor's* proposal based on Microsoft's "late" change in pricing and the small pool of approximately 19 highly-priced

CLINs.  Def. Cross-MJAR at 42-45; Int.-Def. Mem. at 43-46.  While the agency's decision not to open a PIA investigation in *Jacobs* was rational given the source of Jacobs' assumptions — *i.e.*, its experience working with *the agency* and data provided by *the agency* — there is far less of a basis here to find the Navy's decision not to open a PIA investigation was rational given the source of Dell Marketing's assumptions; namely the timing of Microsoft, a non-party's, price change and speculation about how Insight, its competitor, priced its CLINs.  Given that Plaintiff's allegations of impropriety are most certainly possible, it was not rational for the Navy to have refused to open a PIA investigation.  The Navy must conduct a PIA investigation in relation to Plaintiff's first alleged PIA violation.[14]

II.    Second PIA Allegation: Inappropriate Disclosure Prior to the Navy's May 27, 2021 Email to Insight and Dell Marketing

Plaintiff also asserts a second basis for opening a PIA investigation; namely that the Navy's May 27, 2021 email to Insight and Dell Marketing, suspending Insight's initial award and requesting offerors to rebid, revealed potential Navy disclosure of Insight unit pricing to Dell Marketing (the second PIA allegation).[15]  Unlike its other allegation, however, Plaintiff did not timely raise its second PIA allegation concerning the Navy's May 27, 2021 corrective action email to Insight and Dell Marketing.  Accordingly, this Court **DENIES** Plaintiff's request to remand this action to the Navy to open a PIA investigation on the basis of Plaintiff's second PIA allegation.

_____

[14] Given an investigation is warranted to determine whether a PIA violation occurred, the Court need not address prejudice at this time, as to do so would be premature.  *See, e.g.*, *Bannum*, 404 F.3d at 1351 (evaluating prejudice in a second step after completing an initial analysis of whether a PIA violation occurred).

[15] Plaintiff places the most emphasis on its first PIA allegation regarding Dell Marketing's May 27, 2021 email to the Navy.  *See* Tr. Oral Arg. at 99-100 ("There were discussions in the last couple of briefs about two PIA violations.  Our focus has always been what we are going to you call the first PIA violation.  […]  That's what we have been focused on.  […]  [But,] I am going to say we are going to maintain [the second PIA claim]").

First, Plaintiff waived its ability in this Court to seek a PIA investigation based on its second PIA allegation when it failed to raise the allegation in its opening brief in support of its MJAR.[16]  *See, e.g.*, *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. […] As a matter of litigation fairness and procedure, then, we must treat this argument as waived.").

Second, even if timely raised before this Court, Defendants argue that Plaintiff waived this allegation by failing to raise it with the Navy within 14 days of discovering the alleged PIA violation, as required by statute.  41 U.S.C. § 2106.  Defendants contend that Plaintiff was aware of the Navy's corrective action email on May 27, 2021, upon receipt.  *See* Tab 11.1 at AR 3525-30.  It is undisputed that Plaintiff did not file a protest within 14 days of receiving the email. Plaintiff argues that it could not have been aware that the corrective action email derived from a PIA violation at that point.  Pl. Reply at 23.  However, even assuming Plaintiff only became aware that the corrective action email derived from a PIA violation upon issuance of the GAO Agency Report on July 6, 2021, Plaintiff still failed to cite this email as the basis for its PIA claim in its July 9, 2021 supplemental protest at the GAO or anytime thereafter.  The first time Plaintiff raised this argument concerning its second PIA allegation was on October 25, 2021, in its reply brief.  *Id.* This is certainly well-past the 14-day statutory deadline.  *See*  41 U.S.C. § 2106.  Accordingly, the Court will not consider Plaintiff's untimely claim.

---

[16] Plaintiff first raised this claim in its reply brief.  Pl. Reply at 23.

III.    Remand to the Navy is Necessary

This Court may remand without vacatur in scenarios, as here, where "[i]t may be that the agency can provide a reasonable explanation for its decision[,] . . . [b]ut it has not yet done so." *Nat'l Org. of Veterans' Advocates, Inc. v. Sec. of Vet. Affs.*, 260 F.3d 1365, 1380 (Fed. Cir. 2001); *see also* RCFC 52.2(a) ("In any case within its jurisdiction, the court, on motion or on its own, may order the remand of appropriate matters to an administrative or executive body or official."). Affording "due regard to the interests of national defense and national security and the need for expeditious resolution of the action," 28 U.S.C. § 1491(b)(3), for the reasons stated above the Court nevertheless finds it appropriate to remand to the Navy for a fulsome investigation of Plaintiff's first PIA violation allegation and for further explanation.[17]

CONCLUSION

For the reasons set forth above, this Court **GRANTS IN PART** Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 33) and **DENIES IN PART** Defendant's Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's MJAR (ECF No. 38) and Intervenor-Defendant's Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's MJAR (ECF No. 39).   The Court **REMANDS** this action to the Navy to investigate Plaintiff's first allegation of a PIA violation; namely, that the information in Dell Marketing's May 27, 2021 email to the Navy concerning certain allegedly mispriced CLINs in Insight's bid potentially indicates a PIA violation occurred.   The Navy shall complete its PIA investigation within 45 days of this Memorandum and Order.   The Navy is **ENJOINED** from

---

[17] Indeed, as noted by the parties in briefing and during oral argument, the Navy has bridge contracts in place allowing it to receive necessary, mission-critical Microsoft products during the pendency of this dispute from both Dell Marketing and Insight.  Pl. Mem. at 37; Tr. Oral Arg. at 106.

implementing or otherwise proceeding with the BPA award during its PIA investigation and pending further Order of this Court. Due to the impending expiration of the voluntary stay in this case (ECF No. 49), the Court is issuing this Memorandum and Order solely regarding Plaintiff's PIA violation claims and anticipates, in due course after completion of the Navy's PIA investigation, issuing a Memorandum and Order regarding remaining issues raised by the parties in their respective MJAR and Cross-MJARs.

Within 10 days of the Navy's completion of the PIA investigation, the United States shall **FILE** a Notice of such completion, attaching under seal a copy of the Navy's investigative findings. Within five days of such Notice, the parties shall **FILE** a Joint Status Report proposing a schedule for future proceedings, if any. The parties are directed to **CONFER** and **FILE** a Notice within seven days of this Memorandum and Order, attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted.

IT IS SO ORDERED.

s/Eleni M. Roumel
ELENI M. ROUMEL
Judge

December 9, 2021
Washington, D.C.

28