# In the United States Court of Federal Claims

|  |  |
|---|---|
| INSIGHT PUBLIC SECTOR, INC., | |
| Plaintiff, | |
| v. | No. 21-cv-1755 |
| THE UNITED STATES, | Filed Under Seal: July 25, 2022 |
| Defendant, | Publication: August 1, 2022[1] |
| and | |
| DELL MARKETING L.P., | |
| Intervenor-Defendant. | |

*Kyle R. Jefcoat*, Latham & Watkins LLP, Washington, District of Columbia for Plaintiff. With him on the briefs are *David R. Hazelton* and *Julia A.C. Lippman*, Latham & Watkins LLP, Washington, District of Columbia.

*William P. Rayel*, United States Department of Justice, Civil Division, Washington, District of Columbia for Defendant. With him on the briefs are *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division; *Patricia M. McCarthy*, Director, Commercial Litigation; *Martin F. Hockey, Jr.*, Acting Director, Commercial Litigation; *Douglas K. Mickle*, Assistant Director, Commercial Litigation; *Tracey Ferguson*, Naval Information Warfare Center Pacific; and *Stephen T. O'Neal*, General Services Administration.

*Craig A. Holman*, Arnold & Porter Kaye Scholer LLP, Washington, District of Columbia for Intervenor-Defendant. With him on the briefs are *Amanda J. Sherwood* and *Aime JH Joo*, Arnold & Porter Kaye Scholer LLP, Washington, District of Columbia.

---

[1] This Memorandum and Order was filed under seal in accordance with the Protective Order entered in this case (ECF No. 10) and was publicly reissued after incorporating all redactions proposed by the parties. (ECF No. 117.) The sealed and public versions of this Memorandum and Order are otherwise identical, except for the publication date and this footnote.

## MEMORANDUM AND ORDER

Modern enterprises annually invest significant funds on information technology.  The United States Government is no exception.  Over the next 5 years, the U.S. Department of the Navy (Navy) plans to spend more than $2.5 billion on the procurement of Microsoft products and services alone.  The Navy will obtain such products and services from a Microsoft reseller it selected through a competitive bidding process.  Initially, the Navy awarded this lucrative contract to Insight Public Sector, Inc. (Insight), which offered a cheaper price than its competitor, Dell Marketing L.P. (Dell Marketing).  Shortly after making the award, however, the Navy learned that Insight was only able to offer its lower price because it left several required items unpriced in its proposal, while Dell Marketing had priced those same items.  The Navy vacated its initial award and equalized the competition by requiring Dell Marketing and Insight to submit revised proposals with all required items priced.  After evaluating the revised proposals, the Navy selected Dell Marketing for the award based on Dell Marketing's significantly lower price.  Insight now protests the Navy's award of the contract to Dell Marketing.

In its post-award bid protest, Insight alleges that several aspects of the procurement rendered the Navy's award to Dell Marketing arbitrary, capricious, and contrary to law, and accordingly urges this Court to vacate the award.  Insight contends in its Complaint that (1) the Navy failed to review or evaluate whether Dell Marketing had the requisite products on its federal supply schedule; (2) Dell Marketing did not propose a valid Contractor Teaming Arrangement; (3) the Navy failed to investigate an alleged violation of the Procurement Integrity Act; (4) the Navy improperly evaluated past performance; (5) the Navy applied the wrong standard for its best value decision; and (6) the Navy unlawfully favored Dell Marketing.  *See* Plaintiff's Complaint (ECF No. 1) (Compl.) ¶¶ 117-18, 130-31, 138, 150.  Following an initial round of motions for judgment

2

on the administrative record based on five of those allegations,[2] the Court remanded this action to the Navy to conduct a Procurement Integrity Act (PIA) violation investigation and reserved ruling on the remaining issues.  *See* December 9, 2021 Memorandum and Order on Motions for Judgment on the Administrative Record (ECF No. 56) (Remand Order).[3]

In a supplemental round of motions for judgment on the administrative record, the parties revived some arguments and raised new arguments in response to the Navy's PIA violation investigation.  *See* Plaintiff's First Supplemental Motion for Judgment on the Administrative Record (ECF No. 77) (Pl.'s SMJAR); Defendant's Supplemental Cross-Motion for Judgment on the Administrative Record (ECF No. 78) (Def.'s Suppl. Cross-MJAR); Intervenor-Defendant's Supplemental Cross-Motion for Judgment on the Administrative Record (ECF No. 79) (Int.-Def.'s Suppl. Cross-MJAR).  After reviewing the record and supplemental motions, this Court held that the Navy failed to fully investigate the alleged PIA allegation as directed by the Court; the Court remanded this action again, directing the Navy to complete its investigation and fully comply with this Court's December 9, 2021 Memorandum and Order.  *See* April 25, 2022 Order on Supplemental Motions for Judgment on the Administrative Record (ECF No. 96) (Second Remand Order).  After the Navy issued its Supplemental PIA Report, concluding no violation had occurred, Insight filed a second supplemental motion for judgment on the administrative record.  *See* Addendum to Contracting Officer's Assessment of Potential Procurement Integrity Act Violation,

---

[2] While Insight's Complaint alleged that the Navy applied the wrong standard for its best value determination, it did not pursue this claim in its Motion for Judgment on the Administrative Record (MJAR).  *See generally* Plaintiff's Memorandum in Support of its MJAR (ECF No. 34).

[3] Prior to filing its MJAR, Plaintiff also filed a Motion to Complete the Administrative Record (ECF No. 26), which this Court denied.  *See* Order Denying Motion to Complete the Administrative Record (ECF No. 32); Transcript of Oral Argument dated September 23, 2021 (ECF No. 55); *see also* December 9, 2021 Memorandum and Order on Motion to Complete the Administrative Record (ECF No. 57); *infra* Background Section V.

and Impact under 48 CFR § 3.104-7, dated 21 January 2022 (ECF No. 98-1) (Supplemental PIA Report); Plaintiff's Second Supplemental Motion for Judgment on the Administrative Record (ECF No. 103) (Pl.'s Second SMJAR).  Defendants responded in opposition and renewed their cross-motions for judgment on the administrative record.  *See* Defendant's Response to Plaintiff's Second Supplemental Motion for Judgment on the Administrative Record (ECF No. 105) (Def.'s Resp. to Pl.'s Second SMJAR); Intervenor-Defendant's Response to Plaintiff's Second Supplemental Motion for Judgment on the Administrative Record (ECF No. 104) (Int.-Def.'s Resp. to Pl.'s Second SMJAR).

Having considered the parties arguments advanced in over 360 pages of briefing and during more than four hours of oral argument, this Court rules in favor of the Defendant and Intervenor-Defendant.  Accordingly, as reflected on the record and in this Court's May 10, 2022 Order,[4] and as more fully explained below, the remaining portions of Plaintiff's MJAR,[5] Plaintiff's SMJAR, and Plaintiff's Second SMJAR are **DENIED**.  The remaining portions of Defendant's Cross-MJAR, Defendant's Supplemental Cross-MJAR, Intervenor-Defendant's Cross-MJAR, and Intervenor-Defendant's Supplemental Cross-MJAR are **GRANTED**.  *See* May 10, 2022 Order Denying Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 106) (May 10

---

[4] The Navy explained that it required an expedited ruling and clarity regarding injunctive relief, as it required Microsoft software licenses in place by June 1, 2022.  *See* Defendant's Response to Plaintiff's Motion for Opportunity to Brief (ECF No. 101) at 6.  To accommodate that need, the Court proposed providing the parties with an oral ruling on the record as soon as possible after all briefing concluded.  *See* Transcript of Oral Argument dated April 8, 2022 (ECF No. 95) (Apr. 8 Tr.) at 82:8-20.   Additionally, the Court proposed entering judgment upon publishing a more detailed, written Memorandum and Order on all pending issues.  *See id.* at 82:8-83:2.  All parties consented to this procedure.  *Id.* at 83:4-17.

[5] On December 9, 2021, the Court denied as untimely Insight's claim that the Navy violated the PIA upon notifying Dell Marketing of an award suspension due to Insight's failure to price four promotional Contract Line Item Numbers (CLINs).  Remand Order at 25-26.

Order) at 1; Transcript of Oral Argument dated May 10, 2022 (ECF No. 108) (May 10 Tr.) at 5:16-6:2.  Further, as noted on the record and in this Court's May 10, 2022 Order, Defendant United States, which includes the Navy, is authorized to immediately proceed with its award to Dell Marketing.  *See* May 10 Order at 2; May 10 Tr. at 6:2-4.

<p style="text-align:center">BACKGROUND[6]</p>

I.   <u>Original RFQ & Pre-Award Amendments</u>

Navy Solicitation No. N66001-21-Q-0082 (RFQ or Solicitation) stands at the center of this protest.  Compl. ¶ 1.  It provides for the award of a Blanket Purchase Agreement (BPA) for the exclusive provision of Microsoft software licenses, software maintenance, and user-based subscriptions for a one-year base ordering period with four one-year options.  *See* Tab 3.1 (Excerpts from Original Request for Quotations (RFQ), dated March 17, 2021) at AR 8-9.  The BPA is awarded against an underlying General Services Administration (GSA) Federal Supply Schedule (FSS) contract.  *Id.*  While the Navy will be the first Department of Defense (DoD) entity to use the BPA, it is expected that other DoD entities will join the BPA as their respective enterprise agreements for Microsoft products expire.  *Id.* at AR 10 ("The Government estimates, but does not guarantee, that the volume of purchases through this BPA will be $3.4 billion."), AR 31.

To be eligible for the BPA award, offerors, which the RFQ calls "Resellers," were required to "meet all [of] the Reseller criteria."  *Id.* at AR 31.  Among other requirements, the RFQ mandates that offerors (i) have a GSA FSS contract that will cover the BPA's duration, (ii) "be a DoD ESI

---

[6] This section reflects the Court's findings of fact, derived from the Administrative Record (AR).  The AR is contained in ECF Nos. 25-2 – 25-5, 47-2 – 47-3, 68, 82-1, and 98-1 – 98-2.  Documents within the Administrative Record are divided into "Tabs."  An index of Tabs comprising the Administrative Record may be found at ECF Nos. 25-1 and 68.

BPA Holder for Microsoft Products and Azure Services," (iii) "have a Facility Clearance at the Secret level," (iv) have the Microsoft products on the Reseller's GSA FSS contract,[7] and (v) include pricing and/or discount percentages for each required product. *Id.* at AR 32. Notably, the RFQ originally required the reseller, and not a teaming partner, to have an active GSA FSS contract for the duration of the BPA. *Id.*

The day after the deadline for submitting questions to the Navy regarding the RFQ, Dell Technologies Inc. — Dell Marketing's parent company — submitted correspondence to the Navy explaining that it would prefer to submit a quote through Dell Federal Systems L.P. (Dell Federal), but that Dell Federal was not qualified for the competition. *See* Tab 3.6 (E-mail Chain regarding Dell Teaming Request, dated March 26-31, 2021) at AR 132-33. Dell explained that it could not submit a bid under the RFQ's terms at that time because Dell Federal's GSA FSS contract would expire on September 19, 2024 — before the end of the BPA to be awarded in this procurement — and "the Navy has not included GSA Federal Supply Schedule Succession language." *Id.* at AR 132. Dell offered two possible solutions that would allow its entities to compete "in an already limited field of Microsoft Licensing Solution Providers (LSP) capable of managing an agreement of this size." *Id.* First, it suggested adding succession language in the RFQ that would allow, in the event a current GSA FSS contract is replaced with a new GSA FSS contract, the BPA to transfer from the expired GSA FSS contract "to the new [GSA FSS] contract to the extent the new schedule contract includes the same or substantially the same scope and items as the canceled or

---

[7] The Microsoft products and services listed under the BPA are distributed across several hundred CLINs. *See* Tab 3.1 at AR 37-42. While the value of each CLIN varies, approximately 19 high-value CLINs each contribute $20 million or more to the BPA's total value. *See* Tab 7.1 (Additional E-mails between the Navy and Dell regarding Dell's Quote, dated May 4-6, 2021) at AR 3352-54 (CLINs x100, x101, x102, x104, x105, x106, x120, x407, x 453, x497, x511, x729, x744, x746, x761, x765, x768, x781, and x784).

expired GSA contract." *Id.*  Alternatively, Dell suggested that the Navy permit use of Contractor Teaming Arrangement (CTA) to pair Dell Federal's security clearance with Dell Marketing's GSA FSS contract, which does not expire until November 2035, and would extend throughout the duration of the BPA.  *Id.* at 133.

In response, the Navy indicated that it would amend the RFQ to permit CTAs and that it would extend the deadline for submission of quotes.  *Id.* at AR 137.  This amendment was handled outside of the official question-and-answer process, and the questions and answers that the Navy published after the question-and-answer period ended did not reference either the communications with Dell or teaming arrangements.  *See* Tab 42 (Insight Comments on Agency Report, dated July 16, 2021) at AR 4806-07.

The amended RFQ included the following eligibility requirements:

a. Reseller must have a current General Services Administration (GSA) Federal Supply Schedule (FSS) contract that covers the duration of the resultant Agreement.

. . .

c. Reseller/*Teaming Partner* must be a DoD ESI BPA Holder for Microsoft Products and Azure Services.

. . .

e. Reseller/*Teaming Partner* must have a Facility Clearance at the Secret level.  If the Reseller/ *Teaming Partner* does not have a Facility Clearance at the Secret level, they must obtain it within 120 days of contract award.

f. All Microsoft products listed under Attachment #2 – BPA Product and Price List must be on the Reseller's FSS contract.  Resellers will not be precluded from award in the event a product is not available on the respective GSA Schedule contract provided an appropriate explanation is given in the 'Vendors Comments' column of Attachment #2.

. . .

h. Reseller/*Teaming Partner* must submit 2 contract references of similar size and scope that were performed within the past 5 years (see Section 5 below for definition of similar size and scope).   Please provide the POC/references

(Contracting Officer or Contracting Officer's Representative) for each contract reference. Our office will contact each reference and submit a questionnaire regarding the Reseller/*Teaming Partner's* performance. The questionnaire responses will be evaluated in addition to the Vendor's CPARS ratings.

Tab 3.4 (Amendment 3 to RFQ, dated April 1, 2021) at AR 102 (emphases added). While the amendment permitted using a teaming partner to satisfy many of the eligibility criteria, the Microsoft product list was required to "be on the *Reseller's* FSS contract." *Id.* (emphasis added). Thus, Dell Marketing, as the offeror and proposed reseller under the BPA, was required to have the requisite Microsoft products on its own GSA FSS contract – not Dell Federal's GSA FSS contract.

Specifically, the submission requirements stated that a quote shall include "[e]vidence of product inclusion and pricing on GSA schedule (only provide Microsoft product listing and pricing)." *Id.* at AR 104. Another section of the instructions stated that "Resellers shall submit evidence of product inclusion on GSA schedule, i.e., a copy of your GSA approved Price List." *Id.* at AR 101. However, the RFQ did not require submission of the GSA FSS contract itself. *See id.* at AR 101-04.

The RFQ also explained that offerors would "be evaluated based on providing the best value to the Government." *Id.* at AR 102. Those offerors who satisfied the eligibility requirements would be evaluated based on price and past performance. *Id.* Although price would be considered more important than past performance, past performance would increase in importance as the price variance between offerors narrowed. *Id.* The RFQ explained that "[p]rice will be evaluated based upon the vendor pricing provided on BPA Attachment 2- BPA Product and Price List at the estimated quantities listed." *Id.*

The past performance rating considered the recency and relevance of previous projects. *Id.* at AR 103. The RFQ explained that "[r]ecency will be based on performance within the last 5

8

years," and that "[r]elevance will be evaluated on the size and scope of the referenced award(s) being evaluated in comparison to the size and scope of this solicitation's requirement." *Id.* In describing "size" and "scope," the RFQ indicated that "similar size would include Agreements valued at approximately $50M or greater per year, and similar scope would include any award that is agency/component-wide, multi-agency, or department–wide." *Id.* The Navy would then consider the previous project as part of the overall performance Confidence assessment rating if the project was "both recent and at least somewhat relevant." *Id.* The RFQ established the following ratings for Relevance and Confidence:

| Past Performance Relevance Rating | | Past Performance Confidence Rating |
|---|---|---|
| Very Relevant | | Substantial Confidence |
| Relevant | | Satisfactory Confidence |
| Somewhat Relevant | | Limited Confidence |
| Not Relevant | | No Confidence |
| | | Neutral Confidence |

*Id.* Under this rubric, the RFQ explained "Confidence means the Government's expectation that the vendor will successfully perform the required effort based on the vendor's recent/relevant performance record." *Id.* Higher Relevance ratings "will . . . have more influence on the past performance confidence assessment than past performance of a lesser relevance." *Id.* The Solicitation did not include specific definitions for Confidence or Relevance ratings. *See id.*

II.    Initial Award to Insight

Two vendors, Insight and Dell Marketing, submitted initial bids on April 6, 2021. *See* Tab 4 (Dell Initial Quote, dated April 6, 2021); Tab 5 (Insight Initial Quote, dated April 6, 2021). While Insight was the lone contractor on its proposal, Dell Marketing proposed a CTA between Dell Marketing and Dell Federal. *See* Tab 4 at AR 140, 173. Dell Marketing proposed acting as the team lead under its GSA FSS contract number GS-35F-059DA and using Dell Federal's GSA FSS contract GS-35F-0884P "to fulfil [sic] any security requirements." *Id.* at AR 140. This was

necessary under the CTA because, unlike Dell Federal, Dell Marketing does not have the requisite security clearances for this procurement.  *See* Transcript of Oral Argument dated November 17, 2021 (ECF No. 51) (Nov. 17 Tr.) at 96:18-97:6; *see also* Tab 3.6 at AR 132-33.

Both Insight and Dell Marketing submitted the required Attachment #2 – BPA Product and Price List, which included their proposed pricing for products on the BPA.  Tab 4 at AR 173-80; Tab 5 at AR 917-27.  Insight included "a Microsoft only GSA [multiple award schedule (MAS)] pricelist" with its quotation.  Tab 5 at AR 917, 929-3277.  Dell Marketing similarly provided its Microsoft price list in an Excel file identified as a "copy of the Microsoft Products on vendor's GSA MAS Contract and prices."  Tab 4 at AR 173, 182-785.  Neither offeror submitted their full GSA FSS contract, nor as noted, did the RFQ require offerors to do so.[8]  *See generally* Tab 3.4 at AR 101-04; Tabs 4-5.  *Compare* Transcript of Oral Argument, dated September 23, 2021 (ECF No. 36) (Sept. 23 Tr.) at 27:17-22 (asserting on behalf of Defendant that "unless Insight only sells Microsoft products . . . it didn't provide its entire GSA Schedule contract"), *and id.* at 38:6-8 (asserting on behalf of Intervenor-Defendant that Insight "didn't provide [its] GSA Schedule contract."), *with id.* at 47:7-49:5 (Plaintiff failing to rebut Defendants' contentions that Insight also did not submit its GSA FSS contract to the Navy).  Insight does not contend, and the Administrative Record does not support, that it ever made a pre-award objection to the Navy's process of using offerors' self-provided Microsoft product and price list as opposed to requiring submission of offerors' full GSA FSS contracts.

---

[8] The Navy had good reason for not requesting offerors' full GSA FSS contracts: the contracts are lengthy and contain lists of products irrelevant to this procurement.  For example, the publicly available version of Dell's GSA price list contains several hundred thousand products.  *See* https://www.gsaadvantage.gov/ref_text/GS35F059DA/GS35F059DA_online.htm  (last  visited June 8, 2022) at 3.

After reviewing the initial submissions, the Navy communicated with Insight and Dell to obtain additional information and solicit proposal revisions. *See* Tab 6.1 (Additional E-mails between the Navy and Dell regarding Dell's Quote, dated April 7-8, 2021); Tab 6.2 (E-mails between the Navy and Insight regarding Insight's Quote, dated April 7, 2021). The Navy asked both parties to make certain representations regarding FAR 52.204-24 (Representation Regarding Certain Telecommunications and Video Surveillance Services or Equipment) and DFARS 252.239-7009 (Representation of Use of Cloud Computing), both of which were required by the RFQ. *See* Tabs 6.1 at AR 3279; 6.2 at AR 3328; *see also* Tab 3.1 at AR 29-30 (incorporating FAR 52.204-24 and DFARS 252.239-7009 into the BPA by reference). The Navy further asked Dell Marketing to provide details of its proposed teaming arrangement with Dell Federal. *See* Tab 6.1 at AR 3279-80. The Navy gave both parties until April 7, 2021 to provide the supplemental information. *Id.* at AR 3289-306; Tab 6.2 at AR 3328.

Dell Marketing and Insight submitted the requested representations on April 7, 2021. *See* Tabs 6.1 at AR 3285-306; 6.2 at AR 3333-39. The next day, the Navy called Dell to clarify Dell Marketing's representation regarding DFARS 252.239-7009. *See* Tab 44 (Navy Response to Insight Supplemental Protest and Comments, dated July 20, 2021) at AR 4933. Dell indicated in its April 7 representations that it "[did] not anticipate that cloud computing services will be used in the performance of any contract or subcontract resulting from this solicitation." Tab 6.1 at AR 3306. However, cloud computing services were among the products to be sold under the BPA. *See, e.g.*, Tab 3.1 at AR 31. The contracting officer who reached out to Dell concerning the applicability of this DFARS clause had similarly clarified the issue with Insight and had recalled doing so with many vendors on other, past solicitations. Tab 44 at AR 4933. On the same day on which it spoke with the contracting officer, Dell Marketing updated its DFARS 252.239-7009

representations to reflect that cloud computing services were expected.  *Id.*; Tab 6.1 at AR 3307, 3326.

In its April 7, 2021 submission, Dell Marketing also produced the Master GSA CTA between Dell Marketing and Dell Federal.  Tab 6.1 at AR 3290.  It explained that "[a]ll pricing submitted on RFQ N66001-21-Q-0082 was based upon Dell Marketing L.P.'s GSA schedule."  *Id.* at AR 3292.  It further explained that while "[a]ll software CLINs will be sold off of [Dell Marketing's] GSA schedule GS-35F-059DA," Dell Federal would be "responsible for fulfilling any secure order requirements."  *Id.* at AR 3293; *see also infra* p. 10.

After receiving these submissions, the Navy began an extensive process of evaluating the offerors' eligibility based on whether the products listed in Attachment #2 – BPA Product and Price List were on the offerors' GSA FSS contracts.  *See* Tab 8.2 (Dell Price Verification Evaluation); Tab 8.3 (Insight Price Verification Evaluation); Tab 40 (Navy Response to GAO Request for Information, dated July 13, 2021) at AR 4739.  The Navy relied on spreadsheets generated by the parties to evaluate whether the offerors had the requisite products on their GSA FSS contracts.  *See* Tab 5 at AR 921; Tab 8.3 at AR 3395-402; Tab 40 (Navy Response to GAO Request for Information, dated July 13, 2021) at AR 4740-41.  For each offeror, the Navy created a color-coded chart identifying whether the price listed on the offeror's BPA Product and Price List for a given product was above, below, or matched the price on the offeror's evidence of product inclusion on its GSA Schedule, or whether the offeror did not submit a GSA Schedule price for that product.  *See* Tab 8.2 (Dell Price Verification Evaluation); Tab 8.3 (Insight Price Verification Evaluation); Tab 40 (Navy Response to GAO Request for Information, dated July 13, 2021) at AR 4739.  Similarly, as noted, it is undisputed that neither party objected to the Navy's

reliance on offerors' self-reported pricing and product information as opposed to relying on, or requiring production of, offerors' respective GSA FSS contracts.

While most of the Contract Line Item Numbers (CLINs) listed on Insight's and Dell Marketing's BPA Product and Price Lists were also listed in the offerors' spreadsheets, submitted as evidence of product inclusion and pricing on their GSA FSS contracts, the Navy identified several CLINs that did not match the offerors' GSA FSS contracts. *See* Tab 7.1 at AR 3340-47; Tab 7.2 (Additional Emails between the Navy and Insight regarding Insight's Quote, dated May 4-6, 2021) at AR 3357-66. The Navy asked Dell and Insight to address the mismatched CLINs, reduce pricing for certain CLINs, confirm that certain products were discontinued, state whether GSA pricing was available for certain CLINs, and submit their Best and Final Offers by May 6, 2021. *See* Tab 7.1 at AR 3340-47; Tab 7.2 at AR 3357-66.

Both offerors timely submitted their Best and Final Offers, which included the Navy's requested changes and explanations for each of the CLINs of concern. *See* Tab 7.1 at AR 3348-56; 7.2 at AR 3367-78. The Navy determined that both Dell Marketing and Insight met the RFQ's eligibility criteria. *See* Tab 9 (Initial Business Clearance Memorandum, signed May 15-16, 2021) at AR 3498. Both offerors received a "Relevant" Relevance rating and a "Satisfactory Confidence" Confidence rating. *Id.* at AR 3498, 3511-13. Insight's total evaluated price was $2,555,033,130, while Dell Marketing's total evaluated price was $2,582,354,460. *Id.* at AR 3511. Given the offerors' equivalent past performance ratings and that Insight's "overall price was $27,321,330 less than Dell Federal System's [sic] submission," the Navy selected Insight for award of the BPA. *Id.* at AR 3498.

On May 21, 2021, the Navy notified Insight that it was the recipient of a BPA under Solicitation No. N66001-21-Q-0082. Tab 10.1 (Notice of BPA Award to Insight, dated May 21,

2021).  A public Department of Defense website announced the award that same day, publishing an approximation of Insight's total evaluated price (approximately $2.56 billion).  *See* Tab 69 (DoD Website Notice of Contract Awards, May 21, 2021) at AR 6465.  Three days later, on May 24, 2021, the Navy published Insight's CLIN prices on an internal SharePoint website for Navy customers to use for placing orders against Insight's BPA.  *See* Tab 81 (PIA No Impact Determination, dated January 21, 2022) at AR 7399.  While 3,500-4,300 Navy personnel and contractors had access to the SharePoint site from May 24 through May 28, 2021, site access was restricted to individuals with a DoD Common Access Card (CAC).  *See* Tab 73 (Navy Emails Regarding SharePoint System, dated August 18 - September 1, 2021) at AR 6498-612; Tab 81 at AR 7399 n.1.  It is undisputed that neither Dell Marketing, nor any other Dell entity, had access to the SharePoint site.  *See* Transcript of Oral Argument, dated April 8, 2022 (ECF No. 95) (Apr. 8 Tr.) at 16:6-10 (Insight's counsel acknowledgement that list of individuals with SharePoint site access did not include any Dell personnel).

On May 26, 2021, two days after posting Insight's pricing on the SharePoint site, the Navy notified Dell Marketing of the award to Insight.  *See* Tab 10.2 (Emails between Navy and Dell regarding BPA Award to Insight, dated May 26-27, 2021).  The notification to Dell Marketing included only the following information regarding Insight's quote:

| Vendor #1 - Insight | $2,555,033,129.59 |
|---|---|
| Vendor #2 - Dell | $2,582,354,460.25 |

The following table lists the Past Performance evaluations for both vendors.

| Reseller | Relevance Rating | Confidence Rating |
|---|---|---|
| Dell | Relevant | Satisfactory Confidence |
| Insight | Relevant | Satisfactory Confidence |

*Id.* at AR 3522.  The Administrative Record does not indicate that Dell Marketing (or any other Dell entity) ever received or had access to Insight's CLIN-level pricing.  *See id.*

14

III.     Suspension and Reevaluation of the Award to Insight

      A.   May 27, 2021 Email from Dell Marketing to the Navy

Internal Dell emails reflect that on May 26, 2021, the day the Navy informed Dell Marketing of the award to Insight, Dell personnel began surmising that Insight submitted a lower price because it had failed to price two items (i.e., CLINs) required by the RFQ. *See* Tab 77 (Email from Dell to Navy forwarding Dell email chain regarding PIA Investigation, dated January 6, 2022) at AR 7358-59. Accordingly, on May 26, 2021, Dell requested a formal debrief with the Navy. *See* Tab 10.2 at AR 3520. Although the Navy denied that request, it permitted Dell Marketing to submit any "specific questions" it had about the award. *Id.* at AR 3519-20.

Dell responded by email on May 27, 2021, raising its concern that "the pricing evaluation may not be comparing apples to apples, leading to a disadvantage for Dell and a possible misrepresentation of total price to the Government over the term of the agreement." *Id.* at AR 3519. Dell further explained its theory that Insight may have incorrectly priced four promotional CLINs:[9]

> Throughout the bidding process, Microsoft made multiple revisions to the pricing for the Project & Visio bundle promotional CLINs – x728, x729, x764, x765. Microsoft originally offered only 3 years of pricing for these bundles but, at last minute, extended an offer for years 4 & 5 at a lesser discount. The lesser discount on the bundle is still less expensive than procuring the underlying products on a stand-alone basis. . . .
>
> We are concerned that competitors' proposals may have included no pricing for these bundled CLINS in years 4 and 5 due to the late timing of Microsoft's change to the offering. If that were the case, then the Dell Total Evaluated Price would be unfairly evaluated at more than $▮▮ higher than a competitor's offer that shows no pricing for these CLINS in Years and 4 and 5.

---

[9] Two of the four promotional CLINs identified by Dell Marketing, x729 and x765, were among the approximately 19 high-value CLINs discussed *infra* in footnote 7.

15

*Id.* Dell asked the Navy to "validate that all bidders provided complete pricing for all CLIN[s] in all years." *Id.*

B.  Corrective Action and Further RFQ Revisions

In response to Dell's May 27, 2021 email, the Navy reviewed the bidders' BPA Product and Price lists. *See* Tab 12.1 (Final Business Clearance Memorandum, signed June 3-7, 2021) at AR 4374. It confirmed that Dell Marketing had priced years 4 and 5 of the promotional CLINs while Insight had not. *Id.* The Navy further noted that "[t]he value of that difference was ~ $███, which impacted the award." *Id.*

Concerned that a protest by Dell Marketing would be successful, on May 27, 2021 — the same day that Dell had raised its concerns to the Navy — the Navy issued a notice suspending the award to Insight "in order to re-evaluate the pricing submitted in response to the subject RFQ." Tab 11.1 (Emails [R]egarding Suspension of Insight Award and Submission of Revised Price Lists, dated May 27-28, 2021) at AR 3523, 3525. The Navy offered the following explanation:

> A discrepancy was found in how the promotional CLINs/ SKUs x728, x729, x764 and x765 provided by Microsoft should be applied. One vendor submitted pricing for years 4 and 5 of those CLINs/SKUs, while the other zeroed the pricing for those CLINs/SKUs for years 4 and 5. The discrepancy is significant enough to impact the award decision.

*Id.* At that time, the Navy did not disclose that Dell had brought this possible discrepancy, including the four referenced promotional CLINs, to the Navy's attention. *See id.* The Navy did, however, provide Insight with the same information regarding the offerors' total evaluated prices that was previously provided to Dell Marketing. *See id.*

On May 28, 2021, Insight responded to the Navy's notice by explaining that it did not provide pricing for the Promo CLINs for BPA years 4 and 5 because "Microsoft did not provide a

bundled cost for these CLINs for option year 3 and option year 4."[10]  Tab 11.5 (Email from Navy to Insight regarding Removal of Promotional SKUs, dated May 28, 2021) at AR 3555.  Insight also requested a conference call with the Navy to discuss, among other things, altering the quantities of the four promotional CLINs "so the correct pricing can be provided for evaluation purposes."  *Id.* at AR 3556.  The Navy considered Insight's request and "decided to remove the promotional SKUs from the evaluation and put the quantities back in Project and Visio respectively."  *Id.* at AR 3555.  The Navy extended the original deadline for submitting revised quotations from 5 p.m. Pacific Time on May 28, 2021, to 7 p.m. Pacific Time on that date.  *See id.*

After the Navy issued its Notice of Suspension of the award and initiated corrective action on the evening of May 27, 2021, Insight's pricing data remained posted to the Navy's internal SharePoint site for less than a day.  Tab 81 at AR 7399 n.1.  Specifically, the Navy removed Insight's data from SharePoint on May 28, 2021.  *Id.*  Again, it is undisputed that neither Dell Marketing nor any other Dell entity had access to the SharePoint site during the period of May 27 through May 28, 2021.  *See id.*; Tab 73 at AR 6498-612; Apr. 8 Tr. at 16:6-10.

Meanwhile, Insight and Dell Marketing submitted revised pricing to the Navy on May 28, 2021, as requested.  *See* Tab 11.7 (Email from Dell to Navy transmitting Revised Price Proposal Version 2, dated May 28, 2021); Tab 11.9 (Email from Insight to Navy transmitting Revised Price Proposal, dated May 28, 2021).  Subsequently, the Navy requested both offerors provide additional information and submit their Best and Final Offers by noon Pacific Time on May 30, 2021.  Tab 11.11 (Email from Navy to Dell regarding Best and Final Offers, dated May 29, 2021) at AR 3598-

---

[10] "[O]ption year 3 and option year 4" correspond to years 4 and 5, respectively, for a given CLIN. *See* Tab 3.1 at AR 8-9 (indicating the BPA includes a one-year base ordering period with four one-year options).

99; Tab 11.13 (E-mail from Navy to Insight regarding Best and Final Offers, dated May 29, 2021) at AR 3629.

Both Insight and Dell Marketing timely submitted new Best and Final Offers.  *See* Tab 11.16 (Email from Dell to Navy transmitting its Revised Price Proposal Version 3, dated May 29, 2021); Tab 11.19 (Email transmitting Insight's Final Pricing, dated May 30, 2021); Tab 11.21 (Letter from Insight to Navy regarding Final Pricing, dated May 30, 2021).  While evaluating the final offers, the Navy determined that two prices listed on Dell Marketing's BPA Product and Pricing List did not match the prices in Dell Marketing's Evidence of Product Inclusion on GSA FSS contract.  *See* Tab 11.26 (Email from Dell to Navy transmitting Final Price Revisions, Updated Microsoft Price List on Dell Marketing's Federal Supply Schedule Contract, and Representations, dated May 30, 2021) at AR 3811-12.  It also determined that Dell Marketing did not include seven CLINs in its Evidence of Product Inclusion on GSA FSS contract.  *Id.*  The Navy requested Dell Marketing clarify these nine issues by submitting "the most recent copy of Dell's GSA pricing for Microsoft products and services."  *Id.*

Dell Marketing responded the same day by submitting revised pricing that corrected the two previously mismatched prices and by attaching its "current Microsoft Price List on Dell GSA GS35F059DA."  *Id.*; *see* Tab 11.27 (Dell Final Price Revisions, submitted May 30, 2021) at AR 3820-23; Tab 11.29 (Dell Updated Microsoft Price List on Dell Marketing's Federal Supply Schedule Contract, submitted May 30, 2021).  The Navy reviewed Dell Marketing's updated submissions and verified that (i) the nine CLINs previously at issue were included on Dell Marketing's GSA FSS contract, and (ii) the prices matched the GSA FSS contract pricing reported in Dell Marketing's final BPA pricing submission.  *See* Tab 40 at AR 4740.  To further check for discrepancies, the Navy spot-checked random CLINs and did not find discrepancies between Dell

Marketing's two GSA price lists. *Id.* After the promotional CLINs were removed and all requested modifications were incorporated, Dell Marketing's final total evaluated price was $2,493,272,919.21, and Insight's final total evaluated price was $2,580,216,750.72. *See* Tab 11.20 (Insight Final Pricing, submitted May 30, 2021) at AR 3750; Tab 11.27 (Dell Final Price Revisions, submitted May 30, 2021 (attachment to Tab 11.26)) at AR 3823; Tab 12.1 at AR 4379. Accordingly, Dell Marketing's final total evaluated price was approximately $86.9 million less than Insight's bid.

C.  Subsequent Award to Dell Marketing

The next day, on May 31, 2021, the Navy verbally approved granting the award to Dell Marketing. *See* Tab 12.1 at AR 4360, 4380. The Navy formalized the award and communicated its decision to Dell Marketing on the same day. *See* Tab 66 (E-mails between Navy and Dell regarding BPA documentation, dated May 31, 2021) at AR 5868; Tab 67 (Dell BPA, signed May 31, 2021) at AR 5874. On June 1, 2021, the Navy notified Insight that it had awarded the BPA to Dell Marketing. *See* Tab 1 (Notification to Insight Public Sector, Inc. of BPA award to Dell Marketing, dated June 1, 2021). The Navy documented its decision in a Business Clearance Memorandum that was approved several days later. *See* Tab 12.1 at AR 4358-80.

The Navy explained in its Business Clearance Memorandum that it had suspended the initial award to Insight based on an ambiguity "with regard to how the vendors priced certain promotional products offered by Microsoft" that "resulted in an unequal evaluation of prices." *Id.* at AR 4360. The Navy explained that it requested new quotes from Insight and Dell Marketing, the latter of which "quoted the lowest total overall price by $86,943,832 less than Insight." *Id.* Although the Navy concluded that "Insight's past performance was slightly better than Dell's," it concluded that such past performance was not sufficiently superior to overcome an almost $87

19

million price difference.  *Id.*  At most, the Navy concluded, Insight's past performance "would be worth a slightly higher price (no more than $5 million over the course of 5 years)."  *Id.*  The Navy also reasoned that Dell Marketing's quote "provided the Government with a reasonable expectation that they will successfully perform the required effort," and that Dell Federal's "past performance was generally rated good, with positive comments."  *Id.*  The Navy therefore concluded that an award to Dell Marketing "is in the best interest of the Government."  *Id.*

IV.   <u>Insight's GAO Protest</u>

Subsequently, on June 7, 2021, Insight filed a bid protest before the Government Accountability Office (GAO).  *See* Tab 19 (Insight GAO Protest, dated June 7, 2021).  The Navy produced its Agency Report on July 6, 2021, revealing to Insight for the first time that Dell had identified specific promotional CLINs in its May 27, 2021 email to the Navy.  Tab 34 (Navy Contracting Officer Statement of Facts and Memorandum of Law, dated July 6, 2021).  Insight responded to this new information by filing a supplemental protest at the GAO on July 9, 2021. Tab 38 (Insight Supplemental Protest, dated July 9, 2021).  In its supplemental protest, Insight detailed its belief that Dell's May 27, 2021 email evidenced a possible violation of the Procurement Integrity Act that the Navy had failed to investigate.  *Id.*

The Administrative Record does not contain independent documentation of a Navy investigation into any alleged PIA violations at that time.  In the Navy's response to Insight's supplemental protest at the GAO, however, it argued insufficient evidence existed to require a PIA investigation.  *See* Tab 44 at AR 4928-30.  The Navy explained to the GAO that although Dell's May 27, 2021 question to the Navy was "highly specific, it was also not an unreasonable assumption."  *Id.* at AR 4927.  In support of its decision to forgo a PIA investigation, the Navy further elaborated that "Dell indicated Microsoft initially did not offer promotional pricing for

years 4 & 5 of the Promo CLINs, but at the last minute (but apparently before its initial quote on 6 April 2021) offered a lesser discount." *Id.* The Navy also argued to the GAO that only a handful of CLINs could have affected the price evaluation, despite that the BPA included over 500 CLINs:

> A review of the vendors' 6 May 2021 BPA Attachment 2 – BPA Product and Price Lists shows that there are a limited number of "heavy hitters" that will affect the price evaluation. There are 19 CLINS (which includes two of the [CLINs cited in Dell's May 7, 2021 email]), which are each priced out over $20M for the 5 year period of performance. (*See* AR 7, Dell, Item 4 p. 308, and AR 7, Insight, Item 4, p. 314.) Taken together, the evidence supports Dell may have just made a reasonable assumption about the Promo CLINs, which turned out to be true.

*Id.* at AR 4928.

Before the GAO resolved the parties' dispute, Insight informed the GAO that it would file a bid protest action in this Court. Tab 49 (Insight Notice of Intent to File Protest in Court of Federal Claims and Request to Provide Protected Information United States Government Investigative Agencies, dated August 17, 2021). The GAO dismissed Insight's protest when Insight filed the present action. Tab 52 (GAO Dismissal of Insight's Protest, dated August 26, 2021).

V.   Procedural History

Insight filed the present bid protest in the United States Court of Federal Claims on August 25, 2021. *See* Compl. During the following nine months, Insight's protest developed into a leviathan. The contentious character of this suit first revealed itself in a dispute over the Administrative Record's scope and content. *See* December 9, 2021 Memorandum and Order on Motion to Complete the Administrative Record (ECF No. 57) (AR Memorandum and Order); Sept. 23 Tr.; Order Denying Motion to Complete the Administrative Record (ECF No. 32). This case's full form came into view during its second developmental stage, when the parties filed their respective cross-motions for judgment on the administrative record (collectively, the parties' MJARs). *See* Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 33) (Pl.'s

MJAR); Defendant's Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's MJAR (ECF No. 38) (Def.'s Cross-MJAR); Intervenor-Defendant's Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's MJAR (ECF No. 39) (Int.-Def.'s Cross-MJAR).   After oral argument on the parties' MJARs, the Court granted Plaintiff's MJAR in part, remanding this action to the Navy to thoroughly investigate one of Insight's Procurement Integrity Act (PIA) violation allegations.[11]   *See* Remand Order at 3.   Finally, in this action's third phase, the Court, identifying a material defect in the Navy's PIA investigation, remanded the case yet again for the Navy to fully comply with this Court's December 9, 2021 Order mandating the Navy investigate one of Plaintiff's PIA violation allegations.   *See* Second Remand Order.   The Navy completed its final PIA violation investigation on April 29, 2022, and the parties submitted further briefing regarding the Navy's April 29, 2022 Supplemental PIA Report.   Defendant's May 2, 2022 Notice of Completion (ECF No. 98); Supplemental PIA Report; Pl.'s Second SMJAR; Int.-Def.'s Resp. to Pl.'s Second SMJAR; Def.'s Resp. to Pl.'s Second SMJAR.

After review of the Navy's April 29, 2022 Supplemental PIA Report and the parties' briefs, the Court provided an oral ruling on the record to accommodate the parties' desire for an expedited ruling and for clarity prior to fast-approaching procurement deadlines.   *See* May 10 Order; May 10 Tr.; *supra* note 4.   The Court also immediately lifted the injunction that was in place.   *See* May 10 Order at 2; May 10 Tr. at 6:2-4.   As consented by the parties, this Memorandum and Order details the reasoning behind the Court's decision.   *See supra* note 4.   Prior to addressing the parties'

---

[11] As described *infra*, the Court granted Plaintiff's MJAR in part concerning Plaintiff's allegation that a PIA violation occurred prior to Dell's May 27, 2021 email, but denied as untimely Plaintiff's MJAR regarding its second allegation that the Navy's May 27, 2021 email suspending the award to Insight violated the PIA by disclosing Plaintiff's total evaluated price and unpriced CLINs.   *See* Remand Order at 11-12, 25-26.

legal arguments, however, it is helpful to review certain background and findings of fact more specifically regarding this case's three developmental phases.

A. Completing/Supplementing the Administrative Record

This action's first phase centered on the contents and scope of the Administrative Record. Insight filed a motion seeking to add Dell Marketing's General Services Administration Federal Supply Schedule Contract No. GS-35F-059DA to the Administrative Record, either via completion or supplementation. AR Memorandum and Order at 2. Despite that, as noted, Dell Marketing did not submit — and was not required to submit — its GSA FSS contract to the Navy as part of its quote, Insight nevertheless alleged that (i) the supply schedule contract was "a core document that must be produced to have a complete Administrative Record," and (ii) inclusion of GSA FSS contract in the Administrative Record was necessary for this Court to determine whether Dell Marketing was eligible for award. *Id.* at 2, 17.

This Court disagreed. *Id.* at 10. It explained that the Administrative Record was complete without Dell Marketing's Federal Supply Schedule contract as the contract was not before the Navy when the Navy made its procurement decision. *Id.* at 10. Additionally, the Court determined that it could "effectively review the Navy's procurement process — including the Navy's decision to forgo additionally verifying the contents of Dell Marketing's GSA Schedule through GSA — without reviewing the full GSA Schedule" itself. *Id.* As this Court's role is not to perform a *de novo* review, the Court denied Insight's motion. *Id.* at 10-11; *see* Sept. 23 Tr. at 5:13-21.

B. Remand and Initial PIA Investigation

Insight's case neared full development during the second phase of this case when the parties filed competing motions for judgment on the administrative record. *See* Remand Order; Pl.'s MJAR; Def.'s Cross-MJAR; Intervenor-Def.'s Cross-MJAR. Insight argued in its motion for

judgment on the administrative record "that (1) the Navy failed to evaluate whether Dell Marketing's proposal complied with the requirements in the Request for Quotations; (2) Dell Marketing was ineligible for the award because it did not have a valid Contractor Teaming Arrangement, necessary for it to meet some eligibility requirements; (3) the Navy conducted a flawed past performance evaluation; (4) the Navy displayed bias in favor of Dell Marketing throughout the procurement; and (5) the Navy failed to investigate a potential violation of the Procurement Integrity Act (PIA)." Remand Order at 2. The Court (i) granted Insight's motion in part, holding that the Navy failed to investigate the alleged PIA violation, (ii) enjoined the Navy from proceeding with its award to Dell Marketing, and (iii) remanded to the Navy for investigation of the alleged PIA violation. *Id.* at 3. Given the remand, the Court deferred ruling on Insight's other legal arguments until the Navy completed its PIA violation investigation. *Id.* at 27-28.

In its December 9, 2021 Remand Order, the Court addressed two arguments Insight had advanced relating to its request for a PIA violation investigation. *Id.* at 11-12. First, Insight argued that Dell's May 27, 2021 email to the Navy allegedly demonstrated that Dell had inappropriately received Insight's CLIN-level pricing. *Id.* at 11. Second, Insight argued that the Navy had allegedly violated the PIA by responding to Dell's email on May 27, 2021, indicating that "[o]ne vendor submitted pricing for years 4 and 5 of those CLINs/SKUs, while the other zeroed the pricing for those CLINs/SKUs for years 4 and 5." *Id.* at 12 (quoting Tab 11.1 at AR 3523-30). The Court rejected the second argument as waived because (i) Insight had waited until its reply brief to raise the argument, and (ii) Insight did not raise this potential PIA violation with the Navy until more than 14 days after it discovered the possible violation. Remand Order at 26. The Court was, however, persuaded by Insight's arguments regarding the timeliness of Insight's first alleged PIA violation. *See id.* at 13-16. The Court concluded that Insight timely notified the Navy that

Dell's May 27, 2021 email had indicated a PIA violation, that Insight's allegation was sufficient to trigger an investigation, and that the Navy unreasonably failed to conduct that investigation. *Id.* at 17-25.

To remedy this failure, the Court temporarily enjoined the Navy "from implementing or otherwise proceeding with the BPA award" and remanded the action "to the Navy to investigate Plaintiff's first allegation of a PIA violation; namely, that the information in Dell Marketing's May 27, 2021 email to the Navy concerning certain allegedly mispriced CLINs in Insight's bid potentially indicates a PIA violation occurred." *Id.* at 27-28.  The Court directed a fulsome investigation, as "Insight broadly alleged that at some time before Dell Marketing's May 27, 2021 email to the Navy, Dell Marketing received 'inside information about Insight's proposal.'" *Id.* at 21 (quoting Tab 38 at AR 4730).  Thus, the allegation to be investigated was not limited merely to disclosures predating the Navy's initial, May 21, 2021 award to Insight.  *See* Remand Order at 21. Instead, the Court sought full transparency on what had transpired so that it could assess the reasonableness of any Navy conclusion stemming from its investigation.  *See* Second Remand Order at 4.

The Navy completed its initial PIA investigation and filed a copy of its investigative conclusions with this Court.  Remand Decision (ECF No. 64-1) (PIA Report); Tab 81.  In his PIA Report, Spencer Sessions, the Navy contracting officer for this procurement, "determined that no one from Dell obtained or was provided Insight's CLIN-level pricing information before Dell sent its 27 May 2021 e-mail to the Navy, in violation of 41 U.S.C. § 2102."  Tab 81 at AR 7401. Alexander Roberts, "a senior level contracting officer on the DoD ESI contracting team," had conducted "[t]he day-to-day handling of this acquisition."  *Id.* at AR 7394.  "Mr. Roberts limited distribution of vendors' pricing information to just those on the evaluation team, and just when

needed." *Id.* The PIA Report further reflects that Mr. Roberts implemented the following safeguards to prevent disclosure of pricing data:

> briefing the evaluation team about safeguarding procurement sensitive data; requiring the technical evaluation team . . . to sign Non-Disclosure Agreements; anonymizing Dell and Insight's quotes . . . when the quotes were sent to the technical evaluation team for evaluation; and using buffered prices (1.0763% above the average of the two vendors price submissions) to communicate estimates to outside stakeholders (i.e. customers) as necessary for budgeting.

*Id.*

Mr. Roberts also performed the PIA investigation. *Id.* at AR 7393. His investigation included interviewing three Dell representatives, collecting and reviewing hundreds of pages of documents and contemporaneous correspondence provided by Dell, obtaining declarations from six people involved in drafting Dell's May 27, 2021 email to the Navy, and obtaining declarations from the nine Navy personnel who had received Insight's pricing before the initial award to Insight. *Id.* at AR 7394-99. The Dell employees interviewed by Mr. Roberts explained that Microsoft's late price changes to years 4 and 5 of certain promotional CLINs led them to believe that Insight's multi-million dollar advantage could have owed to Insight failing to price those promotional CLINs. *Id.* at 7394-97; Tab 74 (Memoranda to File regarding Interviews with Dell Employees, dated December 21, 2021, and January 5, 2022). Dell's Vice President for Strategic Programs, Ray McDuffie, stated during his interview that "no one from the Government provided Dell any information related to Insight's pricing." Tab 81 at AR 7395. He also stated that, to his knowledge, "no one from Dell received any information about Insight's CLIN pricing on this opportunity." *Id.* Two other Dell representatives made similar statements that Dell did not receive Insight's CLIN pricing. *Id.* at AR 7395-97.

The declarations Mr. Roberts collected likewise reflected that Dell Marketing did not receive Insight's pricing information. *Id.* at AR 7397-99. Six Dell representatives declared under

penalty of perjury that they "did not see or receive any Insight price information related to the RFQ." Tab 80 (Dell Declarations (with cover e-mails), dated January 18-20, 2022) at AR 7382-84, 7386, 7389, 7391. They further declared that no one had provided Dell with information regarding Insight's CLIN-level pricing prior to Dell submitting its May 27, 2021 question to the Navy. *Id.* at AR 7382-84, 7386, 7389, 7391. Navy personnel similarly declared under penalty of perjury that they had complied with their "obligations to protect and keep confidential contractor bid or proposal information," and that "[p]rior to the initial award of the BPA to Insight on May 21, 2021, [they] did not discuss with or disclose Insight's pricing to anyone." Tab 79 (Government Declarations, dated January 10-11, 2022).

The documents collected from Dell reflected that Dell was concerned about the Microsoft promotional CLINs well before the Navy's initial award to Insight. *See* Tab 81 at AR 7398-99. On March 26, 2021, prior to even submitting its bid, Dell emailed Microsoft to inquire about these promotional CLINs, which appeared to be priced only for one year rather than for all five years. *Id.* at AR 7398; Tab 75 (E-mail from Dell to Navy providing Documentation regarding PIA Investigation, dated December 24, 2021) at AR 6627-28. Microsoft responded that the CLINs were promotional and that it would provide additional information in a few days. *See* Tab 81 at AR 7398; Tab 75 at AR 6627. Then, on March 29, 2021, Microsoft sent Dell updated pricing, which included the promotional CLINs at issue across all five years. *See* Tab 81 at AR 7398; Tab 75 at AR 6625. When Microsoft provided final pricing on April 2, 2021, Dell requested Microsoft clarify whether the promotional CLIN "bundles will be available to transact in year 4 & 5, or will it revert back to the a-la-cart skus?" Tab 75 at AR 6622; *see also* Tab 81 at AR 7390. Microsoft responded, explaining that although the CLIN "bundles can remain on the catalog for years 4 and 5, however the discount for Visio and Project will no longer be offered and they will go back to

full price." Tab 75 at AR 6622; *see also* Tab 81 at AR 7390. Dell Marketing accordingly incorporated into its bid this last-minute information from Microsoft about pricing for years 4 and 5 of the promotional CLINs. *See* Tab 4 at AR 178 (pricing promotional CLINs x728 and x729 for option years 4 and 5); Tab 179 (pricing promotional CLINs x764 and x765 for option years 4 and 5).

Dell's emails dated after the Navy's May 21, 2021 award to Insight similarly demonstrate that the promotional CLINs were front of mind for Dell Marketing. *See* Tab 77. Less than an hour after the Navy had announced the award to Insight, one Dell representative sent an internal email questioning Insight's ability to offer a total price with such a discount against Dell Marketing's price. *Id.* at AR 7358. Dell immediately surmised that the large discrepancy in bid price was attributable to the Microsoft CLINs that were unpriced earlier in the bidding process. *Id.*

Accordingly, on May 27, 2021, Dell sent the following correspondence to the Navy:

> Throughout the bidding process, Microsoft made multiple revisions to the pricing for the Project & Visio bundle promotional CLINs – x728, x729, x764, x765. Microsoft originally offered only 3 years of pricing for these bundles but, at last minute, extended an offer for years 4 & 5 at a lesser discount. . . . We are concerned that competitors' proposals may have included no pricing for these bundled CLINS in years 4 and 5 due to the late timing of Microsoft's change to the offering. If that were the case, then the Dell Total Evaluated Price would be unfairly evaluated at more than $▉▉ higher than a competitor's offer that shows no pricing for these CLINS in Years and 4 and 5.

Tab 76 (DoD SAFE Drop-Off Documentation from Dell regarding PIA Investigation transmitted on December 30, 2021) at AR 7353.

While the Navy did not uncover any evidence that Dell had received Insight's CLIN-level pricing, the PIA Report notes that "Insight's Attachment 2 BPA Product and Price List was posted on an internal Common Access Card (CAC) enabled SharePoint website for Navy customers to utilize in placing their orders against Insight's BPA." Tab 81 at AR 7399 n.1. The Administrative Record reflects that Insight's CLIN pricing information was posted on the access-restricted

SharePoint site from May 24 until May 28, 2021. *Id.* The site's system administrator "advised that [the Navy] cannot tell who accessed the site and when." *Id.* It is undisputed that the total list of people with access to the site exceeded 3,500. *Id.* Mr. Roberts determined it impractical to interview that entire class of individuals to confirm with each person that they did not disclose Insight's pricing, and that, in any event, it was unnecessary due to evidence provided by Dell indicating that Dell did not have access to Insight's CLIN price information. *Id.*

After review of Mr. Roberts' investigation, interview transcripts, and documentation, Mr. Sessions determined in his PIA Report that "[t]he evidence indicates that no one from Dell received Insight's CLIN pricing prior to the initial 21 May 2021 award to Insight or Dell's 27 May 2021 email regarding the award to Insight (from the Government or otherwise)." Tab 81 at AR 7399. Mr. Sessions reached this conclusion in the PIA Report based on the declarations from the Dell representatives involved in pricing its quote for this RFQ as well as the declarations from Navy personnel. *Id.* Specifically, the PIA Report concluded that the explanation provided in the Navy's interviews with Dell representatives "as to why Dell questioned whether Insight had priced all five years of the promotional CLINs is reasonable and supported by the documents Dell provided." *Id.* at AR 7400. In the PIA Report, Mr. Sessions also attributed importance to Dell's reasoning that it "doubted that Insight was lower priced given how aggressively Dell bid" especially "in the greater context of Microsoft competitions." *Id.* Furthermore, Mr. Sessions reasoned, Dell's emails "support Dell's explanation that the pricing of the promotional SKUs was last minute, and that Dell asked Microsoft multiple questions to better understand the promotional SKUs." *Id.* Accordingly, the PIA Report concluded that Dell's internal emails "support Dell's assertion that it was only using information received from the award notice and that it did not receive Insight's CLIN pricing." *Id.*

Given his conclusion that "no one from Dell obtained or was provided Insight's CLIN-level pricing information before Dell sent its 27 May 2021 e-mail to the Navy," Mr. Sessions concluded "that Insight's alleged PIA violation did not impact the award of the BPA to Dell Marketing."  *Id.* at AR 7401.  Sharon Pritchard, the Chief of Contracting Office for Naval Information Warfare Center Pacific, concurred with Mr. Sessions' determination.  *Id.*  Both Mr. Sessions and Ms. Pritchard signed the no-impact determination.  *Id.*

C.  Second Remand and Supplemental PIA Investigation

This action entered its third and final phase on February 25, 2022, when Insight filed a supplemental motion for judgment on the administrative record.  *See* Pl.'s SMJAR.  Insight argued that the Navy violated the PIA by posting Insight's pricing data on the SharePoint site on May 24, 2021, and by keeping it visible on the site for approximately a day after reopening the bidding process on the evening of May 27, 2021.  *See* Pl.'s Memorandum in Support of its SMJAR (ECF No. 77-1) (Pl.'s SMJAR Mem.) at 22-27.  Insight further argued that (i) the Navy's PIA investigation did not comply with this Court's December 9, 2021 Memorandum and Order and that the investigation was inadequate because the Navy's conclusion rested on Dell's self-interested statements, (ii) the investigation was not independent from the contracting officers involved in the procurement, and (iii) the Navy did not investigate everyone who had access to the SharePoint site during the relevant period.  *See id.* at 270-35.

Agreeing in part with Insight, this Court granted Insight's Supplemental Motion for Judgment on the Administrative Record, holding that the Navy had "failed to fully comply with this Court's Remand Order."  Second Remand Order at 2.  Rather than investigate the Navy's handling of Insight's pricing data up until May 27, 2021, the Navy had *sua sponte* limited its investigation by restricting the scope of its own declarations to the period preceding May 21, 2021,

*not* May 27, 2021, as the Court had ordered.  *Id.*  The Court accordingly remanded the action to the Navy to fully comply with this Court's December 9, 2021 Remand Order.  *Id.* at 5.

The Navy completed the required investigation and filed an addendum to its Procurement Integrity Act Report.  *See* Supplemental PIA Report.  As part of its supplemental PIA violation investigation, the Navy obtained new declarations from the same nine Navy employees who had previously provided declarations during the initial PIA investigation.  *Id.* at 2.  In addition to averring that prior to the initial award to Insight "they did not discuss or disclose Insight's pricing to anyone except other members of the source selection team," these new declarations also "stated that during the period of 21-27 May 2021, they did not discuss or disclose to anyone outside the source selection team any information regarding how Insight had bid particular CLINs."  *Id.* at 2; *see also* Additional Documents Filed with Supplemental PIA Report (ECF No. 98-2).  The only disclosures made were to the SharePoint website and "to two Navy contracting personnel, Todd Little and Sherelle Lockhart, in response to their request for award documentation to support a Letter of Authorization to Leidos, Inc. (Leidos)."  Supplemental PIA Report at 2; *see also* Additional Documents Filed with Supplemental PIA Report (ECF No. 98-2).  As part of its supplemental PIA violation investigation, "[t]he Navy obtained declarations from Mr. Little and Ms. Lockhart, in which they stated that they did not further discuss or disclose that information, except amongst themselves."  Supplemental PIA Report at 2; *see also* Additional Documents Filed with Supplemental PIA Report (ECF No. 98-2).

Mr. Sessions concluded in his Supplemental PIA Report "that the evidence from both the PIA Investigation which was documented in [the] 21 January 2022 PIA report, and this addendum thereto, taken together, indicate that no one from Dell received Insight's CLIN pricing prior to Dell's 27 May 2021 email regarding the award to Insight (from the Government or otherwise)."

Supplemental PIA Report at 2.  While Mr. Sessions acknowledged that he did not obtain statements "from all the Navy personnel (including contractors) who may potentially have accessed Insight's BPA price list from the SharePoint site between 24-27 May 2021," he determined that "the declarations from Dell personnel, interviews with Dell personnel, the contemporaneous documentation provided by Dell, and the April 2022 Government declarations" provided sufficient information to determine "that no one from Dell obtained or was provided Insight's CLIN-level pricing before Dell sent its 27 May 2021 e-mail to the Navy." *Id.* at 3.  Sharon Pritchard concurred in this conclusion, and both Mr. Sessions and Ms. Pritchard signed the supplemental no-impact determination. *Id.*

Insight responded by filing a second supplemental motion for judgment on the administrative record, in which it also renewed its original, deferred arguments for judgment on the administrative record.  *See* Pl.'s Second SMJAR.  With respect to the Navy's supplemental PIA investigation, Insight argued that the Navy failed to fully investigate the alleged PIA violation by declining to interview all individuals who had access to the SharePoint site from May 24 through May 27, 2021.  *Id.* at 3.  Insight further faulted the Navy for not investigating Insight's allegations that the Navy also "violated the PIA by failing to remove Insight's pricing from the SharePoint website until May 28, 2021 – after the reopening of the procurement process on May 27, 2021." *Id.* at 5-6.

On May 10, 2022, on consent of the parties, this Court ruled on the record, denying "the unresolved portions of Plaintiff's Motion for Judgment on the Administrative Record (MJAR) (ECF No. 33), Plaintiff's Supplemental MJAR (ECF No. 77), and Plaintiff's Second Supplemental MJAR (ECF No. 103)," and granting "the unresolved portions of Defendant's Cross-Motion for Judgment on the Administrative Record (Cross-MJAR) (ECF No. 38), Defendant's Supplemental

Cross-MJAR (ECF No. 78), Intervenor-Defendant's Cross-MJAR (ECF No. 39), and Intervenor-Defendant's Supplemental Cross-MJAR (ECF No. 79)."  May 10 Order; May 10 Tr. at 5:14-6:2.[12]

Specifically, and as explained in more detail below, the Court held that "(i) the Navy was not required to examine Dell Marketing's GSA Schedule; (ii) Dell Marketing has a valid Contractor Team Agreement, or CTA, with Dell Federal; (iii) the Navy reasonably evaluated Insight's past performance; (iv) the Navy did not show improper favoritism toward Dell Marketing; and (v) the Navy conducted a reasonable PIA investigation that rationally concluded that the procurement was not affected by a PIA violation."  May 10 Tr. at 6:14-22.  The Court, therefore, lifted the injunction that was temporarily in place, and explained that "the U.S. Department of the Navy may immediately proceed with its award to Dell Marketing L.P."  May 10 Order at 2; *see also* May 10 Tr. at 38:10-13.

<u>APPLICABLE LEGAL STANDARD</u>

This Court reviews post-award bid protests in two steps.  First, the Court analyzes the procurement under the Administrative Procedure Act (APA).  28 U.S.C. § 1491(b)(4); *Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 759, 766 (Fed. Cir. 2021).  Second, the Court must analyze whether the alleged errors prejudiced the protestor.  *See DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1308 (Fed. Cir. 2021).

Turning to the first step, the APA requires a reviewing court to determine "whether the agency's actions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Off. Design Grp. v. United States*, 951 F.3d 1366, 1371 (Fed. Cir. 2020) (quoting *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013)); 5

---

[12] As noted, the parties agreed to receive an expedited oral ruling on the record for certainty relating to upcoming procurement deadlines, with the understanding that the Court would issue a written Memorandum and Order detailing its reasoning and enter judgment at that time.  *See supra* note 4.

U.S.C. § 706.  Although the inquiry under the APA "is to be searching and careful, the ultimate standard of review is a narrow one.  The court is not empowered to substitute its judgment for that of the agency."  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416-20 (1971). Accordingly, courts may set aside an award only if "(1) 'the procurement official's decision lacked a rational basis or (2) 'the procurement procedure involved a violation of regulation or procedure.'" *DynCorp*, 10 F.4th at 1308 (quoting *WellPoint Mil. Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020)).

When a protestor alleges the agency's decision lacked a rational basis, the court reviews "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion."  *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018) (quoting *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004)).  As the United States Court of Appeals for the Federal Circuit has explained, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis."  *Centech Grp., Inc. v. United States,* 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Contruzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  Indeed, agency decisions are "entitled to a presumption of regularity."  *Impresa*, 238 F.3d at 1338.  Protestors bear a similar burden when alleging that the procurement involved legal or procedural violations, as the court reviews such claims for "a clear . . . violation of applicable statutes or regulations."  *Id.* at 1333 (quoting *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)).

At the second step, regardless of whether the alleged error relates to irrational conduct or a violation of law, the protestor must establish that the agency's conduct prejudiced the protestor. *Sys. Studs. & Simulations, Inc. v. United States*, 22 F.4th 994, 997 (Fed. Cir. 2021).  This is a factual question for which the protestor must "show 'that there was a "substantial chance" it would

have received the contract award but for' the [alleged error]." *Id.* at 998; *see also Bannum, Inc. v. United States,* 404 F.3d 1346, 1353 (Fed. Cir. 2005). *De minimis* errors in the procurement process generally do not justify relief. *Off. Design Grp.*, 951 F.3d at 1374.

If a protestor meets its burden of demonstrating that the procurement both violated the APA and prejudiced the protestor, declaratory or injunctive relief may be appropriate. *See* 28 U.S. C. § 1491(b)(2). However, successful protestors are not automatically entitled to an injunction. *See Centech,* 554 F.3d at 1037. Before entering injunctive relief, "the court must consider whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Id.*

The Rules of the United States Court of Federal Claims (Rules or RCFC) provide the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum,* 404 F.3d at 1356. Parties initiate such proceedings by filing motions for judgment on the administrative record. Rule 52.1(c). In adjudicating cross motions under Rule 52.1, courts resolve questions of fact by relying on the administrative record. *See id.* If necessary, a court may remand the case back to a governmental agency for further factual findings. Rule 52.2.

<div align="center">DISCUSSION</div>

Plaintiff's arguments fail under this Court's limited APA review. The parties' motions raise seven issues: (1) whether the Navy was required to examine a copy of Dell Marketing's GSA Schedule, (2) whether Dell Marketing has a valid Contractor Teaming Arrangement with Dell Federal, (3) whether the Navy reasonably evaluated Insight's past performance, (4) whether the Navy showed improper favoritism toward Dell Marketing, (5) whether the Navy conducted a reasonable PIA investigation that concluded that the procurement was not affected by a PIA

violation, (6) whether the procurement was fundamentally unfair, and (7) whether Insight is entitled to injunctive relief. *See* Plaintiff's Memorandum in Support of Its MJAR (ECF No. 34) (Pl.'s Mem.) at 23-48; Defendant's Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's MJAR (ECF No. 38) (Def.'s Cross-MJAR) at 24-57; Intervenor-Defendant's Memorandum in Support of its Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's MJAR (ECF No. 39-1) (Int.-Def.'s Mem.) at 23-58.[13]  On each issue, Insight has not demonstrated that the Navy acted irrationally, violated the terms of the Solicitation, or acted in violation of U.S. procurement law.  Furthermore, several of Insight's arguments fail because the alleged errors did not prejudice Insight.  This Court must therefore deny Plaintiff's MJAR, SMJAR, and Second SMJAR, and grant Defendant's and Intervenor-Defendant's Cross-MJARs and Supplemental Cross-MJARs.

I.   The Navy Did Not Err in Failing to Evaluate Dell Marketing's GSA Schedule

Plaintiff first alleges that "the Navy failed to evaluate whether Dell Marketing ha[d] all of the required Microsoft products on its General Services Administration ('GSA') Federal Supply Schedule ('FSS')."  Pl.'s Mem. at 11.  The Solicitation required offerors to have all the requested products on their GSA FSS Schedules for the duration of the procurement.  *See* Tab 3.1 (Excerpts from Original Request for Quotations (RFQ), dated March 17, 2021) at AR 32.  While the Navy relied on representations and documentation provided by Dell Marketing to determine that it satisfied the GSA FSS Schedule requirement, it did not independently review Dell Marketing's GSA Schedule.  *See* Tab 4 (Dell Initial Quote, dated April 6, 2021) at AR 144, 173, 181-800; Tab 41 (Dell Comments on Agency Report, dated July 13, 2021) at AR 4738-41.  Plaintiff argues that

---

[13] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

the Navy's failure to independently review a copy of Dell Marketing's GSA Schedule was erroneous because (i) such inspection was required to ensure compliance with the Solicitation, and (ii) there was "significant countervailing evidence" triggering an obligation for the Navy to independently verify Dell Marketing's representations about the contents of its GSA Schedule. Pl.'s Mem. at 23-29 (quoting *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1331 (Fed. Cir. 2011)).  This Court holds that Plaintiff's claim fails on both grounds.

      A.  <u>The Solicitation Did Not Require an Inspection of Dell Marketing's GSA Schedule</u>

      First, Insight alleges that the Navy failed to review Dell Marketing's GSA Schedule despite the RFQ's requirement that "each offeror have a GSA Schedule that (1) covers the duration of the BPA, and (2) contains '[a]ll Microsoft products listed under Attachment #2 – BPA Product and Price List.'"  Pl.'s Mem. at 24 (quoting Tab 3.1 at AR 32).  However, the terms of the Solicitation did not require the Navy to independently verify Dell Marketing's GSA Schedule.  This Court's "duty [is] to determine whether the agency's [eligibility] analysis was consistent with the evaluation criteria set forth in the RFP, not to introduce new requirements outside the scope of the RFP."  *Alabama Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (citation omitted).  The Solicitation clearly did not require the Navy to inspect Dell Marketing's GSA Schedule.  Rather, it only required offerors to "submit *evidence* of product inclusion on [the] GSA Schedule," Tab 3.3 (Amendment 2 to RFQ, dated March 31, 2021 (without responses to questions) at AR 101 (emphasis added), and to "only provide Microsoft product listing and pricing."  *Id*. at AR 103-104.  Indeed, as noted in this Court's factual findings, neither offeror submitted its full GSA FSS contract, nor did the RFQ require offerors to do so.  *See generally* Tab 3.3 at AR 101-04; Tab 4; Tab 5 (Insight Initial Quote, dated April 6, 2021); *see also supra* pp. 10-11.  Further, the Administrative Record does not support that either offeror objected

to the Navy's process of using offerors' self-provided Microsoft product and price list as opposed to requiring submission of offerors' full GSA FSS contracts. *See* Tab 3.3; Tabs 4-5.

The Navy complied with the Solicitation's evaluation criteria by rationally relying on the representations and documentation provided by both Insight and Dell Marketing. Such reliance is generally standard practice in government procurements. *See Allied Tech.*, 649 F.3d at 1330 (Fed. Cir. 2011). "Where an offeror has certified that it meets the technical requirements of a proposal, the Contracting Officer is entitled to rely on such certification in determining whether to accept a bid." *Id.* (internal quotation omitted).

The Navy's reliance here was reasonably based on the representations and documentation provided by Dell Marketing and the Navy's own due diligence. First, Dell Marketing provided detailed spreadsheets (i) identifying Microsoft products on its GSA Schedule and the pricing for those products, and (ii) comparing the Solicitation's stock-keeping unit numbers with those on Dell Marketing's Schedule. Tab 4 at AR 144, 181-800. Second, Dell Marketing certified that it had the necessary products on its Schedule. *Id.* at AR 173 ("By responding to this RFQ, vendor is certifying that all products listed in Attachment 2 are currently included on your GSA Multiple Award Schedule (MAS) Contract (GS-35F-059DA And GS-35F-0884P*."). Third, Dell Marketing submitted a letter from Microsoft referencing this Solicitation and confirming Dell Marketing's status as an authorized Microsoft reseller. *Id.* at AR 801. Fourth, the Navy conducted its own independent analysis by comparing Dell Marketing's submitted price list for the BPA to Dell Marketing's submitted evidence of inclusion on its FSS to ensure that Dell Marketing's GSA Schedule included the necessary products. *See* Tab 40 (Navy Response to GAO Request for Information, dated July 13, 2021) at AR 4739. The Navy concluded that it did. *Id.* ("Almost all of the SKUs and associated GSA prices listed on Dell's BPA Attachment 2 – BPA Product and

Price List were matched using this method to the GSA SKUs and prices on Dell's Consolidated Microsoft Products excel."); AR 4740 (confirming that all SKUs were "included on Dell's Microsoft Price List" and "the prices matched").  Thus, the Navy acted reasonably in relying on Dell Marketing's statements and spreadsheets, which reflected that its GSA Schedule contained the necessary products to satisfy the RFQ.[14]  *Id.* at AR 4740-41.

> B. The Alleged Warning Signs Did Not Present "Significant Countervailing Evidence" Requiring the Navy to Inspect Dell Marketing's GSA Schedule

Second, there was no "significant countervailing evidence" requiring the Navy to review Dell Marketing's GSA Schedule.  While an agency is permitted to rely on a bidder's certification "that it meets the technical requirements of a proposal . . . in determining whether to accept a bid," it should not accept a bid where there is "significant countervailing evidence reasonably known to the agency evaluators that should create doubt whether the offeror will or can comply with the requirement."  *Allied Tech. Grp.*, 649 F.3d at 1330-31 (citation omitted).  Accordingly, where a bid "*on its face*" leads an agency "to the conclusion that an offeror could not and would not comply with the [applicable requirement]," the agency has an obligation to independently determine whether the bidder's representations are accurate.  *Id.* at 1330 (emphasis in original) (citation omitted).

---

[14] While Intervenor-Defendant understands Plaintiff to also argue in its initial MJAR that the Solicitation should have, but did not, require the Navy to review bidders' GSA Schedules, Plaintiff clarified in its reply brief that it "does not suggest the evaluation scheme in the RFQ was improper."  Int.-Def's Mem. at 23-24; Plaintiff's Response to Defendant's and Intervenor-Defendant's Cross-MJARs and Reply In Support of Plaintiff's MJAR (ECF No. 44) (Pl.'s Reply) at 14.  The Court agrees with Intervenor-Defendant that had Plaintiff raised such a claim, it would have been untimely under *Blue & Gold Fleet, L.P. v. United States*, as "[v]endors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award and then, if unsuccessful, claim the solicitation was infirm." 492 F.3d 1308, 1314 (Fed. Cir. 2007).  Plaintiff was required to raise such an objection to the express terms of the Solicitation pre-award.  *Id.*

Plaintiff points to seven alleged warning signs in Dell Marketing's proposal that purportedly demonstrate "significant countervailing evidence" that Dell Marketing's GSA Schedule may not have covered the duration of the BPA or may not have contained all the products required by the Solicitation.  Pl.'s Mem. at 26-28; *see also* Tab 3.3 at AR 101 ("Resellers shall submit evidence of product inclusion on GSA schedule, i.e., a copy of your GSA approved Price List."), AR 102 ("Reseller must have a current General Services Administration (GSA) Federal Supply Schedule (FSS) contract that covers the duration of the resultant Agreement.").  Plaintiff contends that such alleged warning signs required the Navy to independently determine whether Dell Marketing's bid representations were accurate.  *See* Pl.'s Mem. at 26.  However, none of these alleged warning signs meet the *Allied Tech.* "significant countervailing evidence" standard; accordingly, none of the purported warning signs required further investigation by the Navy and none would have required the Navy to request a copy of Dell Marketing's full GSA Schedule to determine whether it contained the products necessary for the procurement.  *Allied Tech. Grp.*, 649 F.3d at 1331.  The Court will address each alleged warning sign in turn.

First, Plaintiff argues that a search of bidders on the GSA Advantage website,[15] www.gsaadvantage.gov, should have alerted the Navy that Dell Marketing purportedly did not have the required products on its GSA Schedule, as required by the Solicitation.  Pl.'s Mem. at 26-27.  Specifically, Plaintiff contends that the Navy should have had concerns about Dell Marketing's GSA Schedule given "Dell Marketing does not even have the first part number from the RFQ" listed on the GSA Advantage website and none of Dell Marketing's products listed on

---

[15] As described on GSA's buying and selling tools website, the GSA Advantage website allows "federal buyers" to view goods and services contractors provide and to "[s]hop [for] millions of products and services … or research the market for selling."  https://www.gsa.gov/tools-overview/buying-and-selling-tools (last viewed June 8, 2022).

the GSA Advantage website include required products[16] under the RFQ.  *See* Pl.'s Mem. at 25-26.

However, Plaintiff fails to present evidence that other contractors produced their full GSA

Schedule on the GSA Advantage website, a circumstance that, if true, would certainly have

alarmed the Navy if offerors, such as Dell Marketing, did not follow suit.  *See generally* Pl.'s Mem.

In fact, there is no evidence that Plaintiff's hypothetical scenario exists.   In stark contrast,

Defendants point to other authorized Microsoft Licensing Solution Providers, including Dell

Federal and CDW Government LLC, that, for various reasons, do not list *any* Microsoft products

on the GSA Advantage website.  *See* Def.'s Cross-MJAR at 27; Int.-Def.'s Mem. at 32.  Consistent

with that practice, Dell Marketing reasonably explained that it does not publish its full price list

on GSA Advantage given (i) its large size containing "over 300,000 [stock keeping units]" and (ii)

---

[16] Defendant contends that the Court should not consider this "alleged warning sign" because the GSA Advantage searches on which Plaintiff relies are not part of the Administrative Record. Def.'s Cross-MJAR at 26.  To the extent Plaintiff asks this Court to consider screenshots of GSA Advantage searches attached to Plaintiff's Reply in Support of its Motion to Complete the Administrative Record (ECF No. 31), this Court agrees with Defendant that it will not consider those screenshots as they are not a part of the Administrative Record.  *See Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (explaining that the court is limited to reviewing the administrative record under APA review to "guard against courts using new evidence to convert the 'arbitrary and capricious' standard into effectively de novo review" (internal citations and quotations omitted)); *see also* Exhibits 1-2 of Plaintiff's Reply in Support of its Motion to Complete the Administrative Record (ECF Nos. 31-1, 31-2) (containing GSA searches performed by Plaintiff's counsel that are not part of the Administrative Record).

Defendant argues that the Court's inquiry should end there.  Def.'s Cross-MJAR at 26.  This Court disagrees.   The Administrative Record reflects that the Navy performed a search of the GSA Advantage website, even though the screenshot of that search is not a part of the Administrative Record.  *See* Tab 63 (Vendor Submission Workbook) at AR 5565-67; Tab 70 (DoD Website Notice of Contract Awards, June 4, 2021) at AR 6176.  Given neither party contests the result of that search — namely that Dell Marketing's GSA Schedule products list was not posted on the GSA Advantage website — this Court has a basis to conduct "meaningful judicial review" into whether the omission of Dell Marketing's products list on GSA Advantage's website raises to the level of "significant countervailing evidence."   *Axiom Res. Mgmt.*, 564 F.3d at 1380; *Allied Tech. Grp.*, 649 F.3d at 1331; *see generally* Pl.'s Mem. at 25-26; Def.'s Cross-MJAR at 27; Int.-Def.'s Mem. at 30-32; *see also* Nov. 17 Tr. at 74:4-7 (acknowledging on behalf of Defendant that Dell Marketing's complete pricing is not listed on the GSA Advantage website).

its "commercial practices change frequently."   Int.-Def.'s Mem. at 32 (citing Dell Marketing's Terms & Conditions); *see also* Def.'s Cross-MJAR at 27 (arguing the same).  As Plaintiff presents no evidence that it is routine for companies to post their entire GSA Schedule product list on the GSA Advantage website, Plaintiff fails to establish that the absence of Dell Marketing's Microsoft products listed on the GSA Advantage website is "significant countervailing evidence" that would lead the agency to doubt Dell Marketing's representations concerning its ability to provide the requisite products from its GSA FSS.  *Allied Tech. Grp.*, 649 F.3d at 1330-31.

Second, Plaintiff contends that Dell Marketing's request to amend the Solicitation, to permit Dell Federal and Dell Marketing to submit a bid under a Contractor Teaming Arrangement (CTA), should have put the Navy on notice that Dell Marketing allegedly would not be able to meet the requirements of the procurement.  Pl.'s Mem. at 26.  This claim similarly falls short as Dell Marketing explicitly informed the Navy that it desired to submit a bid through a teaming arrangement with Dell Federal because (i) Dell Federal's FSS was set to expire in 2024 and did not meet the Solicitation's requirement that an offeror hold the requisite GSA Schedule for the duration of the BPA,[17] and (ii) Dell Marketing was unable to handle classified orders, while Dell Federal could do so.  *See* Tab 3.6 (E-mail Chain regarding Dell Teaming Request, dated March 26-31, 2021) at AR 131-33.  While these reasons rationally explain Dell's request for a teaming arrangement, neither explanation indicates that Dell Marketing lacked the required products on its FSS.  *See* Tab 3.1 at AR 31-32.  Dell's preference for submitting a bid under a CTA did not tell the Navy anything about either entity's ability to provide the procurement's required products. Accordingly, this alone cannot satisfy the "significant countervailing evidence" standard.  *Allied Tech. Grp.*, 649 F.3d at 1330-31; *see also Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1315

---

[17] *See supra* pp. 6-7.

(Fed. Cir. 2016) (holding proposal based on teaming agreement would not put agency on notice that the offeror "could not and would not" comply with the solicitation's requirements (citation omitted)).

Third, Plaintiff argues that Dell Marketing's lack of a U.S. Department of Defense Enterprise Software Initiative Blanket Purchase Agreement (DoD ESI BPA) indicates a defect with Dell Marketing's GSA Schedule. Pl.'s Mem. at 26. This claim is without merit as Dell Marketing's CTA and reliance on Dell Federal's DoD ESI BPA are entirely consistent with the Solicitation. As an initial matter, Dell Marketing is an "authorized [Microsoft] Licensing Solution Partner" meaning that Dell Marketing is authorized "to sell Microsoft software to state, local, and federal government customers," as required by the Solicitation. Tab 4 at AR 801. Additionally, the RFQ was amended to permit the use of CTAs, and Insight did not object to this amendment pre-award. *See* Tab 3.3 at AR 101. Further, the Solicitation did not require a reseller to be a DoD ESI BPA holder if its teaming partner held a DoD ESI BPA. *Id.* at AR 102 ("Reseller/ Teaming Partner must be a DoD ESI BPA Holder for Microsoft Products and Azure Services."). Since Dell Federal is a teaming partner with a DoD ESI BPA, Dell Marketing's proposal complied with the Solicitation's requirements. *See* Tab 34 (Navy Contracting Officer Statement of Facts and Memorandum of Law, dated July 6, 2021) at AR 4704. Finally, under the circumstances here — where its teaming partner satisfied the Solicitation requirement — it was immaterial that Dell Marketing did not hold a DoD ESI BPA. Such a scenario did not inform the Navy about the contents of Dell Marketing's GSA Schedule. Thus, the absence of a Dell Marketing DoD ESI BPA does not indicate "significant countervailing evidence" of a defect with Dell Marketing's GSA Schedule. *Allied Tech. Grp.*, 649 F.3d at 1330-31.

Fourth, Plaintiff argues that Dell Marketing's reference to "EA Pricing on GSA," included in Dell's BPA Product and Price List, implied that Dell Marketing was using Dell Federal's GSA Schedule, rather than its own, to provide products under the procurement. Pl.'s Mem. at 26-27. This argument is speculative and falls notably short of *Allied Tech.*'s "significant countervailing evidence" test. *Allied Tech. Grp.*, 649 F.3d at 1330-31. Plaintiff contends that "EA" means "Enterprise Agreement" and refers to the DoD ESI BPA that is held by Dell Federal, while Intervenor-Defendant contends "EA" commonly references enterprise pricing agreements, in general, for large organizations. Pl.'s Mem. at 27; Int.-Def.'s Mem. at 29. Plaintiff fails to establish why the use of "EA," a common term in this arena, should be interpreted as specifically referencing the DoD ESI BPA. Without providing a rationale for why the Navy should have construed the term one way and not another, Plaintiff fails to present "significant countervailing evidence" that "*on its face*" raises a red flag requiring further investigation. *Allied Tech. Grp.*, 649 F.3d at 1330-31 (emphasis in original).

Fifth, Plaintiff argues that since the Navy knew that Dell Federal, rather than Dell Marketing, typically sold enterprise software to the Government, Dell Marketing must not have had all the requisite products on its GSA Schedule, as required by the Solicitation. Pl.'s Mem. at 27. This claim, which requires a large logical leap, similarly fails. Even assuming *arguendo* that Dell Federal sold more enterprise software to the Government than Dell Marketing — an issue this Court need not resolve — it would be of no moment, as it has no bearing on whether Dell Marketing's GSA Schedule covered the requisite Microsoft products mandated by the Solicitation.[18] Further, Plaintiff does not cite any authority reflecting that a general industry

---

[18] Intervenor-Defendant contests Plaintiff's premise that Dell Federal, rather than Dell Marketing, is the entity that typically sells enterprise software to the Government. Int.-Def.'s Mem. at 29-30. As noted, this Court need not evaluate the claim's veracity as, even if true, the allegation would

sentiment or perception can constitute the type of "significant countervailing evidence" that would require an agency to verify a bidder's representations, upon which the agency is generally entitled to rely. *Allied Tech. Grp.*, 649 F.3d at 1330-31.  Accordingly, this claim fails as well.

Sixth, Plaintiff argues that the Navy should have been aware that Dell Marketing allegedly did not have all required products on its GSA Schedule given Dell Marketing submitted past performance information solely for Dell Federal.  Pl.'s Mem. at 27.  However, Plaintiff fails to account for the multitude of reasons why past performance data may be absent for the prime contractor in a CTA.  For example, the non-prime contractor may have performed more of these types of contracts in the past, and thus had more relevant past performance data.  Further, as Intervenor-Defendant notes, the RFQ expressly permitted Dell to submit past performance references from Dell Federal, rather than Dell Marketing.  Int.-Def.'s Mem. at 30 (citing Tab 3.3 at AR 102 (permitting the "*Reseller/Teaming Partner* [to] submit 2" past performance references)). It would be incongruous to suspect Dell Marketing of malfeasance for submitting precisely the information that the RFQ permitted.  Finally, Plaintiff has failed to demonstrate or cite any support for the proposition upon which it seemingly relies — namely that the number of partner references in comparison to the number of prime references can constitute "significant countervailing evidence" that would trigger a duty to verify the bidder's representations. *Allied Tech. Grp.*, 649 F.3d at 1330-31.  Accordingly, this claim similarly fails.

Seventh, Plaintiff argues that the CTA between Dell Marketing and Dell Federal was invalid because Dell Federal allegedly could not supply the requisite products from its GSA Schedule.  Pl.'s Mem. at 27.  Thus, based on Plaintiff's hypothetical of an invalid CTA, Insight

---

fail to meet the *Allied Tech.* standard requiring further agency action. *Allied Tech. Grp.*, 649 F.3d at 1330-31; *see also supra* pp. 44-45.

contends that the Navy was required to independently review Dell Marketing's GSA Schedule because Dell Marketing purportedly could not have provided the requisite products under the Solicitation without a valid CTA. *See id.* As an initial matter, Plaintiff's premise is incorrect — as explained below, the Solicitation did not require both CTA partners to provide products from their respective GSA Schedules. *See* Tab 3.3 at AR 101-04; *infra* at pp. 46-48. As Dell's CTA was valid and neither the CTA nor the Solicitation required each team member to provide products, any alleged failure by Dell Marketing to include in its proposal a list of products that would be offered by Dell Federal does not present "significant countervailing evidence" triggering an agency obligation to independently verify Dell Marketing's representations about the contents of its GSA Schedule. *Allied Tech. Grp.*, 649 F.3d at 1330-31. As with Plaintiff's other alleged warning signs, this claim also fails. Accordingly, the Navy did not err by declining to independently review Dell Marketing's GSA Schedule.

II.   <u>Dell Marketing Has a Valid Contractor Teaming Arrangement with Dell Federal</u>

Next, Plaintiff contends that Dell Marketing lacks a valid Contractor Teaming Arrangement (CTA) with Dell Federal because under Dell's proposal, Dell Federal does not supply any products from its GSA Schedule. Pl.'s Mem. at 28-29. Defendants respond that Plaintiff's argument is (i) waived as untimely,[19] and (ii) lacks merit as both members of a CTA are not required to supply products from their own GSA Schedules for the CTA to be valid. Def.'s Cross-MJAR at 29-31; Int.-Def.'s Mem. at 32-37. While the timeliness issue falls in Plaintiff's favor, Defendants ultimately prevail on the merits of this argument.

---

[19] The timeliness argument is raised by Intervenor-Defendant, but not by Defendant. Int.-Def.'s Mem. at 32-37.

First, Intervenor-Defendant's timeliness argument under *Blue & Gold Fleet*, 492 F.3d at 1313, is unavailing. Dell Marketing characterizes Plaintiff's argument as a tardy objection to Amendment 2 to the Solicitation, which permitted Dell Marketing to enter a CTA with Dell Federal. *See* Int.-Def.'s Mem. at 33; Tab 3.3 at AR 101 ("Contractor Teaming Arrangements will be accepted."). Dell Marketing contends that Plaintiff waived this argument by failing to raise it pre-award. Int.-Def.'s Mem. at 33. Dell Marketing mischaracterizes Plaintiff's argument. Plaintiff does not dispute that the Solicitation as amended allowed for teaming arrangements. *See* Pl.'s Reply at 21 n.7 ("Insight has never claimed that 'Dell Marketing could not enter a CTA with Dell Federal.'" (quoting Int.-Def.'s Mem. at 33)). Rather, Plaintiff alleges that Dell Marketing did not form a valid CTA with Dell Federal and thus should be ineligible for the award. *See* Pl.'s Mem. at 28-29. Accordingly, as Plaintiff's objection does not relate to the terms of the Solicitation, *Blue & Gold* is inapplicable, and Plaintiff's claim is timely. *Blue & Gold*, 492 F.3d at 1313.

Turning to the merits of Plaintiff's claim, Plaintiff fails to cite any authority mandating that each member of a CTA provide some products off its GSA Schedule for the CTA to be valid. *See* Pl.'s Mem. at 28-29. This is likely because "[t]here is no FAR or [General Services Acquisition Manual] FAR supplement regulation that actually provides any definition of what a CTA is and what its elements must be. There is only [GSA's] website." *Brooks Range Cont. Servs., Inc. v. United States*, 101 Fed. Cl. 699, 716 n.16 (2011) (citation omitted). While GSA's website provides useful guidance, it is not law and does not establish necessary elements for creating a valid CTA. *Brooks Range Cont. Servs.*, 101 Fed. Cl. at 716 n.16 ("Notwithstanding their mandatory phrasing, the four elements [on GSA's website] are not contained in [the Solicitation, the FAR, or in binding precedent,] providing mandatory requirements for offerors."). Further, the Solicitation does not

incorporate GSA's website guidance for establishing a valid CTA.  *See* Tab 3.3 at AR 101-04.  Thus, Dell's CTA was not required to comply with guidance listed on GSA's website.

However, even if satisfaction of GSA's website guidance were required to create a valid CTA, Dell Marketing's CTA would clearly satisfy such requirements.  GSA's website lists four elements for creating a CTA: (i) "[e]ach team member must have a GSA Schedule contract," (ii) "[e]ach team member is responsible for duties addressed in the CTA," (iii) "[e]ach team member has privity of contract with the government and can interact directly with the government," and (iv) "the buying entity is invoiced at each team member's unit prices or hourly rates as agreed in the . . . GSA Schedule BPA."  *See* https://www.gsa.gov/buying-selling/purchasing-programs/gsa-multiple-award-schedule/schedule-features/contractor-team-arrangements (last viewed June 8, 2022).  It is undisputed that both entities (i) have GSA Schedules, Tab 6.1 (Additional E-mails between the Navy and Dell regarding Dell's Quote, dated April 7-8, 2021) at AR 3301, (ii) are responsible for duties under the CTA with Dell Federal providing services for secure orders and Dell Marketing providing products, such as hardware and software, for all other orders, *id.*, and (iii) charge the Government based on Dell Marketing's GSA Schedule, as indicated in the CTA.  *Id.* at AR 3312, 3302.  Plaintiff contests only the "privity" element, arguing that Dell Federal is not in privity of contract with the Government because a subcontractor could fulfill the secure order requirements under the Solicitation.  Pl.'s Reply at 19-20 (citing *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1371 (Fed. Cir. 2009) ("[S]ubcontractors are generally not in privity of contract with the government.")).  This argument is not well taken.

Plaintiff does not allege that Dell Federal is operating as a subcontractor in this procurement, nor could it as both Dell entities are teaming partners.  *See* Pl.'s Reply at 19-20; Tab 6.1 at AR 3313.  Rather, Plaintiff presents an unsupported argument that since a subcontractor

*could* provide the same services as Dell Federal, Dell Federal should be treated as a subcontractor, and thus no privity exists between the Navy and Dell Federal.  *See* Pl.'s Reply at 19-20.  This argument runs contrary to law.  Privity of contract exists where "[t]he relationship between the parties to a contract, allow[s] them to sue each other but prevent[s] a third party from doing so." *Estes Exp. Lines v. United States*, No. 11-597C, 2017 WL 3393298, at *9 (Fed. Cl. Aug. 8, 2017) (quoting Privity of Contract, Black's Law Dictionary (10th ed. 2014)).  Direct privity is established if the parties have a contractual relationship that evinces their intent to be bound.  *Estes Exp. Lines v. United States*, 739 F.3d 689, 693-94 (Fed. Cir. 2014) (finding privity of contract between the Government and a federal motor carrier where no contract existed between the two, yet the Government "expressly authorized, by contract its designation as a party to the bills of lading" between the carrier and a third-party, and the Government accepted all shipments from the carrier expressing its intent to be bound).

Direct privity exists between the Navy and Dell Federal.  While this Court agrees with Defendant that the "Government will not have 'privity of contract' with anyone for the BPA itself," since the Solicitation indicates that the Government is "under no obligation to exercise any options contained in this BPA or any Order resulting from this BPA," that changes when the Government places an order from the BPA.  Def.'s Cross-MJAR at 30 n.7; Tab 3.3 at AR 79; *see also Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380, 1384 (Fed. Cir. 2014) (holding no privity where the Government was not required to exercise its options by purchasing from the BPA and the solicitation stated purchases from parties other than the BPA awardee would not violate the Agreement).  Once the Navy places orders from the BPA, it will be in privity with Dell Federal and Dell Marketing — Dell Federal for fulfilling secure ordering needs and Dell Marketing for "invoicing and payment for [s]oftware orders."  Tab 6.1 at AR 3313; *see Zhengxing v. United*

*States*, 204 F. App'x 885 (Fed. Cir. 2006) (holding BPAs create contractual obligations regarding accepted orders); *Mod. Sys. Tech. Corp. v. United States*, 979 F.2d 200 (Fed. Cir. 1992) (holding accepted orders from a BPA create enforceable obligations between the parties).

Privity will be established between the Government and Dell Federal as the latter is solely "responsible for fulfilling *any* secure order requirements," and Dell Marketing is not listed as secondarily responsible for secure orders if Dell Federal fails to perform.  Tab 6.1 at AR 3313 (emphasis added).  Dell's response to the Navy's question about liability emphasizes this point by indicating that "each individual team member [of the CTA] is responsible for their performance."[20] *Id*. at AR 3312.  Since the Administrative Record clearly indicates that Dell Federal will be solely responsible for secure orders under the CTA, and the Government selected Dell for the BPA with knowledge of Dell's CTA, a contractual relationship — and thus privity — will be established between the Government and Dell Federal as soon as the Government places a secure order.  *Id*. at AR 3293 (describing responsibilities of Dell Federal and Dell Marketing to the Navy under the CTA).

Finally, Plaintiff relies on the GAO's decision in *Veterans Healthcare* to buttress its argument that a valid CTA exists only where both partners provide products from their GSA

---

[20] In its reply, Plaintiff argues for the first time that Dell's CTA violated the FAR's 8.405-3(b)(1)(ii)(C) requirement that an "award is made in accordance with the basis for selection in the RFQ."  Pl.'s Reply at 20 (quoting FAR 8.405-3(b)(1)(ii)(C)).  First, Plaintiff waived this argument by raising it for the first time in its reply brief.  *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief — they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." (emphasis in original)).  Second, even if not waived, Plaintiff's argument is based on an incorrect premise that Dell Federal would not be in privity of contract with the Government.  *See* Pl.'s Reply at 20.  Given that privity exists between Dell Federal and the Government, and the Solicitation did not indicate that CTAs must comply with GSA's website guidance, the Navy properly followed the "basis for selection in the RFQ."  FAR 8.405-3(b)(1)(ii)(C); *see also* Tab 3.3 at AR 101-02.

Schedules. *Veterans Healthcare*, however, is inapposite to the proposition Plaintiff posits. The GAO merely held that a solicitation requiring that each member of a CTA hold its own FSS contract was "not unduly restrictive of competition or otherwise improper." *Veterans Healthcare Supply Sols., Inc*, B-409888, 2014 CPD ¶ 269, 2014 WL 4384601 at *3 (Comp. Gen. Sept. 5, 2014). Unlike the CTA at issue in *Veterans Healthcare*, Dell's CTA contemplates that Dell Federal would be in privity of contract with the Government to fulfill secure needs under the BPA, while Dell Marketing would be in privity of contract with the Government to fulfill non-secure product needs. Tab 6.1 at AR 3313. Significantly, unlike the solicitation's CTA requirements in *Veterans Healthcare*, the Solicitation here does not require each teaming partner to provide products from its GSA Schedule. *See* Tab 3.3 at AR 101-04. Thus, the reasoning in *Veterans Healthcare* is inapplicable to determining the validity of the CTA between Dell Marketing and Dell Federal.

Having found, among other reasons discussed above, that both entities need not each provide products from their respective GSA Schedules to create a valid CTA under this Solicitation, the Court finds Dell Marketing and Dell Federal's CTA valid.

III.   The Navy Conducted a Reasonable Past Performance Evaluation

Plaintiff objects to the Navy's past performance evaluation, arguing that Insight should have received (1) a "Substantial Confidence" — rather than a "Satisfactory Confidence" — Past Performance rating (or "at a minimum a higher Confidence rating than Dell"), and (2) a "Very Relevant" — rather than a "Relevant" — Relevance rating. Pl.'s Mem. at 29-31. Defendants respond that the Navy reasonably evaluated the offerors' past performance, but even if the evaluation were unreasonable, Plaintiff's claim would still fail for lack of prejudice. Def.'s Cross-MJAR at 32-38; Int.-Def.'s Mem. at 37-41. Three issues arise out of Plaintiff's objection to the

Navy's past performance evaluation, all of which weigh in favor of Defendants: (i) whether Insight's Confidence rating was rationally assigned, (ii) whether Insight's Relevance rating was rationally assigned, and (iii) even assuming Insight's ratings were irrationally assigned, whether Insight was prejudiced.

In addition to the normal deference afforded to the agency under the Administrative Procedure Act, even greater deference is given to an agency's past performance evaluation. *See Active Network, LLC v. United States*, 130 Fed. Cl. 421, 432 (2017) ("When reviewing an evaluation of past performance in a negotiated procurement, the Court affords an agency, 'the greatest deference possible is given to the agency.'"), *aff'd*, 718 F. App'x 981 (Fed. Cir. 2018); *Westech Int'l, Inc. v. United States*, 79 Fed. Cl. 272, 293 (2007) (same, referencing situation as "a *triple whammy* of deference."). In evaluating the agency's expression of its discretion, the court is "limited to determining whether the evaluation was reasonable, consistent with the stated evaluation criteria and complied with relevant statutory and regulatory requirements." *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 381 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004); *see also* FAR 8.405-3(b)(1)(ii)(C) (requiring agencies to ensure that an "award is made in accordance with the basis for selection in the RFQ"). Thus, mere disagreements with an agency's past performance evaluation fail to establish that the agency acted unreasonably. *Active Network*, 130 Fed. Cl. at 433; *Fluor Intercontinental, Inc. v. United States*, 147 Fed. Cl. 309, 329 (2020); *see also Newimar S.A. v. United States*, No. 21-CV-1897, 2022 WL 1592813, at *30 (Fed. Cl. May 12, 2022) (explaining, in price reasonableness context, that "mere disagreement with the [agency's] conclusion . . . cannot sustain a protest"). Plaintiff fails to establish that its objections to the Navy's past performance evaluation amount to anything more than a disagreement with the agency's determination.

A.  <u>The Navy Rationally Assigned Insight's Confidence Rating</u>

First, this Court holds that Insight's Confidence rating was rationally assigned.  While both Insight and Dell Marketing received "Satisfactory Confidence" ratings, Plaintiff contends that it should have received a "Substantial Confidence" rating (or at minimum a higher Confidence rating than Dell) given Insight allegedly had better ratings than Dell Marketing on its Past Performance questionnaires and Contractor Performance Assessment Reporting System (CPARs) ratings.  *See* Tab 12.1 (Final Business Clearance Memorandum (with some attachments), signed June 3-7, 2021) at AR 4374 (reflecting "Satisfactory Confidence" ratings); Pl.'s Mem. at 29-30 (citing AR Tab 12.1 at AR 4374-77).  In support of its position, Plaintiff provides the following two tables — the top table comparing Past Performance questionnaires and the bottom table comparing CPARs ratings:

|         | Excellent | Very Good | Good | Fair | Poor | N/A |
|---------|-----------|-----------|------|------|------|-----|
| Insight | ■         | ■         | ■    | ■    | ■    | ■   |
| Dell    | ■         | ■         | ■    | ■    | ■    | ■   |

|         | Exceptional | Very Good | Satisfactory | Marginal | Unsatisfactory |
|---------|-------------|-----------|--------------|----------|----------------|
| Insight | ■           | ■         | ■            | ■        | ■              |
| Dell    | ■           | ■         | ■            | ■        | ■              |

*Id.*

Upon closer examination, however, Plaintiff's argument amounts to nothing more than a disagreement with the rating rationally assigned by the Navy.  *See Active Network*, 130 Fed. Cl. at 433 (holding mere disagreements with an adjectival rating fail to establish that the agency acted unreasonably); *Fluor Intercontinental*, 147 Fed. Cl. at 329 (same).  First, the RFQ lacked definitions for the Past Performance Confidence ratings.  *See* Tab 3.3 at AR 103.  Accordingly, the Navy was not constrained by the definitions in the Solicitation itself.  *Cf. Mortg. Contracting*

*Servs., LLC v. United States*, 153 Fed. Cl. 89, 126-134 (2021) (holding agency irrationally applied ratings inconsistent with solicitation's adjectival definitions); *FFL Pro LLC v. United States*, 124 Fed. Cl. 536, 555-57 (2015) (same).  Instead, the Navy conducted a detailed review — considering the precise differences Plaintiff references in its charts — by analyzing the parties' sub-ratings and narrative comments to determine that, while Insight's past performance record was "slightly better than Dell's," "[b]oth vendors' past performance provided the Government with a reasonable expectation that they will successfully perform the required effort."  Tab 12.1 at AR 4360, 4374-77.  Plaintiff fails to demonstrate that the Navy's ratings were inconsistent "with the stated evaluation criteria and . . . with relevant statutory and regulatory requirements."  *Banknote Corp. of Am.*, 56 Fed. Cl. at 381.  Indeed, the Navy acted well within its broad discretion in awarding Insight and Dell Marketing their adjectival ratings.

Defendants contend that under Plaintiff's mistaken, formulaic approach to past performance analyses, the Navy would be required to merely add up each offeror's numerical ratings to determine its overall adjectival rating.  Def.'s Cross MJAR at 35; Int.-Def.'s Mem. at 39.  Plaintiff objects to that characterization of its argument, maintaining that it "is not arguing that the Navy should have added scores together to find that Insight was rated higher than Dell."  Pl.'s Reply at 21.  Rather, Plaintiff contends that the Navy's "failure to rate the proposals differently . . . despite . . . significant differences, show a failure to meaningfully evaluate past performance at all."  *Id.* at 22.  This Court disagrees.  Merely because the Navy "assigned [both] proposals the same rating[] does not render the ratings per se improper."  *Sys. Application & Techs., Inc., v. United States*, 100 Fed. Cl. 687, 719 (2011) (holding rational agency's assignment of same adjectival ratings to all three proposals despite differences), *aff'd*, 691 F.3d 1374 (Fed. Cir. 2012).

54

Further, the Court's role is not merely to analyze the adjectival ratings in a vacuum.  Rather, it is this Court's duty "to look beyond adjectival ratings because proposals with the same adjectival rating are not necessarily of equal quality."  *Id.* (internal quotations and citation omitted).  The Administrative Record reflects that the Navy rationally assessed that it had a "reasonable expectation" that *both* offerors could perform under the Solicitation based on their past performance, and thus awarded *both* offerors the same "Satisfactory Confidence" rating despite any differences.  Tab 12.1 at AR 4375; *see also SDS Int'l v. United States*, 48 Fed. Cl. 759, 769 (2001) (holding agency may use its judgment to weigh various factors in awarding an adjectival rating).

The cases on which Plaintiff relies do not alter this Court's analysis.  For example, unlike here where the Navy's RFQ lacked adjectival definitions for Past Performance Confidence ratings, in Plaintiff's cited cases, *Mortgage Contracting Services* and *FEL Pro LLC*, the solicitations expressly defined adjectival ratings.  *Compare* Tab 3.3 at AR 103, *with Mortg. Contracting Servs., LLC v. United States*, 153 Fed. Cl. 89, 126-134 (2021), *and FFL Pro LLC v. United States*, 124 Fed. Cl. 536, 555-57 (2015).  Thus, *Mortgage Contracting Services* and *FEL Pro LLC*'s holdings, that the agencies improperly assigned adjectival ratings based on solicitation definitions, are inapposite here where no such definitions exist.  *Mortg. Contracting Servs.*, 153 Fed. Cl. at 126-134; *FFL Pro*, 124 Fed. Cl. at 555-57.  Further, while in its *EFW, Inc.* decision, the GAO found past performance ratings irrational where the agency had stated that it "will not . . . discuss[] further" why both offerors were assigned the same adjectival rating, here the Navy fully explained that it found Insight's past performance "slightly better" than Dell's, yet awarded the bidders the same adjectival rating because it reasonably believed both would be able to perform under the contract.  *EFW, Inc.*, B-412608, B-412608.2, 2016 CPD ¶ 304, 2016 WL 6919877, at *9-10

(Comp. Gen. Apr. 7, 2016) (citation omitted); *see* Tab 12.1 at AR 4360.  Given in *EFW*, unlike here, the agency provided no explanation for assigning the same ratings, that GAO decision is readily distinguishable.

Finally, that Plaintiff — or even this Court — may have assessed different adjectival ratings had it done so itself is of no import.  This Court does not undergo a *de novo* review in an APA bid protest such as this one.  *Banknote Corp. of Am.*, 56 Fed. Cl. at 381 (analyzing whether past performance evaluation was reasonable); *CSE Const. Co. v. United States*, 58 Fed. Cl. 230, 252 (2003) (same).  Rather, the Court determines whether the agency action was *reasonable* while affording the agency the "greatest deference possible."  *Active Network*, 130 Fed. Cl. at 432 (citation omitted); *see Impresa*, 238 F.3d at 1332 (applying reasonableness standard in APA review).  As past performance evaluations "are not subject to a mathematical calculation," and the Navy engaged in a reasonable analysis to support its evaluation, the Navy was generally entitled to use its judgment in assigning adjectival ratings.  *See Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 909 n.6 (Fed. Cir. 2013) (deferring to agency's discretion in weighing sub-scores and narrative comments before assigning adjectival rating).  Accordingly, this Court defers to the Navy's reasonable judgment here concerning Insight's Confidence rating.

### B.  The Navy Rationally Assigned Insight's Relevance Rating

Second, the Navy rationally assigned Insight's Relevance rating.  Plaintiff contends that it should have received a "Very Relevant," rather than a "Relevant," Relevance rating because its past performance references were valued at more than $50 million per year and thus were "similar" to the BPA, as defined by the Solicitation.  Pl.'s Mem. at 30-31 (citing Tab 8.8 (Insight CPARs) at AR 3466-77).  In essence, Plaintiff argues that the Navy acted contrary to the terms of the Solicitation by discounting its past performance relative to the Solicitation's Relevancy

definitions. *See id.* Again, as explained further below, Plaintiff's argument amounts to a disagreement with the Navy's decision; that is insufficient to find the evaluation arbitrary and capricious. *Active Network*, 130 Fed. Cl. at 433; *Fluor Intercontinental*, 147 Fed. Cl. at 329.

The Navy's Relevance rating is "owed deference as it is among the minutiae of the procurement process." *Glenn Def. Marine*, 720 F.3d at 911 (citations and internal quotations omitted) (deferring to agency's finding that bidder's past performance was relevant as it involved "many of the same ports" as the solicitation and provided services "similar to the services required by th[e] [s]olicitation"). Significantly, FAR 15.305(a)(2)(ii) leaves "what does or does not constitute 'relevant' past performance [to the agency's] considered discretion." *PlanetSpace, Inc. v. United States*, 92 Fed. Cl. 520, 539 (2010) (citing FAR 15.305(a)(2)(ii)). For the reasons discussed below, the Navy applied such "considered discretion" in assigning Insight a Relevance rating of "Relevant." *Id.*; Tab 12.1 at AR 4374.

The Solicitation indicates that Relevance is evaluated based on "size" and "scope," with "similar size . . . valued at approximately $50M or greater per year, and similar scope . . . includ[ing] any award that is agency/component-wide, multi-agency, or department-wide." Tab 3.3 at AR 103. Significantly, Plaintiff's argument rests on "size" alone without taking into account the "scope" of those projects, as required by the Solicitation. *See* Pl.'s Mem. at 30-31; Tab 3.3 at AR 103. As Plaintiff argues that the agency acted contrary to the terms of the Solicitation, it needs to demonstrate that the Navy failed to adhere to the Relevancy definition by insufficiently rating a project with a similar "size" and "scope." *See Banknote Corp. of Am.*, 56 Fed. Cl. at 381 (analyzing solicitation requirements to determine whether the agency acted rationally); *see also* Pl.'s Mem at 30-31. Since Plaintiff does not argue that its projects were similar in "scope" to the BPA, its claim cannot establish that the Navy irrationally evaluated Relevance. *See* Pl.'s Mem. at 30-31. In fact,

as noted below, the "scope" of Insight's past projects was significantly narrower than the BPA, a fact that supports finding that the Navy acted rationally.  Plaintiff's failure to critique the Navy's "scope" evaluation renders the claim meritless.

Further, since the Solicitation does not define the various Relevance ratings and does not indicate whether projects of similar "size" and "scope" should be rated as "Somewhat Relevant," "Relevant," or "Very Relevant," the Navy had the discretion to determine how to rate offerors' past projects.  *See* Tab 3.3 at AR 103; *DynCorp Int'l LLC v. United States*, 139 Fed. Cl. 481, 489-90 (2018) (agreeing with GAO that agencies are entitled to "greater discretion" in evaluating relevancy when solicitation does not "expressly define" it).  While Insight's past projects were valued at $256 million and $227 million annually (*i.e.*, "size"), each serving one component of the U.S. Department of Defense (*i.e.*, "scope"), the BPA at issue here is valued at approximately $680 million annually (*i.e.*, "size"), potentially serving the entire U.S. Department of Defense (*i.e.*, "scope").  *Compare* Tab 5 at AR 807-10 (Insight's past project's pricing), *with* Tab 3.3 at AR 80 (BPA estimated pricing); *see also* Tab 3.1 at AR 10.  Given the significant gap between the respective "size" and "scope" of the BPA and Insight's past projects and affording the "greatest deference possible" to agencies conducting past performance evaluations, this Court holds the Navy acted rationally in assigning Insight a "Relevant" rating.  *See Active Network*, 130 Fed. Cl. at 432-33; *Westech Int'l*, 79 Fed. Cl. at 293.

    C.  <u>Plaintiff Was Not Prejudiced by Any Error in the Navy's Past Performance Evaluation</u>

Third, even assuming *arguendo* that the Navy committed errors in assigning its Confidence and Relevance ratings to Insight's past performance, such errors were non-prejudicial.  As Plaintiff must establish prejudice to succeed in its bid protest, this claim must also fail for lack of prejudice.  *Impresa*, 238 F.3d at 1333.  To establish prejudice, "a protestor must show that but for that error,

the protestor had a substantial chance of receiving a contract award." *Off. Design Grp. v. United States*, 951 F.3d 1366, 1373–74 (Fed. Cir. 2020).  Plaintiff has not demonstrated that it would have received the award "but for" either of the alleged errors in the Navy's past performance evaluation. The Navy clearly explained when it was making the procurement decision that price was more important than the past performance ratings.  Tab 3.3 at AR 102.  Accordingly, it awarded the BPA to Dell Marketing, even though Insight had "slightly better" past performance reviews, because Dell Marketing's proposal was approximately $87 million less than Insight's bid.  Tab 12.1 at AR 4360 ("[A]lthough Insight's past performance was slightly better than Dell's, it was not enough to overcome almost an $87M price difference.").  Significantly, the Navy noted that "at best" Insight's "slightly better" past performance review would "be worth a slightly higher price (no more than $5 million over the course of 5 years)," an amount insufficient to overcome the bidders' $87 million price variance.  *Id.*  As agencies have "broad discretion in making a price/technical tradeoff," this Court defers to the Navy's conclusion that Insight's "slightly better" past performance was worth "no more than $5 million over the course of 5 years."  *Bahrain Mar. & Mercantile Int'l BSC (C) v. United States*, 118 Fed. Cl. 462, 480 (2014); Tab 12.1 at AR 4360.  In fact, the Navy went beyond the FAR's requirements in conducting its tradeoff, as an "agency need neither assign an exact dollar value to the worth associated with the technical benefits of a contract nor otherwise quantify the non-cost factors."  *Serco Inc. v. United States*, 81 Fed. Cl. 463, 497 (2008) (citing FAR § 15.308).

Furthermore, Insight has not demonstrated that Dell Marketing's Relevance ratings would not similarly be affected in a positive manner if the Navy calculated its Relevance ratings in the manner Plaintiff suggests.  Applying Plaintiff's preferred rating method, Dell Marketing's Relevance rating may very well have also shifted from "Relevant" to "Very Relevant" given its

past performance references were respectively valued at over $350 million and over $200 million annually (*i.e.*, "size"), with the contracts respectively covering the entire U.S. Department of Defense and various components within the Department (*i.e.*, "scope"). Tab 4 at AR 145-46. Thus, it is likely that even under Plaintiff's desired calculation method, Insight and Dell Marketing would have received identical ratings. Accordingly, the Court holds that even if the Navy had erroneously conducted its past performance evaluation — which it did not — Plaintiff's claim would nevertheless fail for lack of prejudice. *Off. Design Grp.*, 951 F.3d at 1373–74.

IV.   <u>The Navy's Conduct Does Not Demonstrate Improper Favoritism Toward Dell Marketing</u>

Plaintiff next argues that the Navy conducted a flawed procurement process by displaying favoritism toward Dell Marketing in three respects: (1) improperly responding to Dell Marketing's question sent after the Solicitation's deadline, Pl.'s Mem. at 32-34; (2) engaging in disparate treatment by permitting Dell Marketing to correct a deficiency in its proposal after the Solicitation deadline while not engaging in similar discussions with Insight, *id.* at 34-36; and (3) improperly accepting Dell Marketing's late initial proposal. *Id.* at 36-37. These arguments lack merit.

As an initial matter, this Court finds Plaintiff's arguments remarkable given the Navy initially awarded this contract, worth more than $2.5 billion, to Insight. *See* Tab 10.1 (Notice of BPA Award to Insight, dated May 21, 2021). Further, there is no inkling of favoritism in the Administrative Record. Significantly, at issue here are the Navy's communications with Dell Marketing between March 26, 2021, and April 8, 2021, which occurred *before* the Navy originally awarded the procurement to Insight on May 21, 2021. *Id.* It was only after the Navy realized that Insight had failed to comply with the Solicitation by underbidding by tens of millions of dollars that the Navy undertook corrective action. *See* Tab 11.1 (E-mails regarding Suspension of Insight Award and Submission of Revised Price Lists, dated May 27-28, 2021) at AR 3523-26. Thus, this Court agrees with Defendant that had the Navy been truly biased against Insight, it likely would

not have initially awarded Insight the procurement, as the Navy did here.  *See* Def.'s Cross-MJAR at 49.

Turning to the specifics of Plaintiff's argument, Plaintiff contends that the Navy violated FAR 1.602-2(b)[21] and 3.101-1,[22] which require contracting officers to act impartially during the procurement process.  Pl.'s Mem. at 31-32.  In essence, Plaintiff makes an allegation of bad faith.  Defendants respond that Plaintiff's claim of bad faith is unsupported by the record.  *See* Def.'s Cross-MJAR at 38-39; Int.-Def.'s Mem. at 41-42.  This Court agrees with Defendants.  There is a "strong presumption in the law that administrative actions are correct and taken in good faith" and can be rebutted only with "almost irrefragable proof."  *Sanders v. United States Postal Serv.*, 801 F.2d 1328, 1331 (Fed Cir. 1986); *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (citation omitted).  Plaintiff fails to overcome that presumption.  The Court addresses Plaintiff's three specific contentions concerning purported favoritism in turn.

A.  The Navy Permissibly Responded to Dell Marketing's Inquiry After the Solicitation's Deadline for Question Submissions

First, it was proper for the Navy to respond to Dell Marketing's inquiry, submitted after the Solicitation's deadline for accepting questions.  While the Solicitation set a March 25, 2021 2:00 p.m. PDT deadline for bidders to "[s]end RFQ questions" to the Navy, Tab 3.1 at AR 33, Dell

[21] "Contracting officers shall [e]nsure that contractors receive impartial, fair, and equitable treatment."  FAR 1.602-2(b).

[22] "Government business shall be conducted in a manner above reproach and, except as authorized by statute or regulation, with complete impartiality and with preferential treatment for none.  Transactions relating to the expenditure of public funds require the highest degree of public trust and an impeccable standard of conduct.  The general rule is to avoid strictly any conflict of interest or even the appearance of a conflict of interest in Government-contractor relationships.  While many Federal laws and regulations place restrictions on the actions of Government personnel, their official conduct must, in addition, be such that they would have no reluctance to make a full public disclosure of their actions."  FAR 3.101-1.

Marketing sent an email to the Navy on March 26, 2021, a day after that deadline, requesting the Navy modify the Solicitation to permit Dell Marketing or Dell Federal to compete for the contract by permitting bids based on CTAs.[23]  Tab 3.6 at AR 131-33.  The Navy responded by amending the Solicitation enabling Dell Federal to compete based on its CTA with Dell Marketing and extending the quote submission deadline.  *See* Tab 3.6 at AR 137.

Plaintiff characterizes this email exchange between the Navy and Dell Marketing as a series of purportedly "secret communications" that were improper because (i) Dell Marketing's inquiry was sent outside the timeframe established by the Solicitation for accepting questions, (ii) Dell Marketing's question and the Navy's response were not disclosed to Insight, and (iii) Insight's "timely questions" were shared with all offerors while Dell Marketing's late question was "kept secret" allegedly prejudicing Insight's ability to fairly compete for the contract.  Pl.'s Mem. at 32-34.  This Court is unpersuaded by Plaintiff's arguments and finds the Navy's actions reasonable and permissible.

<u>First</u>, Plaintiff cites no authority to support its claim that an agency is barred from responding to correspondence after the expiry of a question submission deadline.[24]  Instead, Plaintiff cites cases and FAR provisions that generally reference the unremarkable principle that

---

[23] Plaintiff contends Dell Marketing likely sent this question after realizing Dell Federal was ineligible for the procurement because it lacked a GSA Schedule that covered the entirety of the BPA, as required by the Solicitation.  Pl.'s Mem. at 32; *see* Tab 3.3 at AR 102 (requiring GSA Schedule cover the duration of the BPA).  The sufficiency of Dell Marketing's GSA Schedule and CTA with Dell Federal is addressed in Discussion Sections I and II.  *See supra* pp. 36-51.

[24] While Defendant characterizes Dell Marketing's March 26, 2021 email to the Navy as a "request" to amend the Solicitation, rather than a "question" seeking clarifications of the terms of the Solicitation, this Court need not resolve that semantics issue as the Navy acted within its discretion in responding to the email even if construed as a question.  *See* Def.'s Cross-MJAR at 40-41 (arguing that the form and substance of the email reflect a "request" rather than a "question").

all bidders should be treated equally and fairly. *See generally* Pl.'s Mem. at 33-34. However, FAR 1.102-2(c)(3) provides that "prospective contractors shall be treated fairly and impartially but need not be treated the same." Thus, the Navy was free to treat Dell Marketing and Insight differently if both were treated fairly. Plaintiff fails to demonstrate that the Navy treated it unfairly. The Navy responded to Dell Marketing based on the particular issue it raised — namely, amending the Solicitation to permit Dell Federal to compete for the procurement via a CTA with Dell Marketing. *See* Tab 3.6 at AR 131-34. This was not an issue similarly raised by Insight as Insight did not require or seek a CTA to compete for the procurement. *See* Tab 11.6 (Insight Final Pricing, submitted May 30, 2021 (attachment to Tab 11.19 (E-mail transmitting Insight's Final Pricing, dated May 30, 2021))).

Further, the nature of Dell Marketing's question necessitated a response by the Navy. Dell Marketing requested the Navy "expand [its] competition base" to avoid "limit[ing] competition in an already limited field of Microsoft Licensing Solution Providers" by permitting Dell Federal to submit a bid under a CTA. Tab 3.6 at AR 132. Based on the nature of the request, the Navy could have rationally concluded that Dell was alleging that the Solicitation "unduly restrict[ed] competition." *Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1295 (Fed. Cir. 2020); *see also Veterans Healthcare*, 2014 WL 4384601, at *2 ("Where a protester challenges a solicitation provision as unduly restrictive of competition, the procuring agency must establish that the provision is reasonably necessary to meet the agency's needs."). As a claim of unduly restricting competition can be the basis for a bid protest, *see Oracle*, 975 F.3d at 1295, the Navy had an obligation under the FAR to "use [its] best efforts to resolve concerns raised by an interested party at the contracting officer level through open and frank discussions . . . [p]rior to submission of an agency protest." FAR 33.103(b). Similarly, the Navy's Solicitation amendment permitting bids

based on CTAs, Tab 3.3 at AR 101, was an "exercise [of its] sound business judgment" to ensure competition, which is expressly permitted under the FAR.  FAR 1.102(d).

Significantly, in assessing Plaintiff's claim of favoritism the "proper inquiry [for this Court] is not whether the FAR authorizes" a specific practice, "but whether there is any statutory or regulatory provision that precludes" the practice.  *Tyler Const. Grp. v. United States*, 570 F.3d 1329, 1333 (Fed. Cir. 2009).   While Plaintiff characterizes the Navy's response to Dell Marketing's late question as "improper," it cites no statutory or regulatory provision precluding the Navy from doing so, and this Court is unaware of any such provision.  Pl.'s Mem. at 33; *see also Savantage Fin. Servs., Inc. v. United States*, 158 Fed. Cl. 240, 249 (2022) (holding, in context of "late is late" rule analysis, agency acted within its discretion in accepting two bidders' final proposals submitted past the deadline where those proposals had "no effect on price, quantity, quality, or delivery" from initial timely submissions).  Further, the Solicitation did not limit the Navy's response.  While the Solicitation set a March 25, 2021 deadline for potential bidders to "[s]end RFQ questions" to the Navy, it did not restrict the Navy from responding to late submissions.  Tab 3.1 at AR 33; Tab 3.3 at AR 103.  Thus, the Navy did not "act contrary to the Solicitation" by exercising its discretion in choosing to respond to Dell Marketing's question sent after the March 25, 2021 deadline.  *Linc Gov't Servs., LLC v. United States*, 108 Fed. Cl. 473, 490 (2012) (finding agency did not act "contrary to the [s]olicitation" in accepting proposal that "did not conform to the price realism range" given the solicitation's permissive language provided agency discretion whether to accept or reject nonconforming bid).

Second, the Navy was not required to disclose to Insight Dell Marketing's March 26, 2021 email or the Navy's response as there is no authority requiring an agency to reveal communications concerning one bidder's submission with other bidders where the communications do not create

an unfair advantage.  While Plaintiff cites *Serco Inc. v. United States*, 81 Fed. Cl. 463, 482 (2008) to argue to the contrary, *Serco* is inapposite.  Pl.'s Mem. at 33.  The portion of *Serco* Plaintiff cites references an agency's obligation to analyze contractors' past performance "evenhandedly against common requirements and evaluation criteria."  *Serco*, 81 Fed. Cl. at 482 (citation omitted).  *Serco* does not discuss an agency's purported obligation to reveal a bidder's agency correspondence to other bidders, and thus is inapplicable here.  In fact, FAR 1.102-2(c)(3) illustrates the opposite as it does not require an agency to treat all offerors "the same," and the Solicitation does not contain a clause requiring such blanket disclosure.  FAR 1.102-2(c)(3); Tab 3.1; Tab 3.2 (Amendment 1 to RFQ, dated March 24, 2021); Tabs 3.3-3.4.  Thus, the Navy had discretion to choose which questions and answers to disclose to all offerors based on content.

Contrary to Plaintiff's contention that the Navy shared Insight's questions and answers while keeping its correspondence with Dell Marketing "secret," Pl.'s Mem. at 33, the Administrative Record demonstrates that the Navy complied with FAR 1.102-2(c)(3), "treat[ing] [both offerors] fairly and impartially," by disclosing questions and answers from both Insight and Dell Marketing that sought clarification about the terms of the Solicitation.  Tab 3.5 (Insight and Dell Questions on RFQ, dated March 19-30, 2021) at AR 125-29; Tab 42 (Insight Comments on Agency Report, dated July 16, 2021) at AR 4806-07.  The Navy was simply obligated to disclose to all bidders any changes it made to the Solicitation based on correspondence with Dell Marketing; the Navy did so on March 31, 2021.  *See* Tab 3.3; FAR 15.206(b) ("Amendments issued before the established time and date for receipt of proposals shall be issued to all parties receiving the solicitation.").

Third, even if Plaintiff had established that the Navy improperly exhibited favoritism for Dell Marketing via its response to Dell Marketing's March 26, 2021 email — which, it has not —

its claim would still fail for lack of prejudice.  To establish prejudice, a plaintiff must prove that there is a "substantial chance" it would receive the award in the absence of the allegedly unequal treatment.  *WellPoint Mil. Care Corp. v. United States*, 953 F.3d 1373, 1380 (Fed. Cir. 2020).  Plaintiff's contention that it is prejudiced because "Dell Marketing was allowed to compete for the BPA despite the fact that it should have been ineligible" lacks merit.  Pl.'s Reply at 25.  First, Plaintiff provides no rationale for why Dell Marketing would become ineligible for the award based solely on the *Navy's* decision, made reasonably in its discretion, to respond to Dell Marketing's late question.  Second, Plaintiff fails to demonstrate that Insight would have had a "substantial chance" of receiving the award if, as Insight contends, the Navy (i) was somehow legally restricted from responding to Dell Marketing's late question, or (ii) was obligated to inform Insight of Dell Marketing's CTA correspondence with the Navy.  Indeed, any hypothetical result in either scenario would be, at best, highly speculative, and would likely not have resulted in an award to Insight or other corrective action.  Accordingly, even assuming Insight's legal position here has merit, at best the result would simply have placed Plaintiff in the same position it finds itself in here; again, with a second opportunity to bid for the contract after the Navy realized Insight underpriced its original bid.  *See* Tab 11.1 at AR 3523-26.  Plaintiff is not able to demonstrate prejudice stemming from these allegations.

   B.   The Navy Properly Communicated with Dell Marketing About a Deficiency in its
        Proposal

   Second, Plaintiff contends that the Navy acted improperly by asking Dell Marketing in an April 7, 2021 email to correct a deficiency in its proposal by adding the details of the CTA to its proposal, while not requesting Insight to do the same.  Pl.'s Mem. at 34-36.  Plaintiff characterizes the Navy's April 7 email and Dell Marketing's response later that day, Tab 6.1 at AR 3285-86, as "discussions" under FAR 15.306 and contends that the Navy engaged in "disparate treatment" in

violation of that provision by communicating with one bidder and not the other.  Pl.'s Mem. at 35.

This argument lacks merit.

While FAR 15.306(d)(1) requires contracting officers to engage in "discussions" with

"each offeror within the competitive range," that provision is not applicable to this Federal Supply

Schedule procurement conducted under FAR subpart 8.4.  *See* FAR 8.404(a) ("Parts 13 . . ., 14,

15, and 19 . . . do not apply to BPAs or orders placed against Federal Supply Schedules

contracts."); *see also* Tab 3.3 at AR 101.  Thus, the Navy was not required to comply with FAR

15.306 , as Insight contends.

Assuming *arguendo* that FAR 15.306 applied to this procurement, the communication

between the Navy and Dell Marketing concerning its submission of the details of its CTA would

nevertheless still be proper because (i) Dell Marketing's omission of a CTA in its initial proposal

was not a significant deficiency – triggering a "discussion" about the solicitation under the FAR –

since the RFQ did not require a CTA, and (ii) even if properly characterized as a "discussion," it

was "tailored to [the] offeror's proposal" consistent with FAR 15.306(d)(1).

FAR 15.306 distinguishes between "discussions" that "are tailored to each offeror's

proposal, and must be conducted by the contracting officer with each offeror within the

competitive range," FAR 15.306(d)(1), and "clarifications" that "are limited exchanges, between

the Government and offerors, that may occur when award without discussions is contemplated."

FAR 15.306(a).  While the "acid test for deciding whether discussions have been held is whether

it can be said that an offeror was provided the opportunity to revise or modify its proposal," the

Federal Circuit has also recognized that "[t]here is no requirement in the regulation that a

clarification not be essential for evaluation of the proposal."  *Davis Boat Works, Inc. v. United

States*, 111 Fed. Cl. 342, 353–54 (2013) (cleaned up); *Info. Tech. & Applications Corp. v. United*

*States*, 316 F.3d 1312, 1323 (Fed. Cir. 2003).   Importantly, the agency's characterization of its communications with a bidder, as "discussions" or "clarifications," is entitled to deference.   *Info. Tech. & Applications Corp.*, 316 F.3d at 1323 (deferring to agency's interpretation of its own regulation).

The Navy's communications with Dell Marketing, requesting that the latter submit "details of the teaming arrangement," are properly construed as "clarifications," rather than "discussions." *See* Tab 6.1 at AR 3279-85.   As the Solicitation did not require CTAs, and thus would not have listed CTAs under "required documents," Dell Marketing's failure to submit the details of its CTA with its initial bid would not have rendered that submission deficient.   Tab 3.3 at AR 101-04. Significantly, Dell Marketing informed the Navy that it would be relying on a CTA in its initial proposal.   Tab 4 at AR 140 ("In order to fulfil [sic] any security requirements, DMLP has entered into a GSA teaming agreement with Dell Federal Systems L.P. (DFSLP) using DFSLPs GSA Schedule number is GS-35F-0884P.").   In fact, the Navy noted in its April 7, 2021 email to Dell Marketing that "Dell Marketing identified a teaming arrangement with Dell Federal L.P." in its initial proposal, and that the Navy was now requesting the "details of [that] teaming arrangement." Tab 6.1 at AR 3279.   This request for additional, descriptive information can reasonably be described as seeking a "clarification."

Relatedly, the communications do not qualify as "discussions" because the Navy's request for Dell Marketing to supplement its initial proposal with the CTA details did not allow Dell Marketing to "revise or modify its proposal." *Davis Boat Works*, 111 Fed. Cl. at 353-54.   In response to the Navy's email, Dell Marketing could not change its pricing, submit new past performance reviews, or change other parts of its submission.   Rather, the Navy requested

additional information only about a CTA of which Dell Marketing had already informed the Navy in its initial proposal.  *See* Tab 4 at AR 140.

Plaintiff relies on a GAO decision in *Defense Base Services, Inc*., to argue that "if an offeror [chooses] to team with another entity, information explaining the CTA [is] needed" when submitting its bid.  Pl.'s Reply at 26 (citing *Defense Base Services,* 2017 WL 3263329); *see also* Pl.'s Mem. at 34.  Plaintiff's reliance on *Defense Base Services* is misplaced.  Unlike in *Defense Base Services*, where the GAO held that missing information about a teaming agreement required by the solicitation is a significant deficiency that amounts to a "discussion," here, as previously mentioned, the Solicitation did not require the submission of a CTA.  *Defense Base Services*, 2017 WL 3263329, at *3 n.3; Tab 3.3 at AR 101.  Further, even if *Defense Base Services* applied to circumstances where a CTA was not required by the solicitation, this Court would still defer to the Navy's rational characterization of its communication with Dell Marketing as seeking a "clarification."  *Info. Tech. & Applications Corp.*, 316 F.3d at 1323.

Even assuming *arguendo* that these communications between the Navy and Dell Marketing amounted to "discussions," the Navy nevertheless complied with FAR 15.306(d)(1) by ensuring its "discussions" were "tailored to [the] offeror's proposal."   FAR 15.306(d)(1).  While Dell Marketing indicated in its initial proposal that it would rely on a CTA, Insight did not.  *See* Tab 4 at AR 140; *see generally* Tab 5.  Thus, the Navy rationally followed up *only* with Dell Marketing about information underlying the CTA because *only* Dell Marketing indicated that it would be using a CTA.  The Navy would have no reason to follow up with Insight about a CTA when Insight had not indicated in its initial proposal that it would be using one.  *Id.*

Finally, even if FAR 15.306 applied to this procurement — which it does not — and even if the April 7, 2021 communications between the Navy and Dell Marketing about a CTA violated

FAR 15.306 — which they do not — Insight was not prejudiced because its proposal did not contain errors that it could remedy had the Navy provided that opportunity. *See WellPoint Mil. Care Corp.*, 953 F.3d at 1380. Dell Marketing's proposal relied on a CTA; Insight's did not. Thus, Plaintiff cannot meet its burden of demonstrating that it would have had a "substantial chance" of receiving the award "in the absence of the allegedly unequal treatment" as the Navy had nothing to communicate with Insight regarding a CTA. *Id.*

C. The Navy Properly Accepted Dell Marketing's Initial Proposal

Third, the Navy did not err in accepting Dell Marketing's initial proposal. Plaintiff contends that Dell Marketing "should not have been eligible for [the] award because its [initial] proposal did not comply with the RFQ requirements within the time frame required by the RFQ." Pl.'s Mem. at 36. Plaintiff's contention is misplaced.

At the outset, Plaintiff's claim lacks merit because Dell Marketing's April 2021 submission involved an initial proposal deadline, not a final proposal deadline. In fact, Dell Marketing and Insight were each provided an opportunity to revise their proposals prior to May 6, 2021, after the early April 2021 initial submission at issue here. *See* Tab 7.1 (Additional E-mails between the Navy and Dell regarding Dell's Quote, dated May 4-6, 2021) at AR 3340; Tab 7.2 (Additional E-mails between the Navy and Insight regarding Insight's Quote, dated May 4-6, 2021) at AR 3357. The timing of Dell Marketing's initial proposal submission is immaterial as an "evaluation of [a bidder's] initial proposal is irrelevant" after final proposals have been submitted. *Computer Scis. Corp. v. United States*, 51 Fed. Cl. 297, 308 (2002).

However, even if deemed material, Dell Marketing's initial submission was timely. Defendants' description of the Navy's communications with Dell Marketing as follow-up conversations to Dell Marketing's initial proposal submission is consistent with the Administrative

70

Record.  *See* Def.'s Cross-MJAR at 47; Int.-Def.'s Mem. at 48-49.  Insight and Dell Marketing

timely submitted their initial quotes by the Solicitation's April 6, 2021 deadline.  *See* Tab 5 at AR

802; Tab 4 at AR 139.  After reviewing both bidders' initial quotes, the Navy indicated by email

that it sought additional clarifying information from Insight and Dell Marking by close of business

on April 7, 2021; Dell Marketing timely responded to that request later that same day at 1:09 p.m.

*See* Tab 6.2 (E-mails between the Navy and Insight regarding Insight's Quote, dated April 7, 2021)

at AR 3328-338 (Insight); Tab 6.1 at AR 3285-87 (Dell).  In response to the Navy's request, Dell

Marketing indicated that it did "not anticipate that cloud computing services will be used in the

performance of any contract or subcontract resulting from this solicitation."  Tab 6.1 at AR 3306.

The Navy called Dell Marketing the next day on April 8, 2021, "to clarify given that some of the

products expected to be sold under the BPA were cloud computing services."  Tab 44 (Navy

Response to Insight Supplemental Protest and Comments, dated July 20, 2021) at AR 4933.  Based

on that clarification, Dell Marketing submitted its revised representations to the Navy, including

concerning cloud computing services, later, on April 8, 2021.  *See* Tab 6.1 at AR 3307.

Plaintiff argues that given Dell Marketing's April 7, 2021 response indicated that it would

not be providing cloud services "despite . . . that multiple CLINs for the procurement require the

provision of Microsoft cloud services," that submission was defective and had to be remedied prior

to the Navy's April 7, 2021 close of business deadline.  Pl.'s Mem. at 36 (citing Tab 6.1 at AR

3306).  Since Dell Marketing only submitted its revised proposal to include cloud computing

services on April 8, 2021, Plaintiff argues that Dell Marketing's proposal was late and should have

been deemed ineligible under the "late is late" principle, which prohibits an agency from accepting

late proposals, including revisions.  *Id.* (citing *Labatt Food Serv., Inc. v. United States*, 577 F.3d

1375, 1381 (Fed. Cir. 2009) ("To avoid this potential for abuse, submission deadlines are strictly

enforced across the board. . . . A late proposal is tantamount to no proposal at all.")).  Plaintiff's position obfuscates the nature of the Navy's communications with Dell Marketing about its initial proposal and misapplies the "late is late" rule.

First, Dell Marketing submitted its initial proposal with the Navy's requested additions by the April 7, 2021 close of business deadline.  *See* Tab 6.1 at AR 3285-86.  Any clarification thereafter was permissible given an agency's ability to communicate with a particular bidder about its proposal.  *Logistics Health, Inc.*, B-416145.7, 2021 CPD ¶ 184, 2021 WL 2315462, at *5 (Comp. Gen. Mar. 2, 2021) ("[T]here is nothing inherently improper in an agency conducting additional discussions relating to previously discussed issues with only one or a limited number of offerors where the agency has remaining concerns relating to those issues.").  Further, Plaintiff cites no authority that would require a bidder to perfectly respond to requests for additional information from an agency without the need for further clarification and supplementation.  *See generally* Pl.'s Mem.  Indeed, agencies frequently follow up with offerors post-bid submission to ensure the bidder can satisfy the procurement's requirements.  *See, e.g.*, *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1323 (Fed. Cir. 2003) (finding proper communications between agency and bidder after bid submitted about subcontractors that would be performing work under its proposal).

The April 8, 2021 communication between the Navy and Dell Marketing also comports with FAR 15.306(d)'s requirement that "[d]iscussions are tailored to each offeror's proposal."  After realizing that Dell Marketing was mistaken about the Solicitation's cloud computing services requirement, the Navy followed up with Dell Marketing to rectify its misunderstanding.  *See* Tab 44 at AR 4933.  Such clarification is not prohibited by the FAR.  Significantly, Insight, just like Dell Marketing, was also initially confused about whether cloud computing services were required

under the Solicitation until it received clarification from the Navy. *Id.* at AR 4933 n.8. Under Plaintiff's turned-upside-down logic, Dell Marketing should have been excluded from consideration because Insight was able to receive clarification about cloud computing services prior to the initial submission deadline, while Dell Marketing was not. This is nonsensical and would have provided Insight an unfair advantage over Dell Marketing — the exact type of favoritism about which Plaintiff now complains. Instead, the Navy's decision to provide Dell Marketing with the same clarification it provided Insight, the day after Dell Marketing timely submitted its initial proposal on April 7, 2021, demonstrates that the Navy treated both bidders "fairly and impartially" as required by the FAR. FAR 1.102-2(c)(3).

Second, the "late is late" principle is inapplicable here. Defendant cites the GAO's opinion in *Asset Protection & Security Services* to argue that the "late is late" rule is inapplicable to this procurement. Def.'s Cross-MJAR at 48. Although not binding, *Asset Protection* is instructive as it also involved an RFQ for an FSS BPA. *See generally Asset Protection & Security Services*, B-406474.2, 2012 CPD ¶ 210, 2012 WL 2914677 (Comp. Gen. July 17, 2012). While the GAO held that in RFQ contracts "[g]enerally, late quotations may be considered up to the time of issuance of the order," it also noted that the "RFQ may contain a late quotations clause to expressly limit the agency's consideration of late quotations." *Asset Protection*, 2012 WL 2914677, at *1 n.1. Applying that reasoning here, the Navy could have accepted a late quotation unless the Solicitation expressly limited the timeframe for accepting bids — which it did not.

While Plaintiff further relies on *Criterion Systems, Inc. v. United States*, 144 Fed Cl. 409 (2019) to argue that the "late is late" rule applies to FAR Part 8 procurements such as this one, Plaintiff omits *Criterion Systems*' limiting principle that the "express RFQ terms" govern whether an agency can accept a late submission. *Criterion Sys.*, 144 Fed. Cl. at 415; *see also* Pl.'s Mem.

at 37.  Unlike in *Criterion Systems*, which involved an FSS solicitation with a provision that stated,

**"LATE QUOTES WILL NOT BE ACCEPTED**," 144 Fed. Cl. at 412 (emphasis and

capitalization in original), here no such "late is late" clause was incorporated in the Solicitation.

*See* Tab 3.1 at AR 6.  Thus, Plaintiff's reference to the April 7, 2021 close of business deadline in

the Navy's email is immaterial as that date was not contained in the Solicitation.  Pl.'s Mem. at

36.  Accordingly, the "late is late" principle is inapplicable to these initial submissions.[25]

For the reasons stated above, the Court finds that Plaintiff's favoritism argument fails.

V.    <u>Procurement Integrity Act Violation Allegations</u>

In its penultimate protest ground, Plaintiff contends that a Procurement Integrity Act (PIA)

violation tainted the award to Dell Marketing.  Insight asserts two PIA violation allegations: (1)

the Navy inadequately investigated an alleged pre-May 27, 2021 PIA violation, and (2) the Navy's

investigation improperly ignored a purported post-May 27, 2021 PIA violation.  *See* Compl. ¶ 8;

Pl.'s Mem. at 37-45; Pl.'s SMJAR Mem. at 27; Pl.'s Second SMJAR at 2-6.  The Court is

unpersuaded by Insight's arguments.

The PIA mandates that a federal government official "shall not knowingly disclose

contractor bid or proposal information or source selection information before the award of a

Federal agency procurement contract to which the information relates," and contractors "shall not

knowingly obtain contractor bid or proposal information or source selection information before

the award of a Federal agency procurement contract to which the information relates."  41 U.S.C.

---

[25] Plaintiff's additional argument that FAR 8.405-3(b)(1)(ii)(C) precludes the Navy from accepting Dell Marketing's "late" initial proposal is similarly unavailing.  Pl.'s Mem. at 37.  FAR 8.405-3(b)(1)(ii)(C) requires contracting officers "ensure [that] all quotes received are fairly considered and award is made in accordance with the basis for selection in the RFQ."  Given the April 7, 2021 deadline was contained in an email, and not in the Solicitation, the Navy did not act contrary to the Solicitation in providing Dell Marketing with the same clarification about cloud computing services that it had provided to Insight.  *See* Tab 6.1 at AR 3285-87.

§ 2102(a)(1), (b).  Contracting officers notified of a potential PIA violation "must determine if the reported violation or possible violation has any impact on the pending award or selection of the contractor."  FAR 3.104-7(a).  However, contracting officers need only consider PIA violation allegations brought to their attention within fourteen days of when the protestor first discovered the possible violation.  *See* 41 U.S.C. § 2106.  When reviewing a contracting officer's conclusions as to whether an alleged PIA violation impacted an award, "the Court must analyze whether the Agency conducted an adequate investigation consistent with the arbitrary and capricious standard of review."  *Oak Grove Techs., LLC v. United States*, 155 Fed. Cl. 84, 115 (2021) (citing *PAI Corp. v. United States*, 614 F.3d 1347, 1352–53 (Fed. Cir. 2010)).

As detailed below, the Navy adequately investigated Insight's allegation of a pre-May 27, 2021 PIA violation and rationally concluded that no violation affected the Navy's decision to award the BPA to Dell Marketing.  Furthermore, Insight failed to timely notify the Navy of a potential post-May 27, 2021 PIA violation.  Thus, the Navy was not obligated to investigate that allegation.  Finally, even if Insight were correct on the merits of its PIA allegations — which it is not — its claims would still fail because it cannot demonstrate prejudice stemming from either alleged violation.

A.  The Navy Reasonably Investigated the Alleged Pre-May 27, 2021 PIA Violations

Plaintiff "broadly alleged that at some time before Dell Marketing's May 27, 2021 email to the Navy, Dell Marketing received 'inside information about Insight's proposal.'"  Remand Order at 21 (quoting Tab 38 at AR 4730).  This Court previously found Plaintiff's allegation sufficiently credible to warrant additional investigation.  *See id.* at 27-28.  On December 9, 2021, the Court "remand[ed] this action to the Navy to investigate Plaintiff's first allegation of a PIA violation; namely, that the information in Dell Marketing's May 27, 2021 email to the Navy concerning certain allegedly mispriced CLINs in Insight's bid potentially indicates a PIA violation

occurred." *Id.* at 27.   After the Navy interviewed Dell and Navy personnel and reviewed

contemporaneous Dell communications, it concluded that no PIA violation had occurred.  *See*

Supplemental PIA Report.  Insight filed a supplemental MJAR challenging that conclusion, and,

after review, this Court held the Navy failed to carry its investigation up until May 27, 2021,

consistent with this Court's December 9, 2021 Order.  Second Remand Order at 2.  On April 25,

2022, this Court again remanded this action to the Navy to complete its investigation consistent

with this Court's Remand Order.  *Id.*

In response to this Court's Second Remand Order, the Navy produced a three-page

Supplemental PIA Report to its original, ten-page PIA Report.  *See* Tab 81 (PIA No Impact

Determination, dated January 21, 2022); Supplemental PIA Report.   The Navy ultimately

concluded — based on, *inter alia*, interviews with three Dell Marketing representatives,

declarations from six Dell Marketing representatives, declarations from nine Navy personnel, and

Dell emails leading up to May 27, 2021 — "that no one from Dell obtained or was provided

Insight's CLIN-level pricing information before Dell sent its 27 May 2021 e-mail to the Navy."

Supplemental PIA Report at 3; *see also* Tab 81 at 7394-99.  Accordingly, the Navy concluded that

"Insight's alleged PIA violation did not impact the award of the BPA to Dell Marketing."

Supplemental PIA Report at 3.

Insight contends that the Navy's "no impact" determination is inadequate, and requests this

Court cancel the BPA award to Dell Marketing and require the Navy to re-open competition.  Pl.'s

Second SMJAR at 3, 5.  Plaintiff faults the Navy's investigative process for (i) using the personnel

who conducted the procurement competition to investigate the alleged PIA violation, and (ii)

allegedly failing to question every individual with access to a Navy SharePoint website to ensure

that no one had disclosed Insight's pricing to Dell Marketing.  *See* Pl.'s SMJAR Mem. at 33-35;

Pl.'s Second SMJAR at 3.  Insight further disagrees with the Navy's investigative conclusions and argues that the contracting officer conducting the investigation "had no basis to make [the "no impact"] determination."  Pl.'s SMJAR Mem. at 32.  This Court disagrees with each of Insight's contentions; the Navy conducted its investigation within the bounds of its discretion and rationally concluded that no PIA violation had occurred.

### B.  The Navy Conducted the Investigation Within the Bounds of Its Discretion

Plaintiff's disagreements generally center on how the Navy designed and carried out its investigation.  Plaintiff argues that the Navy "took no steps to maintain any 'independence' for its PIA investigation" because it used the "the exact same contracting personnel who conducted the procurement competition . . . [to] conduct the investigation."  Pl.'s SMJAR Mem. at 33-35.  It further argues that the Navy should have more thoroughly investigated whether any contractors or government personnel with access to Insight's pricing on the SharePoint website between May 21 and May 27, 2021, disclosed that pricing to Dell Marketing.  *See* Pl.'s SMJAR Mem. at 22-27; Pl.'s Second SMJAR at 2-5.  This Court again disagrees.  As noted below, both choices were discretionary, and the Navy has "provided a coherent and reasonable explanation of its exercise of discretion."  *Dell Fed. Sys.*, 906 F.3d at 992 (citation omitted).

### i.  The Navy Reasonably Staffed the PIA Investigation

Insight contends that it was improper for Alexander Roberts, the contracting officer who handled the procurement's day-to-day operation, and Navy counsel involved in the procurement, Ana Smith and Tracey Ferguson, to oversee and participate in the PIA investigation.  *See* Pl.'s SMJAR Mem. at 34.  Plaintiff, however, does not cite any authority that would prevent the Navy from staffing its PIA investigation as it did.  Nor has Plaintiff overcome the presumption that these government agents carried out their investigative duties in good faith.

While Insight laments that "the Navy here took no steps to maintain any 'independence' for its PIA investigation," applicable law did not prohibit the Navy from tasking Alexander Roberts with performing the PIA investigation and tasking Ana Smith and Tracey Ferguson with overseeing the investigation.   Pl.'s SMJAR Mem. at 33-34.   The FAR requires only that a "contracting officer who receives or obtains information of a violation or possible violation of [the PIA] . . . determine if the reported violation or possible violation has any impact on the pending award or selection of the contractor."   FAR 3.104-7(a).   The Navy's reliance on Mr. Roberts, a contracting officer, to investigate the alleged PIA violation does not conflict with that requirement. Indeed, the Court of Federal Claims has found no issue with contracting officers investigating other alleged FAR violations in the procurements they previously handled.   *See, e.g.*, *Oracle Am., Inc. v. United States*, 144 Fed. Cl. 88 (2019) (approving a contracting officer's investigation into individual and organization conflicts of interest in the same procurement in which the contracting officer made awards), *aff'd*, 975 F.3d 1279 (Fed. Cir. 2020).   That the FAR does not affirmatively state that the "contracting officer" investigating the alleged PIA violation can be a contracting officer involved in the procurement is of no moment.

The proper question when evaluating practices under the FAR is "whether there is any statutory or regulatory provision that *precludes*" the practice.   *Tyler Const. Grp. v. United States*, 570 F.3d 1329, 1333 (Fed. Cir. 2009) (emphasis added).   Plaintiff has not identified, and this Court is unaware of, any regulation that would prohibit Alexander Roberts, Ana Smith, and Tracey Ferguson from participating in the PIA investigation.   Instead, Plaintiff relies on the GAO's Government Auditing Standards to support its argument that a conflict of interest should have disqualified Mr. Roberts from participating in the investigation.   Pl.'s SMJAR Mem. at 33 (citing GAO-21-368G, Government Auditing Standards, https://www.gao.gov/assets/gao-21-368g.pdf

(Apr. 2021) (GAO Yellowbook)).  However, those standards are applicable to "auditors and audit organizations that audit government entities" in "financial audits," "attestation-level examination," and "performance audits," but do not reference PIA investigations.  GAO Yellowbook at 6-7.  The Navy is not an audit organization, and the PIA investigation required under the FAR and ordered by this Court concerns potential investigatory and confidentiality breaches, not financial or performance accounting issues.  *See* FAR 3.104-7 (requiring agencies to investigate potential disclosures of contractor bid or proposal information).  While some laws and regulations require applying these standards to government audits,[26] the PIA does not.

Even if this Court were to agree that the law — apart from the inapplicable GAO standards offered by Insight — implicitly required the Navy to avoid such purported conflicts of interest, Plaintiff's arguments concerning lack of independence among the selected Navy personnel ignores "the principle that government officials are presumed to discharge their duties in good faith." *Rd. & Highway Builders, LLC v. United States*, 702 F.3d 1365, 1368 (Fed. Cir. 2012).  This Court presumes that Mr. Roberts would have disclosed any malfeasance uncovered by his investigation. *See id.*  The Administrative Record lacks any evidence that would overcome a presumption of good faith here where Mr. Roberts did not provide the final word on the Navy's investigative conclusions.  *See* Tab 81 at AR 7401.  Instead, Spencer Sessions, the Navy contracting officer for this procurement, ultimately made the "no impact" determination.  *Id.*  Sharon Pritchard, the Office for Naval Information Warfare Center Pacific's Chief of Contracting, also reviewed the evidence

---

[26] The GAO explains that various "laws, regulations, or authoritative sources may require the use of [generally accepted government auditing standards]."  GAO Yellowbook at 5.  For example, federal inspectors general appointed under the Inspector General Act of 1978, as amended (5 U.S.C. App.), must use the generally accepted government auditing standards outlined in the Yellowbook "for audits of federal establishments, organizations, programs, activities, and functions." *Id.*

— including evidence collected by Mr. Roberts and collected from Dell — and independently approved the "no impact" determination. *Id*.

While Insight may speculate that Mr. Sessions and Ms. Pritchard are complicit in a scheme against Insight, this Court must also presume that Mr. Sessions and Ms. Pritchard "discharge[d] their duties in good faith." *Rd. & Highway Builders*, 702 F.3d at 1368. The Administrative Record again lacks any evidence to overcome this presumption. As Plaintiff has not presented the "irrefragable proof" necessary to overcome the presumption that the Navy personnel carried out their investigation in good faith, it may not sustain a protest based on how the Navy staffed its PIA investigation. *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1288 (Fed. Cir. 2010) (quoting *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 795 (Fed. Cir. 1993)).

> ii.  The Navy Reasonably Opted Not to Investigate Every Person Who Had Access to the SharePoint Website

According to Plaintiff, despite that none of the 3,500-4,300 individuals with access to the SharePoint website were Dell employees, the Navy "failed to investigate whether any of these thousands of government personnel or hundreds of contractor personnel disclosed Insight's pricing to Dell Marketing or its affiliates, or to other entities or individuals who may have disclosed Insight's pricing to Dell." Pl.'s SMJAR Mem. at 20. Plaintiff faults the Navy for relying on "hand-selected information presented by Dell Marketing" to conclude that no one with access to the SharePoint website disclosed Insight's pricing to Dell Marketing. Pl.'s Second SMJAR at 4. It further faults the Navy for limiting its investigation to two Navy contracting personnel while ignoring the numerous SharePoint website users. *Id*. at 5 (citing Supplemental PIA Report at 2). Insight suggests that the Navy needed to survey all individuals with access to the SharePoint website or review whether contractors with access to the SharePoint website had any relationship with Dell Marketing. Pl.'s Second SMJAR at 3-4. As further explained below, this Court

disagrees with Plaintiff's assessment; the Court did not order a no-stone-left-unturned investigation, and the Navy reasonably chose not to perform the investigation urged by Plaintiff given other evidence it reviewed during its PIA violation investigation.

In its December 9, 2021 and April 25, 2022 Remand Orders, this Court ordered the Navy "to investigate Plaintiff's first PIA-violation allegation; namely, that the information in Dell Marketing's May 27, 2021 email to the Navy concerning certain allegedly mispriced CLINs in Insight's bid potentially indicates a PIA violation occurred." Remand Order at 27; Second Remand Order at 2. The Court did not direct any specific format for the Navy's investigation. *See* Remand Order at 27-28; Second Remand Order at 4-6. Instead, the Court sought to ensure that the Navy's investigation accounted for the breadth of Plaintiff's allegation that a PIA investigation could have occurred at any time leading up to Dell Marketing's May 27, 2021 email. Second Remand Order at 2. Based on the record before it, this Court holds that the Navy complied with the Court's Order. The Dell declarations stating that "no one from Dell received any information about Insight's CLIN pricing on this opportunity," necessarily encompass the review period ordered by the Court. Tab 81 at AR 7395. The Navy's interviews with Dell representatives explored Dell's conduct up until Dell's May 27, 2021 email to the Navy. *See* Tab 81 at AR 7394-97; Tab 74 (Memoranda to File regarding Interviews with Dell Employees, dated December 21, 2021 and January 5, 2022). While the declarations from Navy personnel were initially limited to events leading up to May 21, 2021, the supplemental declarations collected from the same Navy personnel attested to what occurred between May 21, 2021, and May 27, 2021. *See* Tab 80 (Dell Declarations (with cover e-mails), dated January 18-20, 2022) at AR 7382-84, 7386, 7389, 7391; Additional Documents Filed with Supplemental PIA Report. The Navy did exactly what this Court ordered: it conducted a PIA

investigation that "*fully* cover[ed] the period through May 27, 2021." Second Remand Order (emphasis in original).

The Navy's decision to forgo interviewing every individual with access to the SharePoint website does not undermine this conclusion, as the Navy "provided a coherent and reasonable explanation of its exercise of discretion." *Dell Fed. Sys.*, 906 F.3d at 992 (citation omitted); *see* Tab 81 at AR 7399 n.1. Mr. Roberts explained that it would be "impractical to ask the entire group to verify whether they had disclosed Insight's price to anyone given that it was posted after [the initial] award." Tab 81 at AR 7399 n.1. He went on to explain that even if the Navy had invested the time and money necessary to "obtain verification from more than 3,500 people that they did not disclose Insight's pricing information to Dell," it would still be "unnecessary because the Dell employees involved made it clear in their declarations that they did not have Insight's CLIN price information when they asked about the promotional CLINs on 27 May 2021." *Id.*

This is a reasonable conclusion given the Navy's obligations under the PIA are to ensure that PIA violations, if any, do not impact an award decision. FAR 3.104-7(a). There is simply no evidence in the Administrative Record or in Insight's briefing reflecting that *anyone* provided Insight's CLIN-level pricing to Dell. Given this lack of evidence, the Navy could not have concluded that the award to Dell Marketing was impacted by any hypothetical disclosure owing to third parties having access to the SharePoint website.

Could the Navy have designed a more expansive investigation? Certainly. Would this Court have conducted the investigation in the same manner as the Navy? Maybe not. Yet, these are not the questions that this Court must answer while weighing Plaintiff's protest. The Navy's responsibility was to reasonably investigate the alleged PIA violation and draw rational conclusion from its findings. *Dell Fed. Sys.*, 906 F.3d at 992. Based on the record before it, the Court is

satisfied that the Navy fulfilled those obligations regarding the alleged pre-May 27, 2021 PIA violation.

C.  The Navy Rationally Concluded that a PIA Violation Did Not Taint the Award to Dell Marketing

According to Plaintiff, "the determination by the Navy that the 'alleged PIA violation did not impact the award of the BPA to Dell Marketing,' AR 7401, is unsupported by the record and [is] arbitrary and capricious."  Plaintiff's Reply in Support of its SMJAR (ECF No. 83) (Pl.'s SMJAR Reply) at 13.  Plaintiff specifically argues that the Navy reached an irrational conclusion because (i) the Navy relied on self-interested statements from Dell, (ii) the Navy did not launch an independent investigation, and (iii) Microsoft's price adjustments did not actually occur "last minute."  *Id.* at 13-17; *see also* Pl.'s SMJAR Mem. at 32; Pl.'s Second SMJAR at 4 ("In any event, the Navy never should have determined that it could stop looking into these circumstances based solely on information from Dell Marketing.").  After reviewing the evidence collected during the Navy's thorough investigation, this Court disagrees with Insight's contentions.

i.  The Navy's Investigative Conclusions Do Not Rest Solely on "Self-Serving" Evidence from Dell

According to Plaintiff, the Navy's PIA investigation rests entirely on "the word of self-interested contractor personnel from Dell Marketing."  Pl.'s SMJAR Mem. at 30; *see also* Pl.'s SMJAR Reply at 14 ("Moreover, the reliance on Dell Marketing declarations is particularly inappropriate . . . because they are from individuals with a financial interest in a particular outcome"); Pl.'s Second SMJAR at 4 ("The only information considered by the Navy that is not hand-selected information presented by Dell Marketing are the declarations from 11 government employees that had no insight or information about disclosure through SharePoint.").  This argument completely ignores that the Navy also based its no-impact determination on declarations

from Navy personnel, internal Dell emails predating May 27, 2021, and interviews with Dell employees.  *See* Tab 81 at AR 7399-400.

Dell personnel involved in the procurement declared under penalty of perjury that they "did not see or receive any Insight price information related to the RFQ" and that they had not received Insight's CLIN-level pricing prior to Dell's submission of its May 27, 2021 question to the Navy. Tab 80 at AR 7382-84, 7386, 7389, 7391.  Any suspicion or supposition that these Dell employees would perjure themselves to conceal misconduct in this procurement becomes more tenuous when viewed along with the declarations from Navy personnel who similarly declared under penalty of perjury that they complied with their obligations to keep contractor proposal information confidential and "did not discuss with or disclose Insight's pricing to anyone."  Tab 79; *see also* Additional Documents Filed with Supplemental PIA Report.  Mr. Sessions expressly cited these Navy declarations as evidence supporting his no-impact determination.  Tab 81 at AR 7399.

The Navy took the additional step of interviewing Dell employees to better assess their credibility.  *See* Tab 74.  The Dell employees offered a consistent narrative that Microsoft's late price changes to promotional CLINs 4 and 5 led them to believe that those changes could have resulted in Insight's price differential.  Tab 81 at AR 7394-97.  All three Dell representatives interviewed during the investigation stated that they did not receive Insight's CLIN pricing.  *Id.* at AR 7395-97.  Dell's Vice President for Strategic Programs explained that, to his knowledge, "no one from Dell received any information about Insight's CLIN pricing on this opportunity."  *Id.* at AR 7395.  Again, Mr. Sessions cites Mr. Roberts' interview notes as supporting his no-impact determination.  Tab 81 at AR 7400.

Even if the declarations and Dell employee interviews were choreographed to conceal a PIA violation, the Navy did not stop its investigation upon receiving that evidence.  The Navy also

collected Dell emails from the period between March 26, 2021 and May 27, 2021, corroborating Dell's narrative that its concerns over Microsoft's revisions to the promotional CLINs motivated its May 27, 2021 email to the Navy. *See* Tab 75 at AR 6627-28, AR 6622; Tab 77 at AR 7358-59. Dell reached out to Microsoft on March 26, 2021, before the bid deadline, when it realized that several promotional CLINs lacked pricing on Microsoft's price list. *See* Tab 81 at AR 7398. On April 2, 2021, Dell emailed Microsoft again after Microsoft had provided final pricing, specifically seeking clarification on whether years 4 and 5 of the promotional CLINs would be priced and available for transaction. Tab 75 at AR 6622; *see also* Tab 81 at AR 7390. It is reasonable to conclude that Microsoft's late pricing concerning years 4 and 5 of these CLINs would confuse other competitors. Thus, it is unsurprising that shortly after the Navy announced it was awarding the BPA to Insight, Dell emails reflect that its employees quickly homed in on the possibility that Microsoft's initial failure to provide pricing for promotional CLIN years 4 and 5 could explain a price discrepancy; this would be the case if Insight had not similarly sought such a pricing clarification from Microsoft. *See* Tab 77 at AR 7358. Mr. Sessions reached exactly that conclusion in his PIA no-impact determination, where he reasoned that Dell's emails "support Dell's assertion that it was only using information received from the award notice and that it did not receive Insight's CLIN pricing." Tab 81 at AR 7400.

Plaintiff downplays the breadth and thoroughness of the Navy's investigation by criticizing the Navy employees' declarations for lacking "insight or information about disclosure through SharePoint," Pl.'s Second SMJAR at 4, and the Dell Marketing declarations for "fail[ing] to address the period of time after May 27, 2021." Pl.'s SMJAR Mem. at 21. However, those arguments relate to the PIA violation Plaintiff alleges occurred *after* the Navy reopened the procurement, and as explained below, the Navy was not obligated to consider those allegations,

which were untimely asserted.  Plaintiff does not point to any evidence casting doubt on the truthfulness of the evidence collected from Navy and Dell personnel, and the contemporaneous emails collected from Dell independently corroborate the statements made by Dell and Navy personnel in their declarations and interviews.

      ii.  <u>The Lack of an "Independent Investigator" Does Not Undermine the Navy's Investigative Conclusions</u>

Plaintiff next tries to undermine the rationality of the Navy's conclusion by arguing that "[t]he Navy's failure to conduct an independent PIA investigation is itself an arbitrary and capricious action."  Pl.'s SMJAR Mem. at 35.  As explained above, the Navy reasonably selected Mr. Roberts to perform the investigation, and Mr. Sessions and Ms. Pritchard to independently review the evidence and Mr. Roberts' conclusions.  *See infra* pp. 78-80.  Plaintiff cannot point to any evidence, let alone the requisite "irrefragable proof," that would lead this Court to deviate from the presumption that these Navy personnel carried out the investigation in good faith. *Savantage Fin. Servs.*, 595 F.3d at 1288 (quoting *Alaska Airlines, Inc.*, 8 F.3d at 795).

      iii.  <u>The Timing of Microsoft's Price Changes Does Not Undermine the Navy's Investigative Conclusions</u>

Finally, Plaintiff contends the Navy's conclusion was irrational because it did not address the actual sequence of events regarding Microsoft's revisions to the promotional CLIN prices.  *See* Pl.'s SMJAR Mem. at 32-33.  Plaintiff specifically alleges that the Navy's investigation "fails to explain how the pricing change was 'last minute' when the investigation confirmed that the change occurred more than a month before the May 6, 2021 Best and Final Offers."  Pl.'s Second SMJAR at 5 n.3.  That argument ignores that Mr. Sessions viewed the sequence of events as one of several factors supporting his no-impact determination.  *See* Tab 81 at AR 7400 ("The emails Dell provided related to Dell's conversations with Microsoft support Dell's explanation that the pricing of the promotional SKUs was last minute").  Furthermore, Dell's explanation that Microsoft

extended an offer for years 4 and 5 for the Project & Visio bundle promotional CLINs — x728, x729, x764, x765 — "last minute" does not imply the changes were made on the eve of this procurement closing.  Tab 10.2 at AR 3519.  The changes were last minute in the sense that Microsoft originally did not price years 4 and 5 of those CLINs, and only did so in its final pricing after Dell had reached out to Microsoft seeking clarification on those CLINs as the deadline for bidding approached.  *See* Tab 81 at AR 7398; Tab 75 at AR 6625-27.

Rather than provide "no basis whatsoever to determine that '[there was] no impact on the pending award or selection of the contractor,'" Pl.'s SMJAR Mem. at 24 (quoting FAR 3.104-7(a)), the Navy provided a well-reasoned analysis of the evidence it collected.  *See* Tab 81; Supplemental PIA Report.  Evidence collected from both Dell and the Navy support the Navy's conclusion "that Insight's alleged PIA violation did not impact the award of the BPA to Dell Marketing."  Supplemental PIA Report at 3; *see also* Tab 81 at AR 7399-401.  In short, Plaintiff has not carried its burden to sustain a protest based on a pre-May 27, 2021 PIA violation.

D.  Insight's Allegation of a Post-May 27, 2021 PIA Violation is Untimely

Plaintiff further argues that the Navy inadequately investigated Plaintiff's PIA allegations by ignoring what Plaintiff characterizes as "a clear, undisputed PIA violation."  Pl.'s SMJAR Mem. at 22; Pl.'s Second SMJAR at 5-6.  As Plaintiff correctly notes, the Navy did not remove Insight's pricing information from the SharePoint website until May 28, 2021, the day after the Navy had reopened the procurement on May 27, 2021.  *See* Tab 11.5 (E-mail from Navy to Insight regarding Removal of Promotional SKUs, dated May 28, 2021) at AR 3555 (setting 7 p.m. Pacific Time on May 28, 2021, as the final deadline for submitting revised proposals after the Navy vacated its initial award to Insight); Tab 81 at AR 7399 n.1 (indicating the Navy removed Insight's pricing data from the SharePoint website on May 28, 2021); *see* also Pl.'s Second SMJAR at 5-6. However, the two communications that Plaintiff alleges notified the Navy of a potential post-May

27, 2021 violation did not trigger an obligation for the Navy to investigate because (1) the first communication — which was timely — did not provide notice of a potential PIA violation, and (2) the second — which did provide notice of a potential PIA violation — was untimely.

Under the PIA, a plaintiff "may not file a protest against the award or proposed award of a Federal agency procurement contract alleging a violation of [the PIA], . . . unless the person, no later than 14 days after the person first discovered the possible violation, reported to the Federal agency responsible for the procurement the information that the person believed constitutes evidence of the offense."  41 U.S.C. § 2106.  Although the statute establishing the fourteen-day deadline expressly references the Comptroller General's ability to hear certain protests, the Court of Federal Claims has applied this waiver rule to bid protests before this court.  *See, e.g.*, *Melwood Horticultural Training Ctr., Inc. v. United States*, 153 Fed. Cl. 723, 742 (2021); *Omega World Travel, Inc. v. United States*, 82 Fed. Cl. 452, 467 (2008).  Applying the fourteen-day time bar in this Court makes sense given the Federal Circuit's previous explanation that it would be "incongruous to bar later GAO protests but to permit a later court challenge."  *Comint Sys. Corp. v. United States*, 700 F.3d 1377, 1383 (Fed. Cir. 2012).

At oral argument, Plaintiff argued that the Supreme Court's decision in *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954 (2017), prohibits applying "deadlines that get rid of . . . plaintiffs' cases, unless they are clearly set forth by Congress."  Apr. 8 Tr. at 19:3-10.  However, the Federal Circuit explicitly rejected that notion in *Inerso Corp. v. United States*, 961 F.3d 1343, 1349 n.1 (2020), and explained that *SCA Hygiene* "hold[s] only that the general non-statutory equitable timeliness doctrine of laches does not override the congressionally enacted statute of limitations applicable to legal actions for damages."  *Id.*  Further, the case on which Plaintiff relies to suggest it is inappropriate to apply the fourteen-day time bar,

*McKing Consulting Corp. v. United States*, 78 Fed. Cl. 715, 729 (2007), predates the Federal Circuit's admonition in *Comint Systems* that belated court challenges should not be permitted when time-barred at the GAO. *See* 700 F.3d at 1383. Thus, as this Court has previously held, Plaintiff was required to raise its concern about a PIA violation with the Navy within fourteen days of discovering the purported PIA violation. *Insight Pub. Sector, Inc. v. United States*, 157 Fed. Cl. 416, 425 (2021).

i.   Plaintiff's January 26, 2022 Email

The first communication that Plaintiff alleges meets this requirement did not sufficiently allege a PIA violation. On January 26, 2022, two days after Plaintiff first received a courtesy copy of the Navy's initial PIA report, Plaintiff emailed the Navy regarding new information disclosed in the PIA Report concerning pricing disclosure on the SharePoint website. Pl.'s SMJAR Mem. at 26. According to Plaintiff, the following statements in that email constitute a report of a potential PIA violation: "Please provide information on this CAC enabled SharePoint website, who had access to it, whether non-government personnel had access, and how any information on the website was accessed. We view this disclosure as potentially a significant issue." Pl.'s SMJAR Ex. B (ECF No. 77-3) at 1; *see also* Pl.'s SMJAR Mem. at 26. But rather than "contain[] the necessary evidence to support a PIA claim," Plaintiff's January 26, 2022 message merely raised a generalized, "potential" concern that overlapped with its already asserted, pre-May 27, 2021 PIA violation allegation. *See Melwood Horticultural Training Ctr.*, 153 Fed. Cl. at 742; *see, e.g.*, *Alpine Cos., Inc.*, B-419831 et al., 2021 WL 2667135, at *6 (Comp. Gen. June 8, 2021) (holding that a protestor's letters sent to the agency less than fourteen days after learning facts indicating a potential PIA violation occurred did not satisfy the timeliness requirement where "the protester's allegations . . . were vague, and did not credibly allege a violation of the PIA"). Indeed, the Navy

interpreted Insight's January 26, 2022 email as a generalized request for supplemental information regarding the performed PIA investigation, rather than an allegation of a separate post-May 27, 2021 PIA violation.  *See* Pl.'s SMJAR Ex. C (ECF No. 77-4) at 2 (replying to Insight's concern that the SharePoint disclosure was "potentially a significant issue" by informing Insight that "most if not all of the information [Insight sought] would be included in an amendment to the administrative record if Insight is challenging *the PIA determination*." (emphasis added)).  Such generalized, vague concern, noting a "potential" issue, is insufficient to trigger the Navy's obligation to investigate an alleged PIA violation.

### ii.  Plaintiff's February 15, 2022 Email

Plaintiff alternatively points to its subsequent, February 15, 2022 letter to the Navy as providing adequate notice to the Navy.  Pl.'s SMJAR Mem. at 26.  Unlike its January 26 email, Plaintiff's February 15 letter provided specific allegations of a PIA violation.  Insight's February 15, 2022 letter stated:

> One of Insight's concerns is that the Navy disclosed its pricing such that Dell Marketing had access to it both before Dell Marketing's email to the Navy seeking to reopen the competition on May 27, 2021, and before Dell Marketing submitted revised price proposals on May 28, 29 and 30, 2021. . . . [T]he fact that Insight's pricing was apparently widely available prior to the submission of revised proposals on May 28, 29, and 30, 2021, also raises concerns about the fairness of the competition.

Pl.'s SMJAR Ex. D (ECF No. 77-5) at 2-3.  In contrast to Insight's January 26, 2022 email, its February 15, 2022 letter provides sufficient specificity for the Navy to discern that Insight alleged a new post-May 27, 2021 PIA violation had occurred.  It also clearly demonstrates that Insight knew how to properly allege a PIA violation.

Plaintiff contends that its February 15, 2022 letter was timely under the PIA's fourteen-day deadline because it was sent within fourteen days of February 3, 2022, when it purportedly first learned that Navy contractors also had access to the SharePoint website.  Pl.'s SMJAR Mem.

at 26.  However, Insight possessed all the information necessary to support its new PIA violation allegation on January 24, 2022, not February 3, 2022.  *See* FAR 3.104-3, 3.104-7.  The copy of the PIA Report that Insight received on January 24, 2022, explained that Insight's pricing information was available on the SharePoint website after the Navy reopened the procurement and that Navy customers (i.e., non-Navy personnel) had access to the SharePoint website.  *See* Tab 81 at AR 7399 n.1.  Therefore, Plaintiff had sufficient basis to allege a new PIA violation as of that date.

Taken together, Plaintiff's purported notices to the Navy of a post-May 27, 2021 PIA violation are insufficient to trigger an investigation.  Plaintiff's January 26, 2022 email to the Navy met the fourteen-day deadline but did not put the Navy on notice it was alleging a new PIA violation.  Plaintiff's February 15, 2022 letter contained the requisite level of specificity to put the Navy on notice of a new PIA violation allegation but was untimely, sent more than fourteen days after Plaintiff learned, on January 24, 2022, of a potential new PIA violation.[27]   As neither communication sufficiently provided the Navy timely notice of a potential post-May 27, 2021 PIA violation, the Navy was not required to investigate Plaintiff's post-May 27, 2021 PIA violation allegation.

E.  Insight Cannot Demonstrate Prejudice from Any Alleged PIA Violation

The Government and Dell contend that even if a PIA violation had occurred, this Court must nevertheless dismiss Plaintiff's PIA protest ground because Plaintiff has not shown any prejudice caused by an alleged PIA violation.  *See* Def.'s Suppl. Cross-MJAR at 51-55; Intervenor-Defendant's Suppl. Cross-MJAR at 34-36.  Plaintiff responded in its MJAR Reply that the alleged PIA violation prejudiced Plaintiff by "overturn[ing] a valid award of a BPA to Insight — directly

---

[27] To fall within the fourteen-day time bar, Insight was required to sufficiently assert a PIA violation by February 7, 2022.  See 41 U.S.C. § 2106.  The February 15, 2022 letter clearly exceeds that deadline.

causing the loss of a $2.5 billion BPA." Pl.'s Reply at 36. Plaintiff then broadened these allegations in its SMJAR, where it alleged that various flaws in the Navy's PIA investigation deprived Plaintiff "of the ability to fairly compete for the contract and in turn lost the opportunity to perform the BPA." Pl.'s SMJAR Mem. at 36. Plaintiff's prejudice theory shifted again in its SMJAR Reply, where it argued exclusively that it only needed to establish that the Navy improperly investigated the PIA violation to meet its burden on prejudice. *See* Pl.'s SMJAR Reply at 32 ("Indeed, without the Navy actually conducting a fulsome investigation to determine the extent and scope of the possible PIA violations and impact of those violations, Insight cannot do more to establish prejudice."). This Court agrees with the Defendants; Plaintiff cannot establish that a pre- or post-May 27, 2021 PIA violation would have prejudiced it given Dell's superior price offering when comparing the parties' initial offers on equal footing.

To prevail in a bid protest, even one based on an alleged PIA violation, "the protestor must show that it was prejudiced by the government's actions.'" *Sys. Studs. & Simulations*, 22 F.4th at 997 (quoting *Glenn Def. Marine*, 720 F.3d at 912). The prejudice inquiry "is *always* required before setting aside a bid award." *Sys. Studs. & Simulations*, 22 F.4th at 997 (emphasis added). A plaintiff's failure to address prejudice in its motion for judgment on the administrative record waives the plaintiff's "right to assert that it was prejudiced by agency error." *Brooks Range Cont. Servs., Inc. v. United States*, 101 Fed. Cl. 699, 709 (2011) (citing *Novosteel*, 284 F.3d at 1274); *see also Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 695 (2022) (collecting cases).

Here, Plaintiff waived any argument about prejudice based on a pre-May 27, 2021 PIA violation by failing to address such prejudice in its MJAR. *See* Pl.'s Mem. at 37-45 (neglecting to discuss prejudice). Even ignoring this waiver, Plaintiff cannot establish prejudice because Plaintiff's noncompliant bid did not give it the requisite "substantial chance" to receive the award.

*Bannum,* 404 F.3d at 1353.  While Plaintiff won the award initially, it did so unfairly; Insight's own failure to price all the required CLINs led to that result.  *See* Tab 11.1 at AR 3523, 3525 (explaining that Insight's failure to price the promotional CLINs/ SKUs x728, x729, x764 and x765 impacted the Navy's decision to award the BPA to Insight).  This Court cannot hold that Plaintiff's loss of an unfair competitive advantage is a type of prejudice that this Court is empowered to remedy.  *See* FAR 8.405-3(b)(1)(ii)(C) (mandating that an agency establishing a BPA "[s]hall ensure all quotes received are fairly considered and award is made in accordance with the basis for selection in the RFQ").

Plaintiff likewise cannot establish prejudice for any alleged post-May 27, 2021 PIA violation, even if timely asserted.  Even assuming, as Insight insinuates, that Dell gained access to Insight's detailed pricing information via the SharePoint website, Plaintiff has not established that such access would have provided Dell Marketing a competitive advantage.  *See* Pl.'s SMJAR Mem. at 21-22 (explaining that agencies have the discretion to disclose one bidder's otherwise confidential information to another bidder where it is necessary to "address the imbalance created by the disclosure of one offeror's pricing," and proceeding to argue that similar corrective action is necessary here); Pl.'s SMJAR Reply at 24; Pl.'s Second SMJAR at 5 ("In the face of this disclosure to the SharePoint website, . . . [t]he Navy retains the ability to equally disclose pricing to create a fair procurement").  Dell already offered the superior quote before the Navy awarded the BPA to Insight, as Insight had failed to price all the CLINs required by the Solicitation.

This becomes apparent when comparing Insight's and Dell Marketing's initial quotes once equalized to account for Insight's failure to price promotional CLINs x728, x729, x764 and x765 for years 4 and 5 of the BPA as required.  Insight's total evaluated price, which did not include pricing for years 4 and 5 of those promotional CLINs, was $2,555,033,130.  Tab 9 (Initial Business

Clearance Memorandum (without attachments), signed May 15-16, 2021) at AR 3511.  Dell

Marketing's total evaluated price — including years 4 and 5 for promotional CLINs x728, x729,

x764 and x765 — was $2,582,354,460.  *Id.*  Removing from Dell Marketing's quote years 4 and

5 for CLINs x728, x729, x764 and x765 yields an equalized total price of $███████.  *See*

Tab 4 at AR 178 (reflecting a total of $███████ for the promotional CLIN years that Dell

Marketing priced but Insight omitted).   In other words, Dell Marketing's pricing was

approximately $██ million less than Plaintiff's when the two quotes are equalized to account for

Plaintiff's failure to price all requisite CLINs.  The Navy determined that Insight's slightly better

past performance would be worth "no more than $5 million over the course of 5 years."  Tab 12.1

at AR 4360.  Even accounting for this, Plaintiff never had "a substantial chance it would have

received the contract award" since Dell Marketing's equalized price would still have been over

$██ million less than Plaintiff's.  *Sys. Studs. & Simulations*, 22 F.4th at 997 (cleaned up).[28]

---

[28] Given that substantial price advantage, Plaintiff's complaints about Dell Marketing's reduction in pricing for 25 CLINs after the Navy had reopened the procurement for rebidding ring hollow. *See* Pl.'s SMJAR Mem. at 11-12.  Further, Dell Marketing's pricing changes during re-bidding resulted in an approximately $17.5 million decrease in Dell Marketing's total evaluated price. *Compare* Tab 9 at AR 3511 (indicating Dell Marketing's total evaluated price was $2,582,354,460 before the award to Insight), *with* Tab 11.27 at AR 3823 (indicating Dell Marketing's total evaluated price was $2,493,272,919.21 after the Navy reopened the procurement).  While that decrease widened the advantage Dell Marketing's pricing had over Insight's, it was permissible under the Solicitation and did not ultimately affect the procurement award.  *See* Tab 11.1 at AR 3523 (giving offerors the opportunity to revise their pricing for all years and CLINs).  Indeed, Insight could also have lowered any of its pricing upon rebidding but chose not to do so.  *See* Tab 11.10 at AR 3592-93 (showing no change in Insight's prices, totaled over 5 years, for CLINs x407, x497, and x511, from Insight's May 6, 2021 pricing to Insight's May 28, 2021 pricing). Furthermore, Dell Marketing reduced its total price primarily by reducing the proposed price of three CLINs for which it had already offered a cheaper price than Insight prior to the initial award to Insight.  *Compare* Tab 7.1 at AR 3353 (showing Dell Marketing's May 6, 2021 price, totaled over 5 years, for CLIN ███ was $███████, for CLIN ███ was $███████, and for CLIN ███ was $███████), *with* Tab 11.2 at AR 3534 (showing Dell Marketing's May 28, 2012 price, totaled over 5 years, for CLIN ███ was $███████, for CLIN ███ was $███████, and for CLIN ███ was $███████), *and* Tab 7.2 at AR 3373 (showing Insight's May 6, 2021 price, totaled over 5 years, for CLIN ███ was $███████, for CLIN

VI.     The Procurement Was Not Fundamentally Unfair

Finally, Plaintiff argues that it has a stand-alone protest ground because the Navy purportedly conducted "a fundamentally unfair competition." Pl.'s SMJAR Reply at 23. Plaintiff contends that "good-faith actions by the government – even if they do not rise to the level of PIA violations – can still create an unfair procurement." *Id.* Quoting a GAO decision, Plaintiff further contends that "this basis of protest is entirely independent of the specific procurement integrity provisions, which focus on specific prohibited actions by government officials. . . . allegations dealing with apparent unfair competitive advantages do not necessarily turn on prohibited behavior, and, as noted above, arise without regard to the good faith behavior of the parties." *Id.* (quoting *Health Net Fed. Servs, LLC*, B-401652.3 et al., 2009 WL 3843162, at *25 (Comp. Gen. Nov. 4, 2009)). Further still, Plaintiff contends that the Navy's display of Plaintiff's pricing (post-initial award) "on a SharePoint site that was accessible by thousands of individuals, including hundreds of contractors" for less than a day after the Navy reopened the procurement "was not a fair situation." Pl.'s SMJAR Reply at 24. To remedy this purportedly unfair procurement process, Plaintiff requests a goose/gander remedy: that this Court disclose to Plaintiff Dell Marketing's CLIN-level pricing. *Id.* at 25. Plaintiff's requested remedy is unwarranted.

This Court does not discern any alleged unfairness that would necessitate Plaintiff's proposed remedy or any other relief. Insight's "unfairness" theme runs throughout its other protest grounds, and as explained in detail for each ground, the Administrative Record does not support any argument that Plaintiff was unfairly prejudiced here. *See e.g.*, *supra* pp. 62-65, 73. Furthermore, Plaintiff's unfairness allegations seem particularly absurd here since it received the

_____

was $███████████, and for CLIN ████ was $██████████). In sum, Dell Marketing did not lower its price to beat Insight's price; Dell Marketing already had submitted the lower price for these CLINS.

initial BPA award by omitting, even if inadvertently, pricing for several required CLINs. *See* Tabs 10.1; 11.1. Insight understandably laments losing the BPA award. However, Insight's loss of an award that was previously in its grasp is not unfair when Insight had only initially grasped it using an unfair advantage. Here, the Navy fulfilled its obligation to "treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria," by appropriately reopening the procurement and requiring both offerors to price all requisite CLINs. *Serco*, 81 Fed. Cl. at 482 (cleaned up).

Even if this Court had discerned a scintilla of unfairness in the reopened procurement — which it does not — Plaintiff's proposed remedy would still be inappropriate. While an agency has discretion to equalize the disclosure of information to offerors, the agency must first determine that one offeror has the other's information. *See Power Connector, Inc.*, B-404916.2, 2011 WL 5029615, at *4 (Comp. Gen. Aug. 15, 2011) (holding that, "consistent with FAR 15.507," the agency should remedy a contracting officer's disclosure of offeror prices to one offeror "by advising all offerors of the pricing information"); *Symvionics, Inc.*, B-293824.2, 2004 WL 2389921, at *5 (Comp. Gen. Oct. 8, 2004) ("We recommend that the Navy provide all the firms in the recompetition with the same information about the likely impact of the PPV program on the subject requirements that it provided Eastern in its post-award debriefing and allow for the submission of revised proposals."). Here, as noted, the Administrative Record lacks evidence indicating that Dell ever received Insight's CLIN-level pricing. Under the present circumstances there is no reason whatsoever to award Insight the remedy it seeks. Indeed, under the facts of this case, it would be inappropriate for this Court to order disclosure of Dell Marketing's CLIN-level pricing data to Insight, a serial competitor, where no legal or equitable reason compels such a step. Plaintiff simply does not provide any basis on which this Court could sustain its protest.

VII.   <u>Insight is Not Entitled to Injunctive Relief</u>

The Court considers four factors when deciding whether to grant injunctive relief: (1) whether the plaintiff has succeeded on the merits, (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) whether the balance of hardships to the respective parties favors granting an injunction, and (4) whether the public interest is served by granting an injunction. *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). This Court need not progress beyond the first factor. "A plaintiff who cannot demonstrate success upon the merits cannot prevail upon a motion for injunctive relief." *By Light Prof'l IT Servs., Inc. v. United States*, 131 Fed. Cl. 358, 367 (2017); *see Blue & Gold Fleet*, 492 F.3d at 1312 (noting that success on the merits is "the most important factor required to enjoin the award of a contract"). As discussed above, Insight's protest fails on the merits. Accordingly, Insight is not entitled to injunctive relief.

<u>CONCLUSION</u>

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 33), Plaintiff's Supplemental Motion for Judgment on the Administrative Record (ECF No. 77), and Plaintiff's Second Supplemental Motion for Judgment on the Administrative Record (ECF No. 103). The Court **GRANTS** Defendant's Cross-Motion for Judgment on the Administrative Record (ECF No. 38), Defendant's Supplemental Cross-Motion for Judgment on the Administrative Record (ECF No. 78), Intervenor-Defendant's Cross-Motion for Judgment on the Administrative Record (ECF No. 39), and Intervenor-Defendant's Supplemental Cross-Motion for Judgment on the Administrative Record (ECF No. 79).[29]

---

[29] As noted, on May 10, 2022, the Court lifted the injunction (ECF No. 56 at 27-28) previously in place and permitted the Navy to immediately proceed with its award to Dell Marketing L.P. Order Denying MJAR at 2; *see* May 10 Tr. at 6:2-4.

The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

The parties are directed to **CONFER** and **FILE** a Notice within seven days of this Memorandum and Order, attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted.

IT IS SO ORDERED.



_Eleni M. Roumel_
ELENI M. ROUMEL
Judge

July 25, 2022
Washington, D.C.

98